ROBERT T. EGLET, ESQ.
*(Pro Hac Vice Application Pending)*
ROBERT M. ADAMS, ESQ.
*(Pro Hac Vice Application Pending)*
ERICA D. ENTSMINGER, ESQ.
*(Pro Hac Vice Application Pending)*
**EGLET PRINCE**
400 South Seventh St., Ste. 400
Las Vegas, NV 89101
Ph.  (702) 450-5400
Fax  (702) 450-5451
E-Mail  eservice@egletwall.com

-and-

JOSEPH A. MOTTA, ESQ.
State Bar 133531
**RUEB & MOTTA**
1401 Willow Pass Road, Suite 880
Concord, CA 94520
Ph.  (925) 602- 3400
Fas  (925) 602-0622

*Attorneys for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOM LETIZIA, individually and on behalf of all those similarly situated; MARK FIERRO, individually and on behalf of all those similarly situated, and GREG AGUSTIN JR. individually and on behalf of all those similarly situated<br><br>Plaintiffs,<br><br>vs.<br><br>FACEBOOK, INC., a Delaware corporation; DOES 1 though 20, inclusive.<br><br>Defendant. | **CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, TOM LETIZIA, MARK FIERRO, and GREG AGUSTIN JR. individually and on behalf of all those similarly situated, for their causes of action against FACEBOOK, INC. (hereinafter "Defendant" or "Facebook"), complain and allege as follows:

## I.   JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a civil action filed under Federal Rule of Civil Procedure 23 and Plaintiffs and other members of the Class are citizens of a state different from Facebook, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there are more than 100 in the proposed Class. 28 U.S.C. § 1332(d)(2), (6).

2. This Court has personal jurisdiction over the Defendant named in this action because Defendant is headquartered in California and maintains its principal place of business in California. Defendant maintains such minimum contacts with California to make this Court's exercise of jurisdiction proper. Defendant engages in continuous and systematic business operations within the State of California and maintains offices throughout California, including within this District.

3. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(a) in that: (1) Facebook resides in this judicial district; (2) a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district; and (3) Facebook is subject to jurisdiction in the Northern District of California.

## II.   PARTIES

4. At all times relevant hereto, Plaintiffs were Nevada residents and bring this action individually, and on behalf of all others similarly situated.

5. Defendant Facebook, Inc. ("Facebook") is a publicly traded U.S. company incorporated in Delaware, with its principal place of business at 1 Hacker Way, Menlo Park, CA 94025.

6. Plaintiff Thomas Letizia is an individual who purchased video advertisement placement from Facebook during the Class Period.

7. Plaintiff Mark Fierro is an individual who purchased video advertisement placement from Facebook during the Class Period.

8. Plaintiff Greg Agustin Jr. is an individual who purchased video advertisement placement from Facebook during the Class Period.

### III. GENERAL ALLEGATIONS

9. Facebook operates www.facebook.com ("Website"), a social networking website that allows registered users to create profiles, upload photos and videos, send messages and keep in touch with friends, family and colleagues.

10. Facebook is essentially an advertising company that connects sellers and advertisers of consumer goods and services with its consumer users with the purpose of generating revenue, achieved primarily through the sale of advertising targeted at its consumer users.

11. To further its financial objectives, Facebook provides business services through the Website to serve as a resource for businesses that want to use Facebook for marketing and advertising.

12. Facebook generates billions of dollars in revenue by selling advertisements to American consumers. In this process, millions of American advertisers pay substantial sums of

3

money for advertising based on Facebook's representations of how many consumers can be reached and influenced by advertisements that appear on the Website.

13. Facebook generates revenue by selling advertisement placements over its website and mobile applications to sellers of consumer goods and services to help them reach consumers on the Website based on user information appropriated by Facebook. As such, Facebook enables companies to target consumers based on a variety of factors such as gender, age, network, profile keywords, relationship status, all based on the manner in which the consumer interacts with the Facebook website.

14. Upon information and belief, Facebook's single most important revenue source is advertising and Facebook has generated billions in its history, the majority of which comes from advertising, including mobile advertising. During the last three months of 2015, as reported by Facebook in January 2016, Facebook brought in $5.8 billion, $1.6 billion of which was profit generated largely from advertising revenue.

15. Much of Facebook's growth is based on paid video advertisements that are placed on Facebook by advertisers to advertise business ideas and/or products by specifically targeting the millions of American consumers using the Website.

16. Upon information and belief, Facebook has more than 1.7 billion users, has made video advertising a central component of its growth strategy, and its significant growth in mobile advertising has been driven by strong demand for video advertisements.

17. Upon information and belief, marketing data has suggested that, on average, when consumers spend a longer-than-expected amount of time viewing an advertisement, advertiser spends more money for such advertisements because it shows potential customers are paying attention to the advertisement.

4

18. On or about May 2014, Facebook introduced new "video metrics" to its advertising system with the stated goal of "helping you better understand how people respond to your videos on Facebook."

19. In May 4, 2014 posted to the Website's business page, Facebook touted the "video metrics" as providing advertisers with information "like video views, unique video views, the average duration of the video view and audience retention," and promoted the new metrics as being "designed to help you learn what's resonating with people and determine how to more effectively create and promote your videos on Facebook."

20. In February 2015, Facebook continued to try to attract advertisers by representing that, "[w]ith Facebook measurement tools, you'll see how people respond to your page and advertisements, so you can make informed decisions about reaching your customers."

21. One such measurement or "video metric" Facebook provided to advertisers was a "duration metric" that purported to measure the average length of time consumers spent viewing the advertiser's posted video advertisement and displayed that information to the advertisers.

22. From approximately May 4, 2014 through September 23, 2016, advertisers, like the Plaintiffs, purchased video advertisement placements from Facebook.

23. From approximately May 4, 2014 through September 23, 2016, advertisers, like the Plaintiffs, use the Facebook duration metric to monitor how much time consumers were spending viewing their advertisements.

24. In February 2015, Facebook announced that it had reached two million active advertisers with most of the gain coming from small businesses. In March 2016, Facebook announced that it reached three million active advertisers with more than 70% from outside the

5

United States.[1] According to 2015 figures from market-research website eMarketer, the average Facebook user generates $12.76 in yearly advertising revenue for Facebook, up from $10.03 in 2014. That figure is expected to rise still further, up to $17.50 in 2017.[2]

25. On or about September 23, 2016, Facebook posted the following admission to its Facebook business page:

> We found an error in the way we calculate one of the video metrics on our dashboard – average duration of video viewed. The metric should have reflected the total time spent watching a video divided by the total number of people who played the video. But it didn't – it reflected the total time spent watching a video divided by only the number of "views" of a video (that is, when the video was watched for three or more seconds). And so the miscalculation overstated this metric.

26. Facebook inflated the duration measurement by only counting a video duration advertisement as "viewed" if it had been seen for more than 3 seconds, and excluded from the calculation instances when a viewer either did not watch the video or watched the video for less than 3 seconds.

27. Facebook also admitted to the Wall Street Journal that as a result of its error in calculating the video metrics, Facebook reported for two years that the average time users spent watching videos was "artificially inflated by 60% to 80%."

28. Facebook mislead Plaintiffs and others similarly situated by misrepresenting that consumers were viewing purchased advertisements for a longer duration than actually viewed.

29. By misrepresenting the average time its millions of consumers spent watching posted advertising videos, Facebook induced advertisers, like Plaintiffs, to continue to purchase

---

1. https://www.facebook.com/business/news/3-million-advertisers.

2. http://www.emarketer.com/Article/Social-Network-Ad-Revenues-Accelerate-Worldwide/1013015

6

video advertisements based on the belief that the advertisements were more successful than they actually were.

30. By misrepresenting the average time its millions of consumers spent watching posted advertising videos, Facebook induced advertisers, like Plaintiffs, to continue to purchase advertising they would not have otherwise purchased or to purchase advertising at a higher rate then they would have otherwise spent.

31. Plaintiffs, and other similarly situated, paid to advertise on the Website based on Facebook's representations that the video advertisements purchased were being viewed by the targeted audience for a significantly longer duration than they were actually viewed.

32. Facebook has now admitted the viewing statistics provided to Plaintiffs and millions of other Americans were inflated by 60% to 80%.

33. As a result of Defendant's illegal conduct, Plaintiffs, on behalf of themselves and the Class, seek statutory penalties, actual damages, attorneys' fees, costs of suit, and any additional legal or equitable relief the Court deems appropriate.

### CLASS ACTION ALLEGATIONS

34. <u>Class Definition</u>: That Plaintiffs bring this nationwide class action on behalf of themselves and the class defined as follows:

> All persons or entities located with in the United States who, from May 4, 2014 to September 23, 2016 ("Class Period") had an account with Facebook or Facebook business and who paid for placement of two or more video advertisements of 10 seconds or more in duration. Excluded from the Class are Defendant and its officers, directors and employees, the Court, the Court's immediate family and all Court staff, and Plaintiffs' attorneys and their immediate family members.

35. <u>Numerosity</u>: Upon information and belief, Plaintiffs allege that the total number of Class members dispersed across the United States. Consequently, joinder of the individual Class members would be impracticable. The disposition of the individual claims of the

7

respective Class members through this Class action will benefit both the parties and this Court, and will facilitate judicial economy.

36. <u>Ascertainability</u>: The Class is ascertainable because, on information and belief, Defendant keeps and collects the information of each Class member in a detailed electronic database, and records when advertisers purchase video advertising placement.

37. <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the members of the Class. The claims of Plaintiffs' and the members of the Class are based on the same legal theories and arise from the same unlawful conduct. The claims of Plaintiffs and the Class arise from the same provisions which uniformly are displayed in the Terms of Service. As such, the claims of Plaintiffs and the Class rise and fall together and are typical of one another.

38. <u>Common Questions of Fact and Law Predominate</u>: There are numerous questions of law or fact common to all Class members. For example, whether the provisions at issue violate clearly established law is a question common to all Class members, and this question is susceptible to a common answer. Similarly, whether Facebook mislead Plaintiffs by misrepresenting that consumers were viewing purchased video advertisements for a longer duration than actually viewed, and whether Facebook induced advertisers to purchase video advertisement placement based upon the belief that the advertisements were more successful than they actually were, are both questions common to all class members, and these questions are susceptible to a common answer. These questions and others like them predominate over individual issues. The same evidence needed to prove Plaintiffs' individual claims will be used to prove the claims of all Class members.

39. <u>Adequacy of Representation</u>: Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class. Plaintiffs will fairly, adequately, and vigorously represent and protect the interests of the members of the

8

Class and have no interests antagonistic to the members of the Class. Plaintiffs have retained counsels who are competent and experienced in the prosecution of complex consumer class action litigation. Plaintiffs' attorneys have the resources, expertise and experience to prosecute this action, and do not have knowledge of any conflicts among the members of Plaintiffs' Class, or any conflicts between the Class and Plaintiffs' attorneys.

40. <u>Superiority</u>: The Class action is superior to other available methods for the fair and efficient adjudication of this controversy because: (a) the prosecution of a multitude of separate actions would be inefficient and wasteful of judicial resources; (b) the members of the class may be scattered throughout the country and are not likely to be able to vindicate and enforce their rights unless this actions is maintained as a class action; (c) the issues raised can be more fairly and efficiently resolved in the context of a single action rather than piece-meal litigation in the context of separate actions; (d) the resolution of litigation in a single forum will avoid the danger and resultant confusion of possible inconsistent determinations; (e) the prosecution of separate actions would create the risk of inconsistent or varying adjudications with respect to individuals pursuing claims against Defendants, which would establish incompatible standards of conducts for Defendants; (f) Defendants have acted and will act on grounds applicable to all Class members; and (g) questions of law and/or fact common to members of the Class, especially on issues of liability, predominate over any question, such as that of individuals damages that will affect individual Class members.

**IV.   CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE**

9

**SECTION 17200 ET SEQ. - "UNFAIR" CONDUCT**

41. Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

42. Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and have lost money or property as a result of Facebook's actions as set forth above.

43. Class members have suffered injury in fact and have lost money or property as a result of Facebook's actions as set forth above.

44. Facebook's actions as alleged in this complaint constitute "unfair" conduct within the meaning of California Business and Professions Code Sections 17200 *et seq*.

45. Facebook's business practices, as alleged herein, are "unfair" because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers. Facebook's conduct is also "unfair" because Facebook induced Plaintiffs and members of the Class to purchase video advertisement placements by misrepresenting the amount of time spent by persons viewing Plaintiffs' advertisements on the Website.

46. As a result of Facebook's "unfair" conduct, Plaintiffs and members of the Class expended money on advertising that they would not otherwise have spent, or overspent for advertising on the Website based upon Facebook's representations that their video advertisements were being viewed at much longer durations than the time actually viewed.

47. Facebook's wrongful business practices alleged herein constituted a continuing course of unfair competition since, throughout the Class Period, Facebook marketed and sold its advertising products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

10

48. Plaintiffs and the Class seek an order requiring Facebook to make full restitution of all moneys it has wrongfully obtained from Plaintiffs and the Class, along with all other relief allowable under Business and Professions Code Section 17200 *et seq*.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE**
**SECTION 17200 ET SEQ. - "FRAUDULENT" CONDUCT**

49. Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

50. Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and have lost money or property as a result of Facebook's actions as set forth above.

51. Class members have suffered injury in fact and have lost money or property as a result of Facebook's actions as set forth above.

52. Facebook's actions as alleged in this complaint constitute "fraudulent" conduct within the meaning of California Business and Professions Code sections 17200 *et seq*.

53. Facebook's business practices, as alleged herein, are "fraudulent" because they are likely to deceive consumers, including Plaintiffs and members of the Class. During the Class Period, Facebook misrepresented the amount of time spent by persons viewing Plaintiffs' advertisements appearing on the Facebook website.

54. As a result of Facebook's "fraudulent" conduct, Plaintiffs and members of the Class expended money on advertising that they would not otherwise have spent based on a false belief that the advertisements were more successful than they actually were.

55. Facebook's wrongful business practices alleged herein constituted a continuing course of unfair competition since Facebook marketed and sold its products in a manner that was likely to deceive customers throughout the Class Period.

56. Plaintiffs and the Class seek an order requiring Facebook to make full restitution of all moneys it has wrongfully obtained from Plaintiffs and the Class, along with all other relief allowable under Business and Professions Code Section 17200 *et seq*.

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE**
**SECTION 17200 ET SEQ. - "UNLAWFUL" CONDUCT**

57. Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

58. Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and have lost money or property as a result of Facebook's actions as set forth above.

59. Class members have suffered injury in fact and have lost money or property as a result of Facebook's actions as set forth above.

60. Facebook's actions as alleged in this complaint constitute an "unlawful" practice within the meaning of Business and Professions Code Section 17200 *et seq*. because Facebook's actions were "unfair" and "fraudulent," as alleged above, and because they violated Business and Professions Code sections 17500 *et seq*., which proscribe false advertising, as alleged below.

61. As a result of Facebook's "unlawful" conduct, Plaintiffs and members of the Class expended money on advertising that they would not otherwise have spent, or overspent for advertising on the Facebook website based upon Facebook's representations that their videos advertisements were being viewed at much longer durations than the time actually viewed.

62. Plaintiffs and the Class seek an order requiring Facebook to make full restitution of all moneys it has wrongfully obtained from Plaintiffs and the Class, along with all other relief allowable under Business and Professions Code Section 17200 *et seq*.

12

# FOURTH CLAIM FOR RELIEF
## VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17500 ET SEQ.

63. Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

64. Plaintiffs bring this claim for relief on behalf of themselves and the Class.

65. Facebook engaged in advertising and marketing to the public and offered for sale advertising services on a nationwide basis, including in California.

66. Facebook engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the sale of advertising services to customers like Plaintiffs.

67. Facebook's advertisements and marketing representations regarding the characteristics of their "video metrics" were false, misleading and deceptive as set forth more fully above.

68. At the time it made and disseminated the statements alleged herein, Facebook knew or should have known that the statements were untrue or misleading, and acted in violation of Business and Professions Code Section 17500 *et seq*.

69. Plaintiffs seek restitution and all other relief allowable under Business and Professions Code Section 17500 *et seq*.

WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and those similarly situated, pray for relief and damages as follows:

A. Payment of general and special damages;

B. Payment of punitive damages;

C. Payment of reasonable attorney's fees and costs of court;

D. An Order certifying the class proposed by Plaintiffs, and naming Plaintiffs as class representatives and appointing their counsel as class counsel;

E. Payment of prejudgment and post-judgment interest.

F. The provision of any other relief as the Court may deem just, equitable, and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Plaintiffs' Class hereby demand a trial by jury for all issues so triable.

DATED this 27th day of October, 2016.

          Respectfully submitted,

          **RUEB & MOTTA**

          /s/ *Joseph A. Motta*
          By:
          JOSEPH A. MOTTA, ESQ.
          State Bar 133531
          1401 Willow Pass Road, Suite 880
          Concord, CA 94520

          -AND-

          ROBERT T. EGLET, ESQ.
          *(Pro Hac Vice Application Pending)*
          ROBERT M. ADAMS, ESQ.
          *(Pro Hac Vice Application Pending)*
          ERICA D. ENTSMINGER, ESQ.
          *(Pro Hac Vice Application Pending)*
          **EGLET PRINCE**
          400 South Seventh Street, Box 1, Suite 400
          Las Vegas, Nevada 89101