1  KEKER, VAN NEST & PETERS LLP
   ASHOK RAMANI - # 200020
2  aramani@keker.com
   PAVEN MALHOTRA - # 258429
3  pmalhotra@keker.com
   ELIZABETH K. MCCLOSKEY - #268184
4  emccloskey@keker.com
   IAN KANIG - # 295623
5  ikanig@keker.com
   633 Battery Street
6  San Francisco, CA 94111-1809
   Telephone:    415 391 5400
7  Facsimile:    415 397 7188

8  Attorneys for Defendant
   FACEBOOK, INC.
9

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12

13  THOMAS LETIZIA, GREG AGUSTIN,        Lead Case No. 3:16-cv-06232-TEH
    JR., TYLER BARNETT PR, LLC, THE      Related Case No. 3:17-cv-00233-TEH
14  ABBI AGENCY, LLE ONE, LLC, d/b/a
    Crowd Siren and d/b/a Social Media   **NOTICE OF MOTION AND MOTION TO**
15  Models, QUIRKY, INC., and WINK, INC. **DISMISS THE CONSOLIDATED**
    n/k/a Wink Dissolution Corp., on behalf of **COMPLAINT; MEMORANDUM OF**
16  themselves and all others similarly situated, **POINTS AND AUTHORITIES IN**
                                          **SUPPORT THEREOF**
17              Plaintiffs,
                                          **Pursuant to Fed. R. Civ. P. 12(b)(6) & 9(b)**
18       v.
                                          Judge:      Hon. Thelton E. Henderson
19  FACEBOOK, INC.,
                                          Date:       June 12, 2017
20              Defendant.                Time:       10:00 a.m.
                                          Dept.:      Courtroom 2
21
                                          Date Filed: October 27, 2016
22
                                          Trial Date:  None Set
23

24

25

26

27

28

1156257

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...............................................................................................2

II.     BACKGROUND ................................................................................................3

        A.     Relevant factual allegations ..................................................................3

               1.     Facebook's two video metrics at issue did not affect billing and were corrected by Facebook promptly upon discovery. ............................3

               2.     Plaintiffs did not rely on—or even see—either Average Duration Metric in making advertising decisions. ........................................4

               3.     Plaintiffs bought their video ads under a contract with Facebook..............5

        B.     Procedural history ..................................................................................6

III.    LEGAL STANDARD ........................................................................................6

IV.    ARGUMENT ....................................................................................................6

        A.     The Court should dismiss Plaintiffs' cause of action for violation of the UCL...............................................................................................6

               1.     Plaintiffs have failed to plead actual reliance. ................................6

               2.     Plaintiffs' UCL allegations do not satisfy Rule 9(b)'s heightened pleading requirements. ....................................................9

               3.     Plaintiffs fail to allege an unfair business practice. .........................9

                      a.     Plaintiffs fail to allege an unfair practice under the "public-policy" test. ....................................................10

                      b.     Plaintiffs also fail to allege an unfair practice under the UCL's "balancing" test. ....................................................11

               4.     Plaintiffs lack standing to seek injunctive relief. ..........................12

        B.     The Court should dismiss Plaintiffs' second cause of action for breach of the implied duty to perform with care...........................................13

               1.     The parties' express contracts bar Plaintiffs' implied duty of care claim.........................................................................14

               2.     California law only attaches the implied duty of reasonable care to the performance of express contract terms. ..................................15

               3.     Plaintiffs fail to plead any circumstances that would give rise to an implied duty to provide metrics. ..............................................16

        C.     The Court should dismiss Plaintiffs' "quasi-contract claim for restitution."........18

1156257

D.    The Court should dismiss Plaintiffs contract and quasi-contract claims with prejudice............................................................................................................................18

V.    CONCLUSION...........................................................................................................................19

DEFENDANT FACEBOOK'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT
Case No. 3:16-cv-06232-TEH

1156257

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) .................................................................................................... 6

*Backus v. Gen. Mills, Inc.*
   122 F. Supp. 3d 909 (N.D. Cal. 2015) ...................................................................... 7

*Baker v. Pac. Far E. Lines, Inc.*
   451 F. Supp. 84 (N.D. Cal. 1978) ............................................................................ 19

*Balistreri v. Pacifica Police Dep't*
   901 F.2d 696 (9th Cir. 1990) ..................................................................................... 6

*Baxter v. Intelius, Inc.*
   2010 WL 3791487 (C.D. Cal. Sep. 16, 2010) ........................................................ 12

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) .................................................................................................. 6

*Cafasso, U.S. ex. rel. v. Gen. Dynamics C4 Sys., Inc.*
   637 F.3d 1047 (9th Cir. 2011) ................................................................................... 6

*City of L.A. v. Lyons*
   461 U.S. 95 (1983) .................................................................................................. 12

*Cohen v. Paramount Pictures Corp.*
   845 F.2d 851 (9th Cir. 1988) ................................................................................... 15

*Davis v. HSBC Bank Nevada, N.A.*
   691 F.3d 1152 (9th Cir. 2012) ...................................................................... 9, 11, 12

*Elias v. Hewlett-Packard Co.*
   903 F. Supp. 2d 843 (N.D. Cal. 2012) .................................................................... 12

*Expeditors Int'l. v. Official Creditors Comm. of CFLC, Inc.*
   166 F.3d 1012 (9th Cir. 1999) ................................................................................. 17

*Ferrington v. McAfee, Inc.*
   2010 WL 3910169 (N.D. Cal. 2010) ...................................................................... 10

*Gerlinger v. Amazon.com, Inc.*
   311 F. Supp. 2d 838 (N.D. Cal. 2004) .................................................................... 18

*Gold v. Lumber Liquidators, Inc.*
   2015 WL 7888906 (N.D. Cal. Nov. 30, 2015) ......................................................... 9

*Hodson v. Mars, Inc.*
   162 F. Supp. 3d 1016 (N.D. Cal. 2016) .................................................................. 12

*In re Anthem Data Breach Litig.*
   162 F. Supp. 3d 953 (N.D. Cal. 2016) ...................................................................... 9

iii

1156257

*In re iPhone Application Litig.*
    6 F. Supp. 3d 1004 (N.D. Cal. 2013) ................................................................................ 7

*Janda v. T-Mobile, USA, Inc.*
    2009 WL 667206 (N.D. Cal. Mar. 13, 2009) .................................................................. 12

*Kane v. Chobani, Inc.*
    2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) .................................................................. 7

*Lennar Mare Island, LLC v. Steadfast Ins. Co.*
    176 F. Supp. 3d 949 (E.D. Cal. 2016) .......................................................................... 17

*Lozano v. AT&T Wireless Servs., Inc.*
    504 F.3d 718 (9th Cir. 2007) ...................................................................................... 10

*Mangold v. Cal. Pub. Util. Comm'n*
    67 F.3d 1470 (9th Cir. 1995) ...................................................................................... 16

*Novell, Inc. v. Unicom Sales, Inc.*
    2004 WL 1839117 (N.D. Cal. Aug. 17, 2004) .............................................................. 15

*O'Connor v. Uber Techs., Inc.*
    58 F. Supp. 3d 989 (N.D. Cal. 2014) .......................................................................... 18

*Opperman v. Path, Inc.*
    84 F. Supp. 3d 962 (N.D. Cal. 2015) .......................................................................... 12

*Shwarz v. United States*
    234 F.3d 428 (9th Cir. 2000) ...................................................................................... 14

*Smith v. Allmax Nutrition, Inc.*
    2015 WL 9434768 (E.D. Cal. Dec. 23, 2015) .............................................................. 18

*Walsh v. Nevada Dep't of Human Resources*
    471 F.3d 1033 (9th Cir. 2006) .................................................................................... 13

*Yastrab v. Apple Inc.*
    2015 WL 1307163 (N.D. Cal. Mar. 23, 2015) ................................................................ 9

*Zivkovic v. S. Cal. Edison Co.*
    302 F.3d 1080 (9th Cir. 2002) .................................................................................... 18

**State Cases**

*Allred v. Bekins Wide World Van Servs.*
    45 Cal. App. 3d 984 (1975) ........................................................................................ 16

*Basin Oil Co. of Cal. v. Baash-Ross Tool Co.*
    125 Cal. App. 2d 578 (1954) ...................................................................................... 16

*Drum v. San Fernando Valley Bar Ass'n*
    182 Cal. App. 4th 247 (2010) .................................................................................... 11

*Durell v. Sharp Healthcare*
    183 Cal. App. 4th 1350 (2010) .................................................................................... 7

1156257

*Eads v. Marks*
39 Cal. 2d 807 (1952) ........................................................................................ 16

*Holguin v. DISH Network LLC*
229 Cal. App. 4th 1310 (2014) ................................................................... 15, 16

*Kuitems v. Covell*
104 Cal. App. 2d 482 (1951) ............................................................................ 16

*Kwikset v. Super. Ct.*
51 Cal. 4th 310 (2011) ........................................................................................ 7

*McBride v. Boughton*
123 Cal. App. 4th 379 (2004) .......................................................................... 18

*Moran v. Prime Healthcare Mgmt., Inc.*
3 Cal. App. 5th 1131 (2016) ............................................................................... 8

*N. Am. Chem. Co. v. Super. Ct.*
59 Cal. App. 4th 764 (1997) ....................................................................... 15, 16

*Roscoe Moss Co. v. Jenkins*
55 Cal. App. 2d 369 (1942) .............................................................................. 16

*Schnall v. Hertz Corp.*
78 Cal. App. 4th 1144 (2000) .......................................................................... 10

*Scripps Clinic v. Super. Ct.*
108 Cal. App. 4th 917 (2003) .......................................................................... 10

*Singh v. Southland Stone, U.S.A., Inc.*
186 Cal. App. 4th 338 (2010) .......................................................................... 15

*Varni Bros. Corp. v. Wine World, Inc.*
35 Cal. App. 4th 880 (1995) ............................................................................ 17

**Federal Statutes**

15 U.S.C. § 45 ............................................................................................... 10, 11

**State Statutes**

Cal. Bus. & Prof. Code § 17200 .................................................................. *passim*

Cal. Bus. & Prof. Code § 17203 ........................................................................ 13

Cal. Bus. & Prof. Code § 17204 .......................................................................... 7

Cal. Bus. & Prof. Code § 17500 .................................................................. 10, 11

Cal. Civ. Code § 1750 ....................................................................................... 10

Cal. Civ. Code § 1770 ....................................................................................... 11

Cal. Code Civ. Proc. § 1856(a) ......................................................................... 15

1156257

Cal. Code Civ. Proc. § 1856(b) ............................................................. 15

**Federal Rules**

Fed. R. Civ. P. 8 ................................................................................... 18

Fed. R. Civ. P. 9(b) ..................................................................... 1, 2, 6, 9

Fed. R. Civ. P. 12(b)(6) ................................................................... 1, 6

Fed. R. Civ. P. 15(a) ............................................................................ 18

Fed. R. Civ. P. 20(a)(1) ......................................................................... 2

Fed. R. Civ. P. 41(a)(1) .......................................................................... 2

**Federal Regulations**

16 C.F.R. § 310.4 ................................................................................ 10

DEFENDANT FACEBOOK'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT
Case No. 3:16-cv-06232-TEH

1156257

## FACEBOOK'S NOTICE OF MOTION AND MOTION TO DISMISS

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 12, 2017 at 10:00am, or as soon thereafter as counsel may be heard before the Honorable Thelton E. Henderson, Courtroom 2, 450 Golden Gate Avenue, San Francisco, California, 94102, Defendant Facebook, Inc. will and hereby does move this Court to dismiss Plaintiffs' Consolidated Complaint under Federal Rules of Civil Procedure 9(b) and 12(b)(6). This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, Facebook's Request for Judicial Notice, the Proposed Order filed herewith, the complete files and records in this action, and such other evidence as may be allowed at the hearing of this motion.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiffs failed to plead actual reliance in support of their cause of action under California's unfair-competition law, Cal. Bus. & Prof. Code § 17200 ("UCL").

2. Whether Plaintiffs failed to plead their cause of action under the UCL with particularity under Federal Rule of Civil Procedure 9(b).

3. Whether Plaintiffs failed to state a claim under the "unfair" prong of the UCL.

4. Whether Plaintiffs have standing to seek injunctive relief under the UCL.

5. Whether Plaintiffs failed to state a claim for breach of the implied duty of care.

6. Whether Plaintiffs failed to state a claim for restitution in quasi-contract.

Respectfully submitted,

Dated: April 10, 2017                    KEKER, VAN NEST & PETERS LLP

By:   */s/ Ashok Ramani*
ASHOK RAMANI
PAVEN MALHOTRA
ELIZABETH K. MCCLOSKEY
IAN KANIG

Attorneys for Defendant Facebook, Inc.

1156257

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs' case theory dooms its complaint.[1] Last fall, Facebook discovered that it had inadvertently miscalculated just two of the dozens of metrics it provides to advertisers to track various aspects of video advertising campaigns run on Facebook. Those two metrics are "Average Duration of Video Viewed" and "Average % of Video Viewed," which calculate how long on average each Facebook user viewed a video ad and how much of the video ad on average each Facebook user viewed, respectively. These metrics did not in any way impact how or how much advertisers were billed. And many advertisers acknowledged publicly that they did not rely on these metrics when purchasing ads. Nevertheless, Facebook proactively disclosed and fixed these bugs and committed to further transparency around the metrics it provides.

Plaintiffs purport to represent a class of video advertisers during the time period when Facebook published the two video-ad metrics. They sued Facebook under California's unfair-competition law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"); but that law requires them to demonstrate that they suffered a concrete injury—*i.e.,* that they purchased video ads ***because of*** Facebook's two erroneous video-ad metrics. Plaintiffs fail to allege any such actual reliance— presumably because no Plaintiff ever viewed, let alone relied on, either of these metrics. That shortcoming alone requires dismissal of Plaintiffs' claim. Plaintiffs also fail to satisfy the heightened pleading requirement imposed by Rule 9(b) because they do not come close to identifying the "who, what, when, where, why, and how" of their claim, and, as to the unfair prong of the law, fail to allege an unfair business practice.

Plaintiffs' two back-up causes of action also fail. Their claim for breach of the implied

---

[1] "Plaintiffs" in this consolidated action are Thomas Letizia, Greg Agustin, Jr., Tyler Barnett PR, LLC, The Abbi Agency, LLE One, LLC, Quirky, Inc., and Wink, Inc. Plaintiffs appear to be commercially sophisticated individuals and entities. For example, Mr. Letizia alleges that he is "an advertising, marketing, and public relations professional, and has managed high-profile political campaigns." Lead Dkt. No. 34 ("Compl.") ¶ 6. And Tyler Barnett PR, LLC "is a public relations and marketing agency that focuses on targeting the millennial generation." *Id.* ¶ 8. Facebook notes that after the Court ordered consolidation, several Plaintiffs from the original action were dropped without the notice of voluntary dismissal required under Federal Rule of Civil Procedure 41(a)(1). They are: Mark Fierro, Randy Sutton, and Tony Felice PR. Additionally, one plaintiff, LLE One, LLC was added to the consolidated complaint without approval from the Court under Rule 20(a)(1).

duty of care fails because, as Plaintiffs themselves concede, they entered into an express contract with Facebook that makes no mention of these specific metrics. And Plaintiffs' "quasi-contract in restitution" claim cannot apply here because there is an enforceable contract in the record.

Accordingly, Facebook respectfully requests that the Court dismiss Plaintiffs' consolidated complaint. Because the defects in Plaintiffs' contract and quasi-contract claims are incurable, those claims should be dismissed with prejudice.

## II.   BACKGROUND

### A.   Relevant factual allegations

#### 1.   Facebook's two video metrics at issue did not affect billing and were corrected by Facebook promptly upon discovery.

Facebook operates the world's leading social-media service. *See* Compl. ¶ 13.[2] Over one billion people use Facebook to connect with their friends and family, to share a wide variety of interesting content, and to view content posted by other people and organizations. *Id.* ¶ 14. Facebook sells space on its platform for companies to place advertisements. *See id.* ¶¶ 15-16. Facebook provides advertisers with data—known as metrics—that track various aspects of ad campaigns run on its service. *Id.* ¶ 18. Given the diversity of advertisers and types of ad campaigns run, Facebook makes available hundreds of metrics to its advertising clients that it continually updates to meet their needs.

Starting in May 2014, Facebook began providing its video advertisers with video metrics. *Id.* ¶ 20. Some of these metrics measured "Video Views," "Completed Views," and "Average Duration of Video Viewed." *Id.* Although it provides a variety of metrics, Facebook only bills advertisers based on a few of them—for example, whenever the ad is displayed or whenever it is viewed for 10 seconds.

In 2016, Facebook discovered a discrepancy in its calculation of two video metrics, "Average Duration of Video Viewed" and "Average % of Video Viewed" (the "Average Duration Metrics") as compared to how it had defined those metrics. Facebook promptly fixed the

---

[2] For purposes of this motion to dismiss *only*, Facebook treats the well-pleaded factual allegations of the complaint as true.

miscalculation and made two announcements to its advertisers regarding the discrepancy. Those announcements explained that the discrepancy had no impact whatsoever on billing because Facebook does not bill advertisers based on the two metrics at issue. RJN, Ex. U.

Facebook published its first post regarding the discrepancy in August 2016 on Facebook's Advertising Help Center, and Facebook published the second post on September 23, 2016. Compl. ¶¶ 27-28. The posts explained that Facebook had calculated the "Average Duration of Video Viewed" by dividing the total amount of time spent watching a video (watch time) by the total number of users who watched the video for three seconds or more, rather than dividing the total amount of watch time by the total number of users who watched the video for any amount of time (including one or two seconds). *Id.* ¶ 27. The impact, if any, of this miscalculation varied significantly by ad (and advertiser), and may not have had any impact if users viewed a particular video ad for three seconds or more. Facebook also explained that the discrepancy had affected the "Average % of Video Viewed" metric because that metric had used the Average Duration of Video Viewed metric in its calculation. *Id.*

## 2. Plaintiffs did not rely on—or even see—either Average Duration Metric in making advertising decisions.

Plaintiffs assert that they purchased video ads from Facebook between May 4, 2014, and September 23, 2016. Compl. ¶¶ 36-37; *see also id.* ¶¶ 6-11. Plaintiffs further allege that at some point during that two-year period, "Facebook's misrepresentations induced video advertising purchasers, including Plaintiffs, to purchase video advertisements," "to continue purchasing additional video advertisements," "to purchase additional video advertisements, and "to pay more for Facebook video advertising[.]" *Id.* ¶¶ 36-38. Plaintiffs do not identify any specific misrepresentation that induced video advertisers to make further purchases. Instead, Plaintiffs merely allege that "[v]ideo advertising purchasers, including Plaintiffs, viewed the [Average Duration Metrics] as important metrics[.]"  *Id.* ¶ 35. Further, Plaintiffs do not allege how the discrepancy in the "Average Duration of Video Viewed" and "Average % of Video Viewed" metrics induced their purchases.

1156257

### 3. Plaintiffs bought their video ads under a contract with Facebook.

Plaintiffs allege that they purchased video ads from Facebook pursuant to a contract with Facebook. *Id.* ¶ 63. According to Plaintiffs, "there is not one integrated contract that spells out Facebook's obligations[.]" *Id.* ¶ 65. Instead, "those obligations can be determined by reference to Facebook's course of dealing with the Class, industry practice, and from various webpages created by Facebook[.]" *Id.* Among those "various webpages" is Facebook's Statement of Rights and Responsibilities ("SRR"), which expressly incorporates a set of additional contractual terms including Facebook's Self Serve Ad Terms, Advertising Guidelines, and Community Payment Terms.[3] *Id.*; RJN, Exs. A-T.

The SRR is the "terms of service that governs [Facebook's] relationship with users and others who interact with Facebook, as well as Facebook brands, products and services." SRR, Preamble. It explains that "[b]y using or accessing the Facebook Services, you agree to this Statement" and "[i]f you use our self-service advertising creation interfaces for creation, submission and/or delivery of any advertising or other commercial or sponsored activity or content (collectively, the 'Self-Serve Ad Interfaces'), you agree to our Self-Serve Ad Terms." *Id.* ¶ 10. Additionally, the SRR does not guarantee perfection:

> WE TRY TO KEEP FACEBOOK UP, BUG-FREE, AND SAFE, BUT YOU USE IT AT YOUR OWN RISK. WE ARE PROVIDING FACEBOOK AS IS WITHOUT ANY EXPRESS OR IMPLIED WARRANTIES INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT. ***WE DO NOT GUARANTEE THAT FACEBOOK WILL ALWAYS BE SAFE, SECURE OR ERROR-FREE OR THAT FACEBOOK WILL ALWAYS FUNCTION WITHOUT DISRUPTIONS, DELAYS OR IMPERFECTIONS.***

*Id.* ¶ 15.3 (emphasis added). Finally, the SRR provides that "[t]his Statement makes up the entire agreement between the parties regarding Facebook, and supersedes any prior agreements." *Id.* ¶ 18.2. "Any amendment to or waiver of this Statement must be made in writing and signed by us," and "[Facebook] reserve[s] all rights not expressly granted to you." *Id.* ¶¶ 18.5, 18.10. Notably, neither the SRR nor the documents it incorporates—the Self-Serve Ad Terms, Ad Guidelines, and

---

[3] As set forth in the concurrently-filed Request for Judicial Notice, these contracts are incorporated by reference into the consolidated complaint and thus the Court should take judicial notice of them.

the Community Payment Terms—says anything whatsoever about metrics or video metrics, much less about the two specific metrics at issue here.

### B.    Procedural history

The original action that preceded this consolidated action, *Letizia v. Facebook, Inc.*, was filed on October 27, 2016 and amended on December 23, 2016. Lead Dkt. Nos. 1, 8. The second action, *Quirky v. Facebook, Inc.*, was filed on January 17, 2017 and amended on January 27, 2017. Related Dkt. Nos. 1, 16.

The Court related the *Letizia* and *Quirky* actions on February 6, 2017. Lead Dkt. No. 29. The parties then stipulated and proposed to the Court that the related actions be consolidated for all purposes under a single consolidated complaint. Lead Dkt. No. 31. The Court granted the parties' stipulation and consolidated the two actions on February 13, 2017. Lead Dkt. No. 32. Plaintiffs filed their consolidated complaint on March 6, 2017. Lead Dkt. No. 34.

## III.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal under Rule 12(b)(6) is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Rule 9(b) requires that, when fraud is alleged, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Rule 9(b) demands that a plaintiff's complaint identify "the who, what, when, where, and how of the misconduct charged." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054-55 (9th Cir. 2011).

## IV.    ARGUMENT

### A.    The Court should dismiss Plaintiffs' cause of action for violation of the UCL.

#### 1.    Plaintiffs have failed to plead actual reliance.

Plaintiffs allege that Facebook violated both the "fraudulent" prong and the "unfair" prong of California's UCL. Compl. ¶¶ 54-61. *See* Cal. Bus. & Prof. Code § 17200 (proscribing "any

6

unlawful, unfair, or fraudulent business act or practice").

In 2004, California voters "materially curtailed the universe of those who may enforce" the UCL. *Kwikset v. Super. Ct.*, 51 Cal. 4th 310, 320-21 (2011). For a private plaintiff to have standing to sue under the UCL, he must have suffered an economic injury "as a result of" the allegedly fraudulent or unfair business practice. Cal. Bus. & Prof. Code § 17204. "The phrase 'as a result of' . . . means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation." *Kwikset*, 51 Cal. 4th at 326. "The intent of this change was to confine standing to those actually injured by a defendant's business practices[.]" *Id.* at 321.

Since that time, courts have held that a private UCL plaintiff must show "actual reliance" whenever "the theory of the case" is that the defendant made misrepresentations that deceived consumers. *See, e.g.*, *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1013 (N.D. Cal. 2013). To satisfy the actual-reliance requirement at the pleading stage, a private UCL plaintiff must allege that he *saw* the specific misrepresentation at issue and *actually* relied on it. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010). A mere "factual nexus" with the alleged misconduct—that the plaintiff is "one of the people from whom the defendant obtained money or property while engaging in its unfair business practice" —is not enough. *Id.* at 1362. Instead, "[i]n fraud or misrepresentation cases, the 'as a result of' requirement of the UCL requires a plaintiff to allege that the defendant's misrepresentation was the 'immediate cause' of plaintiff's injury." *Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 925 (N.D. Cal. 2015).

For example, in *Kane v. Chobani, Inc.*, the plaintiffs brought an action against the yogurt brand Chobani, alleging unfair, fraudulent, and unlawful business practices under the UCL. No. 12-CV-02425, 2013 WL 5289253, at *6 (N.D. Cal. Sept. 19, 2013). Plaintiffs claimed that they bought Chobani yogurt in reliance on allegedly deceptive statements on the company's website. The court found that plaintiffs had not established standing, however, because they failed to allege that they ever visited Chobani's website, and thus they had not seen the allegedly deceptive statements. *Id.* at **7-10. Even though plaintiffs claimed that Chobani's misstatements were part of a "long-term advertising campaign" to which they were exposed, plaintiffs had not sufficiently alleged that they relied on any specific misleading statement by Chobani. *Id* at *8.

1156257

In this case, Plaintiffs repeatedly assert that Facebook misrepresented how long Facebook users watched video ads and thereby deceived and induced advertisers into buying more ads. *See* Compl. ¶¶ 24, 36. In an attempt to allege actual reliance, Plaintiffs then allege that the erroneous Average Duration Metrics induced them "to ***continue purchasing*** video advertisements, and to ***purchase additional*** video advertisements, because purchasers ***believed that users were watching their videos, on average, for longer than users were actually watching their videos.***" Compl. ¶ 33 (emphasis added). Put another way, Plaintiffs allegedly suffered injury by spending more money—either by continuing existing video-ad campaigns or starting new ones—***because of*** what the erroneous Average Duration Metrics told them about their existing ad campaigns. But that could only be the case if each Plaintiff ***actually saw*** an erroneous Average Duration Metric and ***because of*** that metric decided to spend more money on Facebook video ads.[4]

Plaintiffs fail to allege actual reliance on either Average Duration Metric. Indeed, not a single plaintiff—let alone all of them—alleges that he or it ever viewed either Average Duration Metric and then spent money on video ads because of an alleged misrepresentation about those metrics. Plaintiffs merely assert that "[v]ideo advertising purchasers, *including Plaintiffs*, viewed the [Average Duration Metrics] as *important metrics* because users are more likely to remember a video advertisement and be affected by it if they watch a longer portion of the advertisement." *Id.* ¶ 35 (emphasis added). But whether Plaintiffs considered the Average Duration Metrics as important is irrelevant to the threshold showing: whether Plaintiffs actually relied on the Average Duration Metrics in spending more money on Facebook video ads. Nor do Plaintiffs allege that the Average Duration Metrics relating to any ad campaigns they ran during the proposed class period were, in fact, miscalculated. Plaintiffs, therefore, have failed to sufficiently plead actual reliance in support of their UCL fraudulent and unfair prong claims. *See Moran v. Prime Healthcare Mgmt., Inc.*, 3 Cal. App. 5th 1131, 1144, 1149 (2016) (dismissing UCL claim for failure to plead actual reliance where the "plaintiff never alleged that he actually read or relied on

---

[4] Plaintiffs fail to explain the many ways in which Facebook's various metrics can be viewed by advertisers, and provide no allegations about what metrics, if any, the named Plaintiffs viewed. In the complaint, Plaintiffs merely provide one example of how the Average Duration Metrics appeared in the May 2014 Facebook announcement introducing video metrics. Compl. ¶ 25 & n.8 (citing https://www.facebook.com/business/news/Coming-Soon-Video-Metrics).

1156257

the Contracts" containing the alleged misrepresentation).

### 2. Plaintiffs' UCL allegations do not satisfy Rule 9(b)'s heightened pleading requirements.

Plaintiffs' UCL claim also must be dismissed because it fails to meet Rule 9(b)'s heightened pleading standard. UCL claims based on alleged misrepresentations must be pleaded with particularity. *See, e.g., Gold v. Lumber Liquidators, Inc.*, No. 14-CV-05373, 2015 WL 7888906, at **1, 9 (N.D. Cal. Nov. 30, 2015) (Henderson, J.); *Yastrab v. Apple Inc.*, No. 14-cv-01974, 2015 WL 1307163, at *3 (N.D. Cal. Mar. 23, 2015).

Here, the gravamen of Plaintiffs' UCL claim is that Facebook misrepresented how long Facebook users watched video ads, on average, and that Facebook thereby deceived advertisers and induced them to buy more video ads at a higher price. *See, e.g.,* Compl. ¶¶ 24, 36, 58. Yet Plaintiffs fail to allege which specific misrepresentations are at issue, when and where Facebook made those specific misrepresentations, when Plaintiffs viewed or relied on them, and how they did so. Nor do they identify which particular ad campaign they allege to have viewed the particular metrics on. Because Plaintiffs never identify "which advertising or sales materials each named Plaintiff was allegedly exposed to, the time frame during which these comments appeared, when the exposure occurred, or which statements each found material," Rule 9(b) mandates dismissal of Plaintiffs' UCL fraudulent-practices allegations. *Gold*, 2015 WL 7888906, at *10; *see also In re Anthem Data Breach Litig.*, 162 F. Supp. 3d 953, 990 (N.D. Cal. 2016).

### 3. Plaintiffs fail to allege an unfair business practice.

Plaintiffs claim that Facebook violated the UCL's unfair prong because Facebook did not "properly audit and verify the accuracy of its video-advertising metrics," and that this "practice was [] contrary to legislatively declared and public policies that seek to protect consumers from misleading statements . . . ." Compl. ¶ 57.

The UCL does not define what constitutes an "unfair" business practice. Because the answer "'is currently in flux' among California courts," *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012), the Ninth Circuit has instructed district courts evaluating UCL unfair practices claims to apply two of the tests that California courts use in the consumer context.

*Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007). Plaintiffs fail to state a claim under either test.

**a.      Plaintiffs fail to allege an unfair practice under the "public-policy" test.**

The public-policy test provides that "a business practice may be unfair within the meaning of the UCL . . . if the conduct in question offends an established public policy[.]" *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1166 (2000). A plaintiff cannot arbitrarily create a public policy. Instead, "where a claim of an unfair act or practice is predicated on public policy . . . the public policy . . . must be *'tethered'* to specific constitutional, statutory or regulatory provisions." *Scripps Clinic v. Super. Ct.*, 108 Cal. App. 4th 917, 940 (2003) (emphasis added).

This tethering requirement is strictly enforced. In *Ferrington v. McAfee, Inc.*, plaintiffs brought an unfair-practices claim against a software provider. No. 10-cv-01455, 2010 WL 3910169, *1 (N.D. Cal. 2010). After plaintiffs purchased software from defendant's website, a "Try It Now" button appeared, which plaintiffs alleged enrolled them in an unrelated service. *Id.* Plaintiffs claimed that this constituted an unfair practice under the UCL and attempted to tether their claim to the Federal Trade Commission's Telemarketing Sales Rule, 16 C.F.R. § 310.4, which proscribes telemarketers from submitting billing information without the customer's express informed consent. *Id.* at *13. Judge Koh determined that plaintiffs' allegations were not sufficiently tethered to the Telemarketing Sales Rule: "Plaintiffs argue that the principle underlying this rule, which applies only to telemarketing, is equally applicable to the Internet. While this may be true, this Court finds that Plaintiffs' claims cannot be tethered to a public policy that Congress has articulated for telemarketing and has not chosen to extend to the Internet." *Id.* at *13.

So too here, Plaintiffs improperly allege that Facebook's miscalculated Average Duration Metrics violated the UCL's unfair prong because it failed the public policy "reflected by laws like the Federal Trade Commission Act (15 U.S.C. § 45), Consumers Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*), and California False Advertising Law (Cal. Bus. & Prof. Code § 17500)." Compl. ¶ 57. But these statutes proscribe unfair practices in general; they do not proscribe any

10

specific practice at issue here such as auditing or verification for *any* business practice, much less for video metrics. *See* 15 U.S.C. § 45 (authorizing the Federal Trade Commission to enjoin unfair methods of competition or deceptive acts or practices); Cal. Civ. Code § 1770 (proscribing "unfair methods of competition and unfair or deceptive acts or practices" in selling goods and services); Cal. Bus. & Prof. Code § 17500 (proscribing untrue or misleading advertising statements). It is impermissibly circular to allege that a business practice is unfair because it violates a public policy proscribing unfair business practices. If that were true, a plaintiff could *always* tether an unfair-business-practices claim to a statute that proscribes unfair business practices and the tethering requirement would serve no purpose. As in *Ferrington*, the U.S. Congress and California Legislature "ha[ve] chosen not to extend" those public policies to require auditing of video-ad metrics. Accordingly, Plaintiffs have failed to satisfy the unfair prong's public-policy test.

<blockquote>
**b.**     **Plaintiffs also fail to allege an unfair practice under the UCL's "balancing" test.**
</blockquote>

The UCL's balancing test directs courts to examine "whether the alleged business practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," which "requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010). While "what is 'unfair' is a question of fact, 'which involves an equitable weighing of all the circumstances' . . . [the Ninth Circuit] will affirm a judgment of dismissal where the complaint fails to allege facts showing that a business practice is unfair." *Davis*, 691 F.3d at 1171.

Plaintiffs do not state a claim under the balancing test because the parties' contract expressly provides that Facebook does "not guarantee that Facebook will always be safe, secure or error free or that Facebook will always function without disruption, delays or imperfections." SRR ¶ 15.3. In *Davis*, the plaintiff alleged that a bank and an electronics store chain defrauded him by offering store-branded rewards cards that failed to disclose an annual fee; but the Ninth Circuit explained that the plaintiff failed to satisfy the balancing test because defendants' advertisement "warned that 'other restrictions might apply.'" *Id.* at 1157-58, 1170. In short, a

1    disclosure in the applicable terms or a warning about the possibility of harm that might flow from

2    a service precludes an unfair-prong claim. *See id.*; *Hodson v. Mars, Inc*, 162 F. Supp. 3d 1016,

3    1027 (N.D. Cal. 2016); *see also Janda v. T-Mobile, USA, Inc.*, No. C 05-03729, 2009 WL

4    667206, at *9 (N.D. Cal. Mar. 13, 2009); *Baxter v. Intelius, Inc.,* No. SACV 09-1031, 2010 WL

5    3791487, at *5 (C.D. Cal. Sep. 16, 2010).

6         Here, Facebook did far more than the defendant did in *Davis*. Facebook proactively

7    corrected and disclosed both metrics at issue. In any event, and critically for purposes of a motion

8    to dismiss, Facebook also warned Plaintiffs in clearer terms than the defendant did in *Davis*.

9    Under the SRR, Plaintiffs agreed that Facebook did not guarantee that it would be "error free" or

10   "function without imperfections." SRR ¶ 15.2. Further, Plaintiffs have failed to allege any factual

11   basis for asserting that the failure to employ auditing and verification procedures, such as hiring a

12   third-party auditor (as they request), outweighs Facebook's reasons, justifications, and motives

13   for its own business practices. Plaintiffs merely assert that "[t]he harm these practices caused to

14   Plaintiffs and the Class members outweigh their utility, if any." Compl. ¶ 57. Plaintiffs'

15   conclusory balancing allegation is insufficient to state a claim under the balancing test for UCL

16   unfair-prong claims. *See Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 858 (N.D. Cal.

17   2012) (dismissing unfair prong claim under the balancing test for failing to "allege any basis for

18   concluding that th[e] injury outweighs the reasons, justifications, and motives of Defendants").

19   Accordingly, for these reasons, Plaintiffs have failed to state a claim under the unfair prong.

20                   **4.      Plaintiffs lack standing to seek injunctive relief.**

21        Plaintiffs do not have Article III standing to seek the injunctive relief they request under

22   the UCL. A plaintiff lacks constitutional standing to seek injunctive relief if he or she has not

23   alleged "a real or immediate threat" that he or she will be wronged again by the practice

24   complained about. *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983). Facebook's September 23,

25   2016 post regarding the Average Duration Metrics, upon which Plaintiffs rely, explains that

26   Facebook had promptly fixed the Average Duration Metric discrepancy. *See* Compl. ¶ 28; RJN,

27   Ex. U. Further, by ending the alleged class period on September 23, 2016, Compl. ¶ 43, Plaintiffs

28   acknowledge that there is no threat that they will be harmed again. *See Opperman v. Path, Inc.*,

1156257

84 F. Supp. 3d 962, 987-88 (N.D. Cal. 2015) (dismissing injunctive relief claim for failing to allege "facts tending to show that the challenged conduct will continue" or "a willingness to consider purchasing the product at issue in the future"). Accordingly, a future injury from the Average Duration Metrics is entirely speculative, and the Court should dismiss Plaintiffs' request for injunctive relief under the UCL.

Separately, Facebook moves to dismiss Plaintiffs' request for a permanent injunction "requiring Facebook to disclose any further inaccurate advertising metrics in a timely and accurate manner." Compl., Prayer (B)(iii). Although Facebook has publicly committed to keeping its advertisers informed about its metrics, including bugs that it detects, Plaintiffs' demand for a court-ordered injunction sweeps too broadly. Plaintiffs seek prospective injunctive relief to force disclosure of errors that *might* occur in the future. But the UCL does not permit injunctive relief for speculative future injuries, only acts or practices that allegedly constitute unfair competition. Cal. Bus. & Prof. Code § 17203 (The UCL only authorizes injunctions that enjoin "the use or employment by any person of *any practice which constitutes unfair competition*.") (emphasis added). Plaintiffs do not allege that Facebook has engaged in an unfair business practice based on a failure to disclose known metrics errors. Furthermore, the requested injunction would not redress the injuries Plaintiffs assert here, which arise solely from the now-updated Average Duration metrics. *See Walsh v. Nevada Dep't of Human Resources*, 471 F.3d 1033, 1036-37 (9th Cir. 2006) (affirming dismissal of request for injunctive relief because it was unsupported by factual allegations and would not have redressed plaintiff's injury). Accordingly, Plaintiffs do not have statutory or Article III standing to seek this injunctive relief.

### B. The Court should dismiss Plaintiffs' second cause of action for breach of the implied duty to perform with care.

Plaintiffs' claim for breach of the implied duty of care fails for one simple reason: as explained below, Facebook has no contractual duty to provide the two metrics at issue here, and so cannot possibly have breached any duty to provide such metrics with care. Plaintiffs' express contracts with Facebook, which are fully integrated, *see infra* at 14-15, make no mention of such metrics. Critically, the contracts also reserve to Facebook any right not expressly provided to

Facebook's contractual partners. Consequently, Plaintiffs' claim cannot survive in light of the terms of the express contract they entered into with Facebook.

Given that Plaintiffs have no right to metrics under the terms of their *express* contract with Facebook, they resort to arguing that Facebook had an implied-in-fact obligation to provide such metrics based upon the parties' course of dealing and industry practice. Compl. ¶¶ 65-67. They do *not* argue Facebook breached this implied duty but rather yet *another* implied duty—one to perform contractual duties with reasonable care. *Id.* ¶¶ 62-71. In other words, Plaintiffs argue Facebook breached an *implied* duty of care imposed upon an *implied* duty to provide Average Duration Metrics. Plaintiffs' argument fails for two separate reasons. *First*, they fail to plead sufficient facts to indicate a duty to provide Average Duration Metrics arose under a course of dealing or industry practice. *Second*, even if there were an implied duty to provide Average Duration Metrics, California law does not impose the implied duty of care to implied contract terms—only to express contract terms.

### 1.     The parties' express contracts bar Plaintiffs' implied duty of care claim.

Plaintiffs are subject to a single, fully integrated contract with Facebook. That contract—which is composed of the SRR and the documents it incorporates (including the Self-Serve Ad Terms, Ad Guidelines, and Community Payment Terms)—is specifically identified in the complaint. *See* RJN, Exs. A-T.[5] The SRR is the master document that sets forth the "terms of service that governs [Facebook's] relationship with users and others who interact with Facebook. . . . By using or accessing the Facebook Services, you agree to this Statement[.]" SRR, Preamble. Notably, the SRR and the documents it incorporates make no mention of any metrics, much less the two specific metrics at issue here. So Facebook has no express contractual obligation to provide metrics.

The SRR contains an integration clause providing that "[t]his Statement makes up the entire agreement between the parties regarding Facebook, and supersedes any prior agreements."

---

[5] District courts need not accept as true allegations in a complaint that contradict judicially-noticed facts. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

*Id.* ¶ 18.2. Thus, Facebook's contract with these Plaintiffs cannot be supplemented. *See, e.g., Singh v. Southland Stone, U.S.A., Inc.,* 186 Cal. App. 4th 338, 352-54 (2010); *see also* Cal. Code Civ. Proc. § 1856(a) (an integrated contract—one the parties intend to be the final expression of their agreement—cannot be contradicted by evidence of a prior agreement or contemporaneous oral agreement). Facebook could not have had an implied-in-fact obligation to provide video metrics because the written contract composed the parties' exclusive agreement.

Even if Plaintiffs sufficiently pleaded that their contract with Facebook was only partially integrated, they still cannot allege that the contract was supplemented by an implied-in-fact metrics term. That is because, in the SRR, Facebook expressly "reserve[d] all rights not expressly granted to [Plaintiffs]." *Id.* ¶ 18.10. *See also Cohen v. Paramount Pictures Corp.*, 845 F.2d 851, 854-55 (9th Cir. 1988) (rejecting a contracting party's attempt to assert implied rights under the contract because the contract "reserved . . . all rights . . . except those herein granted"); *Novell, Inc. v. Unicom Sales, Inc.*, No. C 03-2785, 2004 WL 1839117, at *11 (N.D. Cal. Aug. 17, 2004) (discussing how a contracting party's express reservation of rights limits its duties to those expressly stated). California Code of Civil Procedure § 1856(b) provides that even a partially integrated contract cannot be contradicted by an additional term. Given the fact the SRR reserves *to Facebook* all rights not expressly granted to Plaintiffs, this Court must reject any attempt by Plaintiffs to imply duties—including the duty to provide the Average Duration Metrics—because any such effort would contradict the allocation of duties Facebook and the named Plaintiffs struck when entering into their express agreement. For that reason, Plaintiffs cannot claim contractual rights to metrics or a breach of any implied duty to provide such metrics with care.

### 2.   California law only attaches the implied duty of reasonable care to the performance of express contract terms.

Even if the express contract terms did not foreclose the existence of implied contractual duties to provide Average Duration Metrics, Plaintiffs would face another hurdle: the case law concerning the implied duty to perform contractual duties with reasonable care has only been applied to duties that arose out of the express terms of a contract. *See, e.g., Holguin v. DISH Network LLC*, 229 Cal. App. 4th 1310, 1324 (2014); *N. Am. Chem. Co. v. Super. Ct.*, 59 Cal.

1156257

App. 4th 764, 774 (1997). Courts that have found a breach of the implied duty of care in performance have relied on an express term to anchor the existence of the duty. *See, e.g., Holguin*, 229 Cal. App. 4th at 1324 (finding that contract for the installation of satellite television equipment implied a duty of care in installation, which was breached by drilling through the wall into a sewage pipe); *N. Am. Chem.*, 59 Cal. App. 4th at 774 (finding that contract for shipping a chemical implied a duty of care in possessing the chemical, which was breached when the shipper stored the chemical in a contaminated silo).[6] Here, there can be no dispute that there is no express contract term relating to video metrics.

Thus, Plaintiffs cannot state a claim unless this Court expands California law to apply the implied duty of reasonable care to ***implied*** contract terms. But a federal court's duty "is to ascertain and apply the existing [state law], not [] predict that [the state] may change its law." *Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1479 (9th Cir. 1995) (internal citations and quotations omitted). In any event, there are good reasons for the Court to refuse to extend the implied duty of care to implied contractual duties. Without an express contractual term, contracting parties could find themselves liable either in contract or tort for duties for which they were unaware.

### 3. Plaintiffs fail to plead any circumstances that would give rise to an implied duty to provide metrics.

Even if this Court were to apply the implied duty of reasonable care to some implied duty on Facebook's part to provide Average Duration Metrics, the fact remains that Plaintiffs have failed to adequately allege a factual basis to find a duty to provide such metrics. Plaintiffs allege such a duty arose either through industry practice or through the parties' course of dealing.

---

[6] *See also Allred v. Bekins Wide World Van Servs.*, 45 Cal. App. 3d 984, 991 (1975) (finding that contract for the delivery of goods implied a duty of care in packaging the goods, which was breached by using toxic packaging materials); *Basin Oil Co. of Cal. v. Baash-Ross Tool Co.*, 125 Cal. App. 2d 578, 597 (1954) (finding that contract for the manufacture of plugs for use in oil wells implied a duty of care in manufacturing the plugs, which was breached by defective manufacturing); *Eads v. Marks,* 39 Cal. 2d 807, 810-12 (1952) (finding that contract for the home delivery of milk with special instructions for receipt by a minor implied a duty of care in delivery); *Kuitems v. Covell*, 104 Cal. App. 2d 482, 485 (1951) (finding that contract for roof installation implied a duty of care in installing the roof, which was breached through improper installation of defective roofing materials); *Roscoe Moss Co. v. Jenkins,* 55 Cal. App. 2d 369, 377 (1942) (finding that contract to dig a water well implied a duty of care in digging the well, which was breached when the well-digging company negligently drilled into sand).

Compl. ¶ 67. Neither gives rise to a duty here.

With respect to industry practice, Plaintiffs assert that it was standard in the industry to provide video metrics. *See* Compl. ¶¶ 18, 65, 67. Yet trade usage cannot imply a term unless it was intended but omitted. *See Varni Bros. Corp. v. Wine World, Inc.*, 35 Cal. App. 4th 880, 889 (1995). Here, Plaintiffs fail to allege any facts suggesting that a video metrics term was intended but omitted.

That leaves Plaintiffs' course-of-dealing argument. Plaintiffs point to the following: (1) Facebook posted to its Advertising Help Center that advertisers can "always go to Ads Manager to see how [their] ads are performing" and "[w]hen you create a Video Views campaign, we'll measure both impressions and engagement with your videos"; and (2) when Facebook approves an advertisement, it sends a standardized email that states: "Your ad is approved and should begin delivering shortly. Click the ad name below to manage it or view its performance." *Id.* ¶ 62. Plaintiffs allege these various statements gave rise to an implied duty to provide the Average Duration Metrics. But Plaintiffs do not allege that they ever saw the statements. If Plaintiffs never saw these statements, they cannot assert that they informed their understanding of the contracts.

Further, Plaintiffs do not allege whether the specific course-of-dealing statements alleged were made before or after the parties entered into any contract for advertising services. Course of dealing is restricted to "a sequence of conduct between the parties previous to the agreement." *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 176 F. Supp. 3d 949, 964 n.12 (E.D. Cal. 2016); *Expeditors Int'l. v. Official Creditors Comm. of CFLC, Inc.,* 166 F.3d 1012, 1017 (9th Cir. 1999) (course of dealing means "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct") (internal citations and quotations omitted). If these statements were made after the contracts at issue were formed, then they cannot constitute course of dealing. Similarly, if these statements were made before some contracts were formed, but after others, then at least those earlier contracts are not supplemented with additional implied duties. As pleaded, Plaintiffs have not alleged facts sufficient to give rise to an implied duty to provide Average Duration Metrics.

1156257

### C.    The Court should dismiss Plaintiffs' "quasi-contract claim for restitution."

Plaintiffs' final cause of action is alleged in the alternative: if the Court finds no express contract, then Plaintiffs request restitution in the amount that Facebook was unjustly enriched. However, Plaintiffs' "quasi-contract claim for restitution" claim should be dismissed because an express contract governs the subject matter at issue. "[I]t is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *O'Connor v. Uber Techs., In*c., 58 F. Supp. 3d 989, 999-1000 (N.D. Cal. 2014) (internal citations and quotations omitted). The reason is simple: to show that an unjust-enrichment claim is appropriate, a plaintiff needs to allege that there is an unenforceable or voidable contract. *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004). But there is an enforceable contract in the record that covers the subject matter of Plaintiffs' unjust-enrichment claim. RJN, Exs. A-T. Accordingly, restitution in quasi-contract is not available.[7] *See O'Connor*, 58 F. Supp. 3d at 999-1000.

In any event, Plaintiffs have failed to allege facts under the circumstances where courts do permit quasi-contract claims. Such claims are appropriate only (1) in lieu of breach of contract damages, where an asserted contract is found to be unenforceable or ineffective, or (2) where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct, but the plaintiff has chosen not to sue in tort. *McBride*, 123 Cal. App. 4th at 388. Here, Plaintiffs do not allege either circumstance, so this cause of action fails.

### D.    The Court should dismiss Plaintiffs contract and quasi-contract claims with prejudice.

Because the defects in Plaintiffs' contract and quasi-contract claims are incurable, the Court should dismiss those causes of action with prejudice. Though Rule 15(a) generally permits leave to amend, it "is not to be granted automatically." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d

---

[7] This state-law doctrine is not undermined by the availability of alternative pleading under Rule 8. *See Smith v. Allmax Nutrition, Inc.*, No. 15-cv-00744, 2015 WL 9434768, at *9 (E.D. Cal. Dec. 24, 2015) ("Although [Fed. R. Civ. P. 8] allows a party to state multiple, even inconsistent claims, the rule does not allow a plaintiff invoking state law to assert an unjust enrichment claim while also alleging an express contract.'") (internal citations omitted); *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) (same).

1   1080, 1087 (9th Cir. 2002) (internal quotations and citations omitted). If amendment of a claim is

2   futile—*i.e.*, if "no set of facts" can be proved under the amendment which would constitute a

3   valid claim—the Court should dismiss that claim with prejudice. *Baker v. Pac. Far E. Lines, Inc.*,

4   451 F. Supp. 84, 89 (N.D. Cal. 1978).

5           Here, there are no additional facts Plaintiffs can plead that would cure their claim for

6   breach of the implied duty of care. As set forth above, the parties have entered into a fully-

7   integrated contract; under that contract, Facebook had no specific duty to provide the metrics at

8   issue. Likewise, amendment of Plaintiffs' restitution in quasi-contract claim is futile because

9   Plaintiffs allege that there is an enforceable contract that governs the subject matter at issue.

10  Accordingly, Facebook requests that the Court dismiss these causes of action with prejudice.

11  **V.      CONCLUSION**

12          Plaintiffs' failure to plead actual reliance on either miscalculated Average Duration Metric

13  requires dismissal of its UCL cause of action, and leave to amend only if Plaintiffs can allege

14  such actual reliance. And because Plaintiffs rely on an express contract with an integration clause,

15  their implied-duty-of-care and restitution causes of action cannot proceed. Because amendment of

16  the breach-of-contract and quasi-contract claims would be futile, the Court should dismiss them

17  with prejudice.

18  Dated:  April 10, 2017                          Respectfully submitted,

19                                                  KEKER, VAN NEST & PETERS LLP

20

21                                      By:   */s/ Ashok Ramani*
                                              ASHOK RAMANI
22                                            PAVEN MALHOTRA
                                              ELIZABETH K. MCCLOSKEY
23                                            IAN KANIG

24                                            Attorneys for Defendant Facebook, Inc.

25

26

27

28

1156257