UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS LETIZIA, et al., <br> Plaintiffs, <br> v. <br> FACEBOOK INC., <br> Defendant. | Case No. 16-cv-06232-TEH <br><br> **ORDER DENYING PLAINTIFFS' MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL** |

On March 13, 2017, Plaintiffs filed a Motion for Appointment of Interim Class Counsel. ECF No. 35 ("Mot."). Defendant Facebook ("Facebook") timely opposed the motion, ECF No. 43 ("Opp'n"), and Plaintiffs timely replied, ECF No. 44 ("Reply"). The Court heard oral arguments on Plaintiffs' motion on April 17, 2017, and also granted Plaintiffs a post-hearing opportunity to address *In re Nest Labs Litigation*, Case No. 14-cv-01363-BLF, 2014 U.S. Dist. LEXIS 115596 (N.D. Cal. Aug. 18, 2014), through a two-page brief. After carefully considering the parties' written and oral arguments, the Court DENIES Plaintiffs' motion for the reasons set forth below.

**I. FACTUAL BACKGROUND**

Facebook is a social media company that, rather than charge its account holders to access its site, makes over 95% of its overall revenue by selling advertising services. Compl. ¶ 15. One type of advertising service that Facebook offers is video advertisements, where advertisers can pay money to have video displayed to Facebook users. *Id*. ¶ 16. Facebook's video advertising services include marketing analytics, which allow advertisers to monitor the effectiveness of their video ads. *Id*. ¶ 18. Advertisers rely on these tools to determine where to spend advertising dollars and the effectiveness of the dollars spent on the video ads. *Id.*

In May 2014, Facebook began providing video advertising purchasers with more marketing analytics metrics. *Id*. ¶ 20. These included the "Average Duration of Video

Viewed," which measured the average amount of time that users watched a video. Plaintiffs allege this metric is particularly important because "the longer people watch an advertisement, the greater the advertisement's impact on the viewer." *Id*. ¶ 21. Advertisement purchasers were told this metric was calculated by dividing the total time spent watching the video by all users by the total number of users who spent any time watching the video. *Id*. ¶ 26. However, in August 2016, Facebook disclosed its "Average Duration of Video Viewed" metric had been improperly calculated as it was dividing the total time spent watching the video by all users by the total number of users who spent three or more seconds watching the video. *Id*. ¶ 27.

Plaintiffs filed this putative class action suit seeking to represent the following class: "All persons or entities who, from May 4, 2014 to September 23, 2016 ("Class Period"), had an account with Facebook, Inc. and who paid for placement of video advertisements on a Facebook-owned website." *Id*. ¶ 43. Plaintiffs allege three claims for relief: (1) Violation of the California Unfair Competition Law; (2) Breach of Implied Duty to Perform with Reasonable Care; and (3) Quasi-contract claim for Restitution. *Id*. ¶¶ 54–77.

## II. PROCEDURAL BACKGROUND

On October 27, 2016, the Plaintiffs in *Letizia v. Facebook*, Case No. 3:16-cv-06232-TEH, filed suit. In January 2017, the Plaintiffs in *Quirky v. Facebook,* Case No. 3:17-cv-00233-TEH, filed suit. Both of these lawsuits involved a putative class action against Facebook alleging the same claims, on behalf of similar classes, for the same conduct. On January 24, 2017, the Plaintiffs in the *Quirky* case filed an administrative motion to relate their case to the *Letizia* case. *Letizia*, ECF No. 25. The *Letizia* Plaintiffs filed an opposition to this motion arguing the *Quirky* case was a "copycat" lawsuit subject to dismissal or stay under the "first to file" doctrine and that the *Quirky* Plaintiffs' pending bankruptcy proceedings could unnecessarily complicate or delay resolution of the *Letizia* action. *Letizia*, ECF No. 27 at 2:21–27. In addition, on January 30, 2017, the *Letizia* Plaintiffs filed a Motion to Intervene in the *Quirky* case in an attempt to dismiss or stay the

2

1 case. *Quirky*, ECF No. 10.  One week later, on February 6, 2017, the Court issued an order relating the two cases.  *Letizia*, ECF No. 29.  Shortly thereafter, the *Letizia* Plaintiffs withdrew their motion to intervene in the Quirky case, *see Quirky,* ECF No. 29, and the Plaintiffs from both cases, along with Defendant Facebook, filed a joint stipulation seeking to consolidate both cases, *see Letizia*, ECF No. 31, which the Court granted, *see Letizia*, ECF No. 32.

## III. LEGAL STANDARD

The Court is provided broad authority in making class counsel appointments.  7B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1802.3 (3d ed. 2017).  Federal Rule of Civil Procedure 23(g)(3) allows the Court to "designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action."  While Rule 23(g)(3) does not provide a standard for courts to use in appointing interim class counsel, courts in this district typically consider the factors set forth in Federal Rule of Civil Procedure 23(g)(1).  *Gallagher v. Bayer AG*, Case No. 14-cv-04601-WHO, 2015 WL 4932292 (N.D. Cal. Aug. 18, 2015).  These factors include: (1) the work counsel has done in identifying or investigating the potential claims in the action; (2) counsel's experience in handling class actions, complex litigation, and the types of claim asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).

## IV. DISCUSSION

While the parties do not dispute whether the three firms, either collectively or individually, can adequately represent the class, the parties dispute whether an appointment of interim class counsel is warranted.  In support of their motion, Plaintiffs argue appointing interim class counsel will render many benefits, including avoiding future delays and conflicts over case leadership, simplified recordkeeping of attorney billing, and increased certainty for Facebook regarding what counsel to deal with.  Mot. at 3–4. Plaintiffs also cite several cases in which courts have granted a motion to appoint interim

class counsel. *See, e.g., Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 994 (N.D. Cal. 2016); *In re Hyundai Sonata Engine Litig.*, No. 5:15-cv-1685-BLF, ECF No. 35 (N.D. Cal. Sept. 8, 2015). However, the motions to appoint interim class counsel in these cases went unopposed. Plaintiff also cites to *Gallagher v. Bayer AG*, No. 14-cv-04601-WHO, 2015 WL 4932292, at *8 (N.D. Cal. Aug. 18, 2015), where the court stated that the plaintiffs in that case had "pointed to several cases in which courts have appointed interim class counsel in the absence of other class suits." While the *Gallagher* court's statement was true, a closer examination of the cases the court relied on in making the statement illustrate that those cases, too, involved unopposed motions to appoint interim class counsel.[1] At the same time, the *Gallagher* court did grant an opposed motion to appoint interim class counsel because the plaintiffs satisfied the Rule 23(g)(1) factors, and also because the defendants did not present a compelling reason to deny the motion, nor did they show how they would be prejudiced. *Gallagher*, 2015 WL 4932292, at *8.

Facebook, on the other hand, argues there is no need for appointment of interim lead counsel because this action involves a single, consolidated suit, with no rival suits or firms on the horizon; and also because Plaintiffs' counsel are already cooperating with each other and Facebook. Opp'n at 1. And "[w]here there are no competing lawsuits or firms, courts in this district have been unwilling to appoint interim class counsel." *See In re Seagate Tech. LLC Litig.*, Case No. 16-cv-00523-RMW, 2016 WL 3401989 (N.D. Cal. June 21, 2016) (collecting cases).

The Court finds this case is analogous to *In re Nest Labs Litigation*, Case No. 14-cv-01363-BLF, 2014 U.S. Dist. LEXIS 115596 (N.D. Cal. Aug. 18, 2014), where the court rejected the appointment of interim class counsel. As in this case, that case arose from two separate cases with similar complaints that were later related and then consolidated by the

---

[1] *See Paraggua v. LinkedIn Corp.*, Case No. 5:12-cv-03088 EJD, 2012 WL 3763889 (N.D. Cal. Aug. 29, 2012) (granting an unopposed motion to appoint interim class counsel); *Melgar v. Zicam, LLC*, Case No. 2:14-cv-00160-MCE-AC, 2014 WL 5486676 (N.D. Cal. Oct. 29, 2014) (same); *Valdez v. Saxon Mortg. Servs., Inc.*, Case No. 2:14-cv-03595-CAS(MANx), 2015 WL 99387 (C.D. Cal. Jan. 6, 2015) (recognizing approval of prior unopposed motion to appoint interim class counsel).

4

parties' stipulation. *Id.* at *3. In deciding to deny Plaintiffs motion to appoint interim class counsel, the court noted that Plaintiffs had not identified any "tag-along" suits on the horizon, nor did there appear to be any rivalry between the two firms or uncertainty as to their respective roles. *Id.* at *4. In fact, the Court recognized that the plaintiffs had already been coordinating and collaborating efficiently. *Id.* In closing, the Court recognized it was "not necessary to appoint interim class counsel merely to maintain the *status quo." Id.* at *5. Here, like the plaintiffs in *In re Nest,* the separate plaintiffs' counsel are presently collaborating and the parties have not shown any signs that a rivalry exists. And while Plaintiffs attempt to demonstrate a rivalry does indeed exist, they also concede that the *Letizia* counsel and *Quirky* counsel "*were* at odds," that they "*competed* for control," and that the "rivalry has been suspended." ECF No. 49 at 2:3–5 (emphasis added). Also, like the plaintiffs in *In re Nest*, Plaintiffs' counsel admitted during oral arguments that they cannot presently identify any looming rival suits or law firms.

For these reasons, the Court, like the court in *In re Nest*, finds appointment of interim class counsel is not necessary to maintain the status quo. In the event a rival law firm does seek to jump in and take the reins at a later time, the parties may file a renewed motion at that time.

**V. CONCLUSION**

For the reasons stated above, the Court DENIES Plaintiffs' motion WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

Dated: 4/25/17 _____
THELTON E. HENDERSON
United States District Judge

5