UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLER BARNETT PR, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK INC.,<br><br>Defendant. | Case No. 16-cv-06232-JSW<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 79 |

Now before the Court for consideration is the motion to dismiss filed by Defendant Facebook, Inc. The Court has considered the parties' papers, relevant legal authority, and the record in this case, and the Court finds the motion suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). For the reasons set forth below, the Court HEREBY GRANTS Facebook's motion to dismiss, but will afford Plaintiffs leave to amend.

**BACKGROUND**

**A.  Factual Allegations.**

Facebook operates a social media website and earns revenue, in part, by selling advertising services. (Dkt. No. 70, Second Amended Complaint ("SAC") ¶ 12.) Facebook offers video advertisements, allowing advertisers to pay money to have their video displayed to Facebook's users. (*Id.* ¶ 13.) Facebook's video advertising services include providing the advertisers various "marketing analytics" which allow the advertisers to monitor and evaluate the efficacy of their video advertisements. (*Id.* ¶ 16.) Marketing analytics are expected in the field of video advertisements, and Facebook promoted its analytics as a prime reason that advertisers should purchase video advertisements on its platform. (*Id.*)

In May 2014, Facebook began offering additional analytics, including analytics designed

to provide advertisers with information regarding audience retention. (*Id.* ¶ 18.) One of these analytics was "Average Duration of Video Viewed." (*Id.* ¶ 19.) This analytic is supposed to measure the average amount of time a person viewed the video in question. (*Id.*) This is important because studies show that the longer an individual views a video advertisement, the greater the ad recall, brand awareness, and "purchase intent" the advertisement has. (*Id.*) Advertisers are willing to pay more to place video advertisements which are viewed for longer periods of time. (*Id.*)

Facebook told advertisers that the "Average Duration of Video Viewed" analytic was the "total time spent watching a video divided by the total number of people who have played the video." (*Id.* ¶ 24.) This, apparently, was not true. In fact, the "Average Duration of Video Viewed" analytic had been calculated erroneously as the "total time spent watching a video" divided by the "number of people who have viewed a video *for three or more seconds*." (*Id*. ¶ 25 (emphasis added).) Due to this error, the "Average Duration of Video Viewed" analytic was inflated. For example, when a user simply scrolled past an auto-playing video advertisement, the one second that the video played was included in the "total time spent watching a video," but that user was not included in the list of people who had viewed the video. (*See id.* ¶¶ 27, 32.)

Facebook acknowledged that the above error resulted in the "Average Duration of Video Viewed" analytic being inflated by between 60 and 80 percent. (*Id.*¶ 31.) Thus, Facebook's ads were made to appear as if they were performing better than they actually were.[1] (*Id.*) It is

Plaintiffs Tyler Barnett PR, LLC; LEE One, LLC; Quirky, Inc.; and Wink, Inc. are video advertisers who purchased video advertisements on Facebook's platform while Facebook provided the above described erroneous analytics. (*Id.* ¶¶ 41, 47, 53.) Plaintiffs allege that erroneous analytics induced them, and other video advertisers, to pay more for video advertisements on Facebook's platform than they otherwise would have been willing to pay. (*Id.* ¶ 36.) They also allege that Facebook's erroneous analytics gave it an unfair competitive advantage over other online video advertising platforms. (*Id.*¶ 38.) Plaintiffs Tyler Barnett and LEE One have alleged

---

[1] Facebook's error regarding the "Average Duration of Video Viewed" analytic also affected the "Average % of Video Viewed" analytic because calculation of the

2

that they intend to continue purchasing video advertisements on Facebook's platform in the future. (*Id.* ¶¶ 45, 51.)

**B.    Procedural Background.**

Plaintiff Tyler Barnett, along with others, filed this action on October 27, 2016. (Dkt. No. 1, Complaint.) An additional case was filed by Plaintiffs Quirky, Inc. and Wink, Inc. on January 17, 2017. After consolidation of these two cases, an amended consolidated complaint was filed. (Dkt. No. 34, Amended Complaint.)[2] These cases were assigned to the Honorable Thelton Henderson.

In the amended complaint, Plaintiffs asserted three causes of action: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) breach of implied duty to perform with reasonable care; and (3) quasi-contract for restitution. Plaintiffs sought to represent a class composed of:

> All persons or entities who, from May 4, 2014, to September 23, 2016 . . . had an account with Facebook, Inc., and who paid for placement of video advertisements on a Facebook-owned website. Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

(Amended Complaint ¶ 43.)[3] In addition to damages, Plaintiffs sought the following injunctive relief:

> Awarding injunctive relief and other equitable relief as is necessary to protect the interests of the Class, including: (i) an order prohibiting Facebook from engaging in the wrongful acts described herein; (ii) requiring Facebook to engage third-party auditors to conduct audits and evaluations of Facebook's advertising metrics on a periodic basis and ordering them to promptly correct any problems or issues detected by these auditors, and (iii) requiring Facebook to disclose any further inaccurate advertising metrics in a timely and accurate manner.

---

[2] On December 8, 2017, Plaintiffs Quirky, Inc. and Wink, Inc. voluntarily dismissed their claims against Facebook, without prejudice. (Dkt. No. 93.)

[3] September 23, 2016, the cut-off date for the class, is apparently the date on which Facebook's vice president of business and marketing partnerships acknowledged the miscalculation of the "Average Percentage of Video Viewed" analytic. (*See* SAC ¶ 26.)

3

1  (*Id.*, Prayer for Relief B.)

2  Facebook moved to dismiss the amended complaint. On July 14, 2017, Judge Henderson issued an order granting in part and denying in part Facebook's motion to dismiss. *See Letizia v. Facebook, Inc.*, — F. Supp. 3d — , 2017 WL 3006950 (N.D. Cal. July 14, 2017). Relevant to the instant motion, Judge Henderson found that Plaintiffs lacked standing to seek the requested injunctive relief because "Plaintiffs have not alleged that any of the Plaintiffs are currently purchasing video advertisements from Facebook or that any of them intend to do so in the future." *Id.* at *8. Thus, Judge Henderson concluded that Plaintiffs had failed to show a "real or immediate" threat of future injury, but afforded Plaintiffs leave to amend. *Id*. Judge Henderson also dismissed Plaintiffs' quasi-contract cause of action with prejudice. *See id.* at *12-13.

Following Judge Henderson's retirement, these consolidated cases were assigned to this Court and Plaintiffs filed the SAC. The SAC is materially similar to the earlier amended complaint (with the same causes of action alleged, the same relief sought, and brought on behalf of the same putative class). In the SAC, however, Plaintiffs Tyler Barnett and LEE One allege that they intend to continue purchasing video advertisements on Facebook's platform in the future. (*Id.* ¶¶ 45, 51.) Facebook has moved to dismiss Plaintiffs' request for injunctive relief and quasi-contract cause of action.

## DISCUSSION

### A.  Applicable Legal Standard.

Facebook argues that Plaintiffs lack Article III standing to pursue their claims for injunctive relief. Because questions of Article III standing go to a federal court's subject-matter jurisdiction, arguments that standing is lacking is "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *see also Cetacean Community v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (where plaintiffs lack standing, a suit should be dismissed under Rule 12(b)(1)). A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction may be "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where, as here, a defendant facially attacks the Court's jurisdiction, the Court "accept[s] as true all facts alleged in the

4

complaint and draw[s] all reasonable inferences in plaintiffs' favor." *Snyder & Associates Acquisitions LLC v. United States*, 859 F.3d 1152, 1155 n.1 (9th Cir. 2017).

**B.     Plaintiffs Have Failed to Allege that They Have Standing to Seek Injunctive Relief.**

A party seeking to invoke the Court's jurisdiction bears the burden of demonstrating that it has standing to sue. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In order to meet this burden, the plaintiff must show that it "(1) suffered injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robbins*, — U.S. — , 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560-61). At the pleading stage, the plaintiff "must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). In addition, and significant for purposes of Facebook's motion to dismiss, a plaintiff "must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000); *see also Center for Biological Diversity v. Mattis*, 868 F.3d 803, 815 (9th Cir. 2017) (same).

In the context of requests for injunctive relief, the standing inquiry requires a plaintiff to "demonstrate that [it] has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with a 'sufficient likelihood that he will again be wronged in a similar way.'" *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting first *Lujan,* 504 U.S. at 560, and then *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). This latter inquiry turns on whether the plaintiff has a "real and immediate threat of repeated injury." *Id.* The threat of future injury cannot be "conjectural or hypothetical" but must be "certainly impending" to constitute an injury in fact for injunctive relief purposes. *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1113 (9th Cir. 2017).

Plaintiffs have failed to allege sufficient facts demonstrating a "real and immediate threat of repeated injury."[4] Plaintiffs' causes of action (and request for injunctive relief) are premised on

---

[4] Plaintiffs contend that Facebook's motion must be denied because Judge Henderson, in the order on the prior motion to dismiss, held that Plaintiffs would have standing to seek an injunction so long as they could allege a "future interest" in purchasing video advertisements in the future. (Opposition at 7.) Judge Henderson did not so hold. Judge Henderson merely held that a "future

5

the fact that Facebook allegedly inflated its "Average Duration of Video Viewed" and "Average % of Video Viewed" video analytics between May 2014 through September 2016. (*See, e.g.*, SAC ¶¶ 33-39; 43-44; 49-50; 58.) Facebook's alleged past wrong in providing these inflated video analytics, however, is insufficient on its own to give Plaintiffs standing to pursue injunctive relief. *See Davidson*, 873 F.3d at 1113. The Ninth Circuit has recognized that past wrongs can be relevant evidence bearing on whether a plaintiff faces a "real and immediate threat of repeated injury." *Id.* Here, however, Facebook's alleged past wrong, standing alone, does not give rise to even a plausible inference that Plaintiffs will be injured by inaccurate analytics in the future. To the contrary, Plaintiffs do not appear to contest that in 2016 Facebook identified, and corrected, the two allegedly inflated analytics.

In their opposition, Plaintiffs argue that they have standing to pursue injunctive relief because of Facebook's allegedly faulty "verification and auditing" practices. They contend that these faulty practices resulted in the two inflated video metrics on which this action is based. Because the verification and auditing practices allegedly have not been remedied, Plaintiffs contend there is a continued risk of similar injuries in the future and they are unable to rely on Facebook's analytics going forward.

Plaintiffs argue that this theory of standing is cognizable under the Ninth Circuit's recent decision in *Davidson*. In *Davidson*, the plaintiff brought false advertising and UCL claims against the manufacturer of pre-moistened wipes. The defendant marketed, and labeled, their wipes as "flushable" (meaning they were suitable for disposal down a toilet). *Davidson*, 873 F.3d at 1107. Plaintiff paid a premium for these "flushable" wipes, as compared to non-flushable wipes. *Id.* Ultimately, however, plaintiff discovered that defendant's products were not truly "flushable." As part of her UCL claim, plaintiff sought both restitution and an injunction. *Id.* at 1108. The district court dismissed the injunctive relief claim, finding that plaintiff lacked standing because she was

---

interest" in purchasing video advertisements on Facebook's platform was necessary for securing injunctive relief. *See Letizia*, 2017 WL 3006950, at *8. He did not hold that this allegation would be *sufficient*, by itself, to establish standing. Judge Henderson did not address, because he did not have to in order to resolve the earlier motion to dismiss, Facebook's remaining arguments against Plaintiffs' standing.

6

unlikely to purchase the wipes in the future, and there was, therefore, no risk of future injury. *Id.* at 1109.

The Ninth Circuit reversed. The court noted that it was an open question in this circuit whether a "previously deceived consumer who brings a false advertising claim can allege that her inability to rely on the advertising in the future is an injury sufficient to grant her Article III standing to seek injunctive relief." *Id.* at 1112-13. The Court found that such a consumer had standing to pursue injunctive relief, in at least two potential cases:

> In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." Id. at 1115. In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.

*Id.* (citations omitted). The *Davidson* plaintiff alleged that she wanted to purchase defendant's flushable wipes in the future but she could not rely on defendant's representation with any confidence. *Id.* at 1116. The Ninth Circuit found these allegations sufficient for standing purposes:

> We therefore hold that Davidson's allegations that she has no way of determining whether the representation "flushable" is in fact true when she regularly visits stores . . . where Defendants' "flushable" wipes are sold constitutes a threatened injury [that is] certainly impending, thereby establishing Article III standing to assert a claim for injunctive relief.

*Id.* (citation and internal quotation marks omitted).

Plaintiffs argue that unless Facebook's verification and auditing practices are changed, they will suffer the same injury as the consumer in *Davidson* because they will be unable to determine the accuracy of Facebook's analytics in the future. (*See* Opposition at 8.) The Court has no qualms with this theory of standing, and recognizes its potential applicability to this case. The problem, however, is Plaintiffs do not allege sufficient facts to support this theory. Plaintiffs' theory relies on the premise that Facebook's verification and auditing practices are deficient, leading to errors and uncertainty regarding the video analytics. The SAC, however, contains no

7

factual allegations describing Facebook's auditing practices, let alone explaining why these practices are deficient. Instead, the SAC contains (1) factual allegations about one prior instance of Facebook providing inaccurate analytics (which have since been corrected); (2) a statement that Facebook's analytics are not audited by a group called the "Media Rating Council," and (3) conclusory assertions that Facebook's auditing practices are deficient or improper. The Court finds these allegations insufficient to plausibly allege that Plaintiffs are "unable to rely" on Facebook's video analytics for purposes of *Davidson*.

The question becomes whether leave to amend should be given. Plaintiffs' opposition suggests that Plaintiffs may be able to add additional facts that would be relevant to Facebook's auditing practices. For example, Plaintiffs discuss a news story which suggests that Facebook has made numerous mistakes relating to advertising analytics over the years. (*See* Opposition at 10.) If Plaintiffs are able to plead *facts* demonstrating that Facebook has a track record of providing inaccurate analytics as a result of deficient auditing practices, this could, in theory, give rise to a plausible inference that Plaintiffs face a "real and immediate" risk of either (1) being subjected to inaccurate analytics in the future, or (2) being unable to rely on the accuracy of Facebook's analytics in the future.

The Court cannot say that it would be futile to grant Plaintiff leave to amend to properly allege a theory of standing under *Davidson*. Accordingly, the Court will afford Plaintiff one final opportunity to amend their injunctive relief claims. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (leave to amend should be granted unless the Court "determines that the pleading could not possibly be cured by the allegation of other facts").

**C.   Plaintiffs' Shall Not Replead Their Quasi-Contract Claim.**

In the order granting in part Facebook's motion to dismiss the first amended consolidated complaint, Judge Henderson dismissed, with prejudice, Plaintiffs' quasi-contract claim. *See Letizia*, 2017 WL 3006950 at \*12-13. Plaintiffs replead a quasi-contract claim in the SAC, but include a footnote stating that they have done so "solely to preserve [the claim] for appeal." (SAC at 18 n.18.) Facebook has moved to dismiss this claim.

The Court understands Plaintiffs' desire to preserve their right to appeal the dismissal of

8

their quasi-contract claim. The Ninth Circuit has made held, however, that "[f]or claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal." *Lacey v. Maricopa Cty.*, 693 F.3sd 896, 928 (9th Cir. 2012). Accordingly, Plaintiffs do not need to include their quasi-contract claim in their subsequent complaints in order to preserve their appellate rights. Further, the Court would prefer that Plaintiffs omit this claim in the future to avoid confusion and to keep subsequent complaints focused on the "live" claims. Accordingly, Plaintiffs shall omit this claim from subsequent amended complaints.

## CONCLUSION

For the foregoing reasons, Facebook's motion to dismiss is GRANTED. Plaintiffs' claims seeking injunctive relief are DISMISSED with leave to amend. Plaintiffs may file a third amended consolidated complaint by Friday, January 19, 2018. Plaintiffs shall not replead their quasi-contract claim (or any other claim previously dismissed without leave to amend) in this, or any other, subsequent complaint.

**IT IS SO ORDERED.**

Dated: December 18, 2017

_____
JEFFREY S. WHITE
United States District Judge