KEKER, VAN NEST & PETERS LLP
DAVID SILBERT - # 173128
dsilbert@keker.com
PAVEN MALHOTRA - # 258429
pmalhotra@keker.com
MICHELLE S. YBARRA - # 260697
mybarra@keker.com
ELIZABETH K. MCCLOSKEY - #268184
emccloskey@keker.com
EDUARDO E. SANTACANA - # 281668
esantacana@keker.com
CHRISTOPHER S. SUN - # 308945
csun@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| TYLER BARNETT PR, LLC, LLE ONE, LLC, d/b/a Crowd Siren and d/b/a Social Media Models, and JONATHAN MURDOUGH, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br>   v.<br>FACEBOOK, INC.,<br>        Defendant. | Lead Case No. 4:16-cv-06232-JSW<br>Related Case No. 4:17-cv-00233-JSW<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS THE THIRD AMENDED CONSOLIDATED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Pursuant to Fed. R. Civ. P. 12(b)(1)**<br><br>Judge:    Hon. Jeffrey S. White<br><br>Date:    April 27, 2018<br>Time:    9:00 AM<br>Dept.:    Courtroom 5<br><br>Date Filed: October 27, 2016<br><br>Trial Date: None Set |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................1

II. FACTUAL BACKGROUND...............................................................................................1

III. PROCEDURAL BACKGROUND........................................................................................3

IV. LEGAL STANDARD............................................................................................................4

V. ARGUMENT .........................................................................................................................6

    A. Plaintiffs lack standing to seek future third-party audits. .........................................6

    B. Plaintiffs lack standing to require "timely and accurate" disclosure of hypothetical future metrics errors. ..............................................................................9

    C. Plaintiffs lack standing to seek injunctive relief as to the corrected metrics. ..........9

VI. CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Bagley v. Travelers Home & Marine Ins. Co.*
   No. C16-0706 JCC, 2016 WL 4494463 (W.D. Wash. Aug. 25, 2016) ...................................... 8

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007).................................................................................................................. 1

*City of Los Angeles v. Lyons*
   461 U.S. 95 (1983).............................................................................................................. 6, 8

*Clapper v. Amnesty Int'l USA*
   568 U.S. 398 (2013).................................................................................................... 5, 6, 7, 9

*DaimlerChrysler Corp. v. Cumo*
   547 U.S. 332 (2006).............................................................................................................. 1, 5

*Davidson v. Kimberly-Clark Corp.*
   873 F.3d 1103 (9th Cir. 2017) ............................................................................................. 5, 7

*Gospel Missions of Am. v. City of Los Angeles*
   328 F.3d 548 (9th Cir. 2003) .................................................................................................. 9

*Hamilton v. Gen. Mills, Inc.*
   No. 6:16-CV-382-MC, 2016 WL 4060310 (D. Or. July 27, 2016) ................................... 5, 7, 8

*Hodgers-Durgin v. de la Vina*
   199 F.3d 1037 (9th Cir. 1999) ........................................................................................... 5, 6, 9

*In re Adobe Sys., Inc. Privacy Litig.*
   66 F. Supp. 3d 1197 (N.D. Cal. 2014) .................................................................................. 5, 9

*In re Gilead Scis. Sec. Litig.*
   No. C03-4999 MJJ, 2005 WL 181885 (N.D. Cal. Jan. 26, 2005) ............................................ 2

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*
   903 F. Supp. 2d 942 (S.D. Cal. 2012).................................................................................... 2

*Lewis v. Casey*
   518 U.S. 343 (1996)................................................................................................................. 5

*Opperman v. Path, Inc.*
   84 F. Supp. 3d 962 (N.D. Cal. 2015) ..................................................................................... 10

*O'Shea v. Littleton*
   414 U.S. 488 (1974)........................................................................................................ 1, 2, 5

*Palmer v. Apple Inc.*
   No. 5:15-CV-05808-RMW, 2016 WL 1535087 (N.D. Cal. Apr. 15, 2016)................... 7, 8, 10

*Safe Air for Everyone v. Meyer*
  373 F.3d 1035 (9th Cir. 2004) .......................................................................................... 4

*Summers v. Earth Island Inst.*
  555 U.S. 488 (2009) ......................................................................................................... 7

*U.S. v. Ritchie*
  342 F.3d 903 (9th Cir. 2003) ............................................................................................ 2

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ("UCL") .................................................................... 3, 4

**Federal Rules**

Fed. Rule of Civ. Proc. § 12(b)(1) ...................................................................................... 4

## FACEBOOK'S NOTICE OF MOTION AND MOTION TO DISMISS

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 27, 2018 at 9:00 AM, or as soon thereafter as counsel may be heard before the Honorable Jeffrey S. White, Courtroom 5 – 2nd Floor, 1301 Clay Street, Oakland, California, 94612, Defendant Facebook, Inc. will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss Plaintiffs' requests for injunctive relief. This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Christopher Sun, Facebook's Request for Judicial Notice, the Proposed Order filed herewith, the complete files and records in this action, and such other evidence as may be allowed at the hearing of this motion.

## STATEMENT OF ISSUE TO BE DECIDED

When the parties agree that the error over which Plaintiffs sued has been corrected, and Plaintiffs have failed to plead facts establishing an ongoing or imminent possibility of harm, do Plaintiffs have Article III standing to seek injunctive relief?

Respectfully submitted,

KEKER, VAN NEST & PETERS LLP

Dated: February 23, 2018       By:   */s/ David Silbert*
DAVID SILBERT
PAVEN MALHOTRA
MICHELLE S. YBARRA
ELIZABETH K. MCCLOSKEY
EDUARDO E. SANTACANA
CHRISTOPHER S. SUN

Attorneys for Defendant
FACEBOOK, INC.

## I. INTRODUCTION

Plaintiffs seek a prospective remedy for a past harm. They allege that, because Facebook previously miscalculated the average time that users spent watching video advertisements on the Facebook platform—an error that Facebook detected, corrected, and publicly announced before Plaintiffs filed this action—Plaintiffs are entitled to sweeping injunctive relief requiring mandatory third-party audits of *all* Facebook advertising metrics to identify hypothetical future errors that may never occur, and that would be corrected without such audits if they did.

Plaintiffs fail to allege any injury that is sufficiently "concrete, particularized, and actual or imminent" to confer standing to seek this relief, as Article III requires. *DaimlerChrysler Corp. v. Cumo*, 547 U.S. 332, 342 (2006). To the contrary, Plaintiffs' new allegations confirm not only that Facebook has addressed and disclosed every error described in the Third Amended Complaint, but also that Facebook has implemented internal and third-party verification procedures to minimize the risk of additional errors. The potential future risk that they allege is thus "conjectural [and] hypothetical," which is insufficient to confer standing. *O'Shea v. Littleton*, 414 U.S. 488, 493–95 (1974) (citation and internal quotation marks omitted).

When the Court dismissed Plaintiffs' injunctive-relief claims in their Second Amended Complaint, it gave them one final opportunity to plead facts that demonstrate their standing to assert those claims. ECF No. 94 at 8. Because the Third Amended Complaint fails to do so—and instead further underscores why Plaintiffs *lack* standing—the Court should now dismiss their injunctive-relief claims with prejudice.

## II. FACTUAL BACKGROUND[1]

Plaintiffs allege that between May 2014 and September 2016, Facebook sold advertising space on the Facebook platform and provided video advertisers with two miscalculated metrics among many metrics that Facebook made available to advertisers to use as they see fit to evaluate video-ad performance. Plaintiffs allege that those two miscalculated metrics caused them and

---

[1] For the purpose of this Motion to Dismiss only, Facebook accepts as true the well-pleaded facts alleged in Plaintiffs' Third Amended Complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007).

other putative class members to overestimate the value of their video ads and to buy more ads than they otherwise would have.

Plaintiffs do not allege, nor could they allege, that the miscalculation was intentional. To the contrary, they concede that Facebook detected the error, corrected it, and publicly announced it before Plaintiffs filed this action.[2] *See* ECF No. 97, Third Amended Complaint ("TAC") ¶ 26 and n.15; Declaration of Christopher Sun in Support of Facebook's Motion to Dismiss Third Amended Complaint ("Sun Decl."), Ex. D. Specifically, Plaintiffs allege that in August and September 2016, Facebook published two posts announcing that two of its video ad metrics, "Average Duration of Video Viewed" and "Average % of Video Viewed," had been improperly calculated. *Id.* ¶¶ 25-26. The miscalculation occurred because Facebook calculated the "Average Duration of Video Viewed" by dividing the total amount of time spent watching a video (watch time) by the total number of users who watched the video for three seconds or more, rather than dividing by the total number of users who watched the video for any amount of time (including one or two seconds). *Id.* ¶ 26-27. This discrepancy also affected the "Average % of Video Viewed" metric because that metric used the Average Duration of Video Viewed metric in its calculation. *Id.* ¶ 25.

The articles that the TAC incorporates by reference also explain that, after Facebook detected this error, it conducted a comprehensive internal metrics audit, and also expanded third-party verification of its metrics through several measurement companies including Nielsen, MarketShare, Moat, and Integral Ad Science. Sun Decl., Exs. A, B.[3]  Plaintiffs do not allege that Facebook's current system of providing or evaluating metrics is in any way deficient, let alone so flawed that it could give rise to an injunctive-relief claim. To the contrary, every version of

---

[2] As set forth in the accompanying Request for Judicial Notice, because Plaintiffs quote from and include a hyperlink to the Facebook announcement in the TAC (TAC ¶ 26 & n.15), the full announcement has been incorporated into the TAC by reference and is properly before the Court on a motion to dismiss. U.S. *v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

[3] Plaintiffs have also incorporated by reference Exhibits A-C to the Sun Declaration by quoting from them in the Third Amended Complaint. TAC ¶¶ 43 & n.17, 50 & n.23, 52 & n.25. Accordingly, the Court may properly consider the full content of these articles on a motion to dismiss. *In re Gilead Scis. Sec. Litig.*, No. C03-4999 MJJ, 2005 WL 181885, at *3 (N.D. Cal. Jan. 26, 2005); *see also In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 955 (S.D. Cal. 2012).

Plaintiffs' complaint has sought a class period that terminates on September 23, 2016, the date that Facebook announced the miscalculations. *See* TAC ¶ 73; ECF No. 70 ¶ 58; ECF No. 34 ¶ 43; ECF No. 1 ¶ 34.

### III.  PROCEDURAL BACKGROUND

In July 2017, Judge Henderson dismissed Plaintiffs' requests for injunctive relief under California's unfair-competition law, Cal. Bus. & Prof. Code § 17200 ("UCL"), for lack of Article III standing, finding that because Plaintiffs had not alleged that they were currently purchasing video ads from Facebook or intended to do so in the future, Plaintiffs had failed to show a "real or immediate threat" of future injury. ECF No. 65 at 14-15.

Plaintiffs filed their Second Amended Complaint ("SAC") in August 2017. ECF No. 70. Because they still lacked standing to assert injunctive-relief claims, Facebook again moved to dismiss those claims. ECF No. 79. This Court granted that motion in December. ECF No. 94. The Court found that Plaintiffs had failed to allege facts to support their assertion that, unless Facebook's auditing and verification practices are changed, Plaintiffs will be unable to rely on the accuracy of Facebook's advertising metrics going forward. *Id.* at 7. The Court noted that the SAC contained only:

> (1) factual allegations about one prior instance of Facebook providing inaccurate analytics (which have since been corrected); (2) a statement that Facebook's analytics are not audited by a group called the "Media Rating Council"; and (3) conclusory assertions that Facebook's auditing practices are deficient or improper.

*Id.* at 8. These allegations, the Court explained, were "insufficient to plausibly allege that Plaintiffs are 'unable to rely' on Facebook's video analytics." *Id.* Further, the SAC contained "no factual allegations describing Facebook's auditing practices, let alone explaining why these practices [were] deficient." *Id.* at 7-8. The Court afforded Plaintiffs "one final opportunity to amend their injunctive relief claim[]" to "plead *facts* demonstrating that Facebook has a track record of providing inaccurate analytics as a result of deficient auditing practices." *Id.* at 8 .

In January 2018, Plaintiffs filed the TAC, which contains 12 new paragraphs in support of

3

their requests for injunctive relief.[4] *See* TAC ¶¶ 40-52 (the "New Allegations"). The TAC contains *no* specific allegations describing Facebook's current auditing practices, explaining how those practices are allegedly deficient, identifying what additional auditing Plaintiffs seek beyond what's already provided, or demonstrating why that additional auditing would prevent errors that would otherwise arise. Instead, the New Allegations:

1. broadly assert, without support, that the erroneous metrics resulted from Facebook's deficient auditing practices in the past (*id*. ¶¶ 40, 41);

2. allege that Facebook's deficient auditing practices resulted in eleven additional metrics errors (only three of which concerned video advertisements), catalogued in a single May 17, 2017 article. The same article notes that all eleven errors have been disclosed and addressed by Facebook under its prior or existing procedures (*id.* ¶ 43); and

3. cite to news articles reporting on the now-fixed average-duration metrics and generally calling for third-party oversight of Facebook's *and other media companies'* metrics. These articles also explain that Facebook has conducted a comprehensive internal audit since the announcement of the error that is the subject of this litigation and that, after discovering the error, it expanded third-party verification of its metrics *(id.* ¶¶ 45-52).

The TAC asserts three claims for injunctive relief, identical to those asserted in the SAC. These include: (i) requiring Facebook to engage third-party auditors to periodically examine its advertising metrics, (ii) requiring Facebook to disclose *any* future inaccurate advertising metrics, whether related to video advertisements or not, and (iii) prohibiting Facebook from engaging in the wrongful acts complained of in the TAC. TAC, Prayer ¶ B.

**IV. LEGAL STANDARD**

A court must grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) if it lacks subject-matter jurisdiction. Where, as here, a movant mounts a facial attack on

---

[4] For the Court's convenience, Facebook provides a redline reflecting changes to the TAC from the prior version. *See* Sun Decl., Ex. E. The TAC also adds Jonathan Murdough as a plaintiff.

4
FACEBOOK'S MOTION TO DISMISS SECOND AMENDED CONSOLIDATED COMPLAINT
Lead Case No. 4:16-cv-06232-JSW

the plaintiff's allegations of subject-matter jurisdiction, the plaintiff's factual allegations are presumed to be true. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). However, the Court need not accept as true conclusory allegations or conclusions of law. *Id.*

Article III standing is claim- and relief-specific, and Plaintiffs bear the burden to prove it. "[A] plaintiff must demonstrate standing for each claim he seeks to press" as well as "standing separately for each form of relief sought." *DaimlerChrysler Corp.*, 547 U.S. at 335; *see also In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1218 (N.D. Cal. 2014) (requiring plaintiffs to separately establish standing for each request for injunctive relief). Standing as to one claim for relief does ***not*** extend to all claims that derive from a "common nucleus of operative facts." *DaimlerChrysler Corp.,* 547 U.S. at 334-35. Put another way, "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).

For a plaintiff to establish Article III standing, he must allege an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation and internal quotation marks omitted). "The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *O'Shea*, 414 U.S. at 493–95 (quoting *Golden v. Zwickler*, 394 U.S. 103, 109-10 (1969)). "Allegations of *possible* future injury are not sufficient"; rather, "threatened injury must be *certainly impending* to constitute injury in fact." *Clapper*, 568 U.S. at 409 (citation omitted). While a plaintiff's inability to rely on the accuracy of a defendant's representations may, in some instances, constitute a "certainly impending" injury sufficient to confer Article III standing, the plaintiff must still plead facts describing how and why the defendant's representations are unreliable. *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1116 (9th Cir. 2017)*; Hamilton v. Gen. Mills, Inc.*, No. 6:16-CV-382-MC, 2016 WL 4060310, at *5 (D. Or. July 27, 2016).

Even where a plaintiff satisfies the "case or controversy" requirement of Article III, injunctive relief is unavailable absent a showing of threat of irreparable harm. *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999). This is a "separate jurisdictional requirement, arising independently from Article III, that is grounded in the traditional limitations on the court's

5

power to grant injunctive relief." *Baas v. Dollar Tree Stores*, Inc., No. C 07-03108 JSW, 2009 WL 1765759, at *2 (N.D. Cal. June 18, 2009) (White, J.) (citation and internal quotation marks omitted).

Here, Plaintiffs fail to establish standing as to any of their three injunctive relief claims.

## V.     ARGUMENT

### A.     Plaintiffs lack standing to seek future third-party audits.

Plaintiffs seek injunctive relief requiring Facebook to undergo mandatory, third-party audits of *all* Facebook advertising metrics because Plaintiffs are purportedly at risk of being subjected to future inaccurate metrics and are unable to rely on the accuracy of those metrics. TAC ¶ 42. Plaintiffs fail to plead facts sufficient to support either theory for at least three reasons.

***First***, Plaintiffs' contention that they are at risk of being subjected to future inaccurate metrics is pure conjecture. Plaintiffs premise that claim entirely on the existence of eleven additional metrics errors identified in a May 17, 2017 article. TAC ¶ 43. But that same article acknowledges that all of the identified errors have been both disclosed and addressed by Facebook. *Id.*; Sun Decl. Ex. C. And other articles cited in the TAC acknowledge that, after Facebook discovered the error at issue in this case, it implemented additional internal and external verification procedures. TAC ¶¶ 50 & n.23, 52 & n.25; Sun Decl., Exs. A, B. Mere speculation or conjecture that additional errors may occur, escape Facebook's oversight, *and* be published to Plaintiffs is insufficient to confer injunctive-relief standing. *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983) (petitioner lacked standing where it was "no more than conjecture" that he would be subjected to the challenged practice again). Plaintiffs' ***subjective apprehension*** is similarly insufficient. *Lyons*, 461 U.S. at 107 n.8 ("It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions.").

Nor have Plaintiffs alleged any facts that their risk of being exposed to future inaccurate metrics is an "immediate risk" that is "certainly impending." *Clapper*, 568 U.S. at 401. Of the eleven additional errors identified in the May 17, 2017 article, only three concerned video advertising metrics, and the TAC contains no allegations that any of the Plaintiffs ever saw those errors, much less relied on them in their purchasing decisions. TAC ¶ 43. Thus, Plaintiffs' theory

6

of injury invokes a "highly attenuated chain of possibilities" that cannot form the basis for injunctive relief standing. *Clapper*, 568 U.S. at 410-14. Plaintiffs assume that: (1) another error will arise; (2) Facebook will neither notice nor correct the error absent third-party auditing that exceeds the auditing already provided; (3) Plaintiffs will be exposed to the erroneous metric; and (4) as a result, Plaintiffs will purchase more video advertisements or pay a higher price for video advertisements than they otherwise would. This chain of conjecture is no more than speculation and cannot establish a risk of "imminent injury." *Id.; see also Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (assuming respondent will "stumble across" a future injury would be "tantamount to eliminating the requirement of concrete, particularized injury in fact").

*Second*, Plaintiffs' contention that they are unable to rely on the accuracy of Facebook's metrics—likewise premised on the errors identified in the May 2017 article—is similarly deficient. As this Court recognized, an inability to rely on a company's representations can, in theory, qualify as injury sufficient to confer injunctive relief standing under Article III. ECF No. 94 at 7 (citing *Davidson*, 873 F.3d at 1116). But *Davidson* made clear that the harm pertains only to the inability to rely on the ***same representation*** that the consumer previously relied on, not other hypothetical misrepresentations. *See Davidson*, 873 F.3d at 1115. Here, Plaintiffs ask the Court to conclude that the existence of additional (now-corrected) metrics errors renders Plaintiffs unable to rely on *any* of Facebook's advertising metrics—video-related or not. That logic strains credulity and finds no support in the case law.

Moreover, a plaintiff who cannot plead facts establishing a risk of future mistakes that render a defendant's representations unreliable has not properly alleged standing, even under *Davidson*. *See Palmer v. Apple Inc.*, No. 5:15-CV-05808-RMW, 2016 WL 1535087, at *4 (N.D. Cal. Apr. 15, 2016) (plaintiff's inability to rely on defendant's conduct did not confer standing to seek injunctive relief because the complaint lacked allegations establishing that there was a risk of future mistakes); *Hamilton*, 2016 WL 4060310, at *5 (same). Here, Plaintiffs failed to plead "*facts* demonstrating Facebook has a track record of providing inaccurate analytics as a result of deficient auditing practices," as the Court instructed. ECF No. 94 at 8. To the contrary, the May 2017 article describing the additional metrics errors concedes they have all been identified,

disclosed, and addressed by Facebook. TAC ¶ 43. Nor do any of Plaintiffs' allegations describe how the additional errors occurred "*as a result of*" Facebook's allegedly deficient auditing practices. ECF No. 94 at 8. And although the Court criticized the SAC for failing to "describe[e] Facebook's auditing practices" and "why those practices are deficient," the only new *facts* regarding Facebook's auditing practices detail how Facebook has already adopted enhanced audit procedures to minimize the risk of future metric errors. For example, one of the articles cited in the TAC describes how Facebook had completed "a comprehensive internal metrics audit" and "doubl[ed] down on [its] efforts at third-party verification." TAC ¶ 52 & n.25; Sun Decl. Ex. A. It notes that Facebook "will provide viewability data from third-party metrics companies such as Moat and Integral Ad Science." *Id.* Another article cited in the TAC observes that Facebook "unveiled tie-ups with several measurement companies including Nielsen and MarketShare." TAC ¶ 50 & n.23; Sun Decl., Ex. B. Far from demonstrating a "track record" of errors resulting from Facebook's auditing practices, these allegations demonstrate that Plaintiffs face no "real and immediate" risk of being unable to rely on the accuracy of Facebook's metrics in the future. *Palmer*, 2016 WL 1535087, at *4; *Hamilton*, 2016 WL 4060310, at *5.

*Third*, Plaintiffs also lack standing to pursue their injunctive relief claim because they have made no showing of any real or immediate threat of irreparable harm. *Lyons*, 461 U.S. at 111 ("The equitable remedy is unavailable absent a showing of . . . a 'likelihood of substantial and immediate irreparable injury.'") (citation omitted). Plaintiffs allege that they were induced to purchase excessive video advertisements at an excessive price, but the TAC includes no facts establishing that this injury cannot be remedied with monetary relief. Plaintiffs' failure to allege these facts is independently fatal to their injunctive relief claim. *Bagley v. Travelers Home & Marine Ins. Co.*, No. C16-0706 JCC, 2016 WL 4494463, at *1 (W.D. Wash. Aug. 25, 2016) (dismissing injunctive relief on standing grounds because "the injuries at issue [could] be remedied via monetary relief"). Accordingly, Plaintiffs have failed to establish they have standing to pursue this claim for injunctive relief, and the Court should dismiss it with prejudice.

### B. Plaintiffs lack standing to require "timely and accurate" disclosure of hypothetical future metrics errors.

Plaintiffs also seek an injunction "requiring Facebook to disclose *any* further inaccurate advertising metrics in a timely and accurate manner." TAC, Prayer ¶ B(iii) (emphasis added). But for the reasons stated above, Plaintiffs' contention that they are at risk of harm resulting from "any further inaccurate advertising metrics"—whether related to video advertising or not— amounts to mere conjecture and speculation, not injury that is "concrete and particularized, actual or imminent," as Article III requires. *Clapper*, 568 U.S. at 423 (citation and internal quotation marks omitted); *see also* discussion *supra* Section V.A. Plaintiffs also fail to allege an injury "fairly traceable" under Article III to Facebook's challenged conduct. *Id.* at 409 (citation and internal marks omitted). Nowhere does the TAC allege that Facebook delayed disclosing metric errors or that any disclosure was inaccurate, much less that Plaintiffs were harmed as a result. Indeed, the articles Plaintiffs incorporate by reference in the TAC suggest the opposite—that Facebook has voluntarily disclosed and addressed additional metrics errors. *See* Sun Decl., Ex. C. Thus, Plaintiffs fail to allege any injury traceable to Facebook's conduct. *See Adobe Sys. Inc. Privacy Litig.*, 66 F. Supp. 3d at 1217 (no injury traceable to Adobe's failure to reasonably notify customers of data breach where plaintiffs did not allege they suffered incremental harm as a result of the delay). Nor do Plaintiffs allege any facts showing that an injury arising from Facebook's failure to timely or accurately disclose future hypothetical metrics errors presents an imminent threat of irreparable harm allowing the Court to exercise jurisdiction over their claim. *Hodgers-Durgin*, 199 F.3d at 1042. The Court should dismiss Plaintiffs' injunctive-relief demand for "timely and accurate" disclosures with prejudice.

### C. Plaintiffs lack standing to seek injunctive relief as to the corrected metrics.

Plaintiffs seek injunctive relief "prohibiting Facebook from engaging in the wrongful acts described" in the TAC. TAC, Prayer ¶ B(i). To the extent Plaintiffs' request addresses Facebook's auditing practices, they lack standing for the reasons explained in Section V.A. To the extent Plaintiffs' request is targeted at the average-duration metrics, injunctive relief is similarly unavailable because the errors to those metrics have already been corrected, as this Court

9

previously noted.[5] ECF No. 94 at 8. Plaintiffs therefore "cannot seek injunctive relief against [Facebook] because no realistic threat exists that the complained-of conduct is ongoing or will be repeated." *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 987–88 (N.D. Cal. 2015); *accord Palmer*, 2016 WL 1535087, at *4. And Plaintiffs have not alleged any facts demonstrating that additional errors to these metrics are impending or otherwise likely to recur, or that Plaintiffs are at immediate threat of irreparable harm. Accordingly, Plaintiffs have failed to establish standing to pursue this claim for injunctive relief, and the Court should dismiss it, too, with prejudice.

## VI.  CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' injunctive relief claims for lack of Article III standing. Because further amendment would be futile after three failed attempts, the Court should do so with prejudice.

Dated: February 23, 2018                              KEKER, VAN NEST & PETERS LLP

By:   *s/ David Silbert*
DAVID SILBERT
PAVEN MALHOTRA
MICHELLE S. YBARRA
ELIZABETH K. MCCLOSKEY
EDUARDO E. SANTACANA
CHRISTOPHER S. SUN

Attorneys for Defendant
FACEBOOK, INC.

---

[5] Plaintiffs also admitted as much in their opposition to Facebook's first motion to dismiss. *See* ECF No. 54 at 6. That is a judicial admission for purposes of this motion. *See Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 557 (9th Cir. 2003).

Moreover, Facebook ceased offering the two metrics at issue in Fall 2017, more than a year before Plaintiffs filed the TAC seeking injunctive relief.