1  Robert T. Eglet (*pro hac vice*)
   Erica D. Entsminger (*pro hac vice*)
2  **EGLET PRINCE**
   400 South Seventh Street, Suite 400
3  Las Vegas, NV 89101
   Telephone: (702) 450-5400
4  Facsimile: (702) 450-5451
   eservice@egletlaw.com
5

6  Eric H. Gibbs (SBN 178658)
   David Stein (SBN 257465)
7  **GIBBS LAW GROUP LLP**
   505 14th Street, Suite 1110
8  Oakland, CA 94612
   Telephone: (510) 350-9700
9  Facsimile: (510) 350-9701
   ehg@classlawgroup.com
10

11 Andrew N. Friedman (*pro hac vice*)
12 Geoffrey Graber (SBN 211547)
   **COHEN MILSTEIN SELLERS & TOLL**
13 **PLLC**
   1100 New York Ave. NW, Fifth Floor
14 Washington, DC 20005
   Telephone: (202) 408-4600
15 Facsimile: (202) 408-4699
   afriedman@cohenmilstein.com
16

17 [Additional counsel on signature page]
   *Counsel for Plaintiffs and Proposed Class*
18

**KEKER, VAN NEST & PETERS LLP**
DAVID SILBERT - # 173128
dsilbert@keker.com
PAVEN MALHOTRA - # 258429
pmalhotra@keker.com
MICHELLE S. YBARRA - # 260697
mybarra@keker.com
ELIZABETH K. MCCLOSKEY - #268184
emccloskey@keker.com
EDUARDO E. SANTACANA - # 281668
esantacana@keker.com
CHRISTOPHER S. SUN - # 308945
csun@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

*Attorneys for Defendant
Facebook Inc.*

19              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
20                      **OAKLAND DIVISION**
21

| | |
|---|---|
| 22  LLE ONE, LLC, d/b/a Crowd Siren and d/b/a Social Media Models, and JONATHAN MURDOUGH, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br>        v.<br><br>    FACEBOOK, INC.,<br><br>                Defendant. | Case No. 4:16-cv-06232-JSW<br><br>**JOINT LETTER BRIEF:**<br><br>**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER TO QUASH SUBPOENAS SERVED ON ABSENT CLASS MEMBERS** |

JOINT LETTER BRIEF RE: PLAINTIFFS' MOTION FOR PROTECTIVE ORDER
                                          Case No. 4:16-cv-026232-JSW

1315557.v1

**PLAINTIFFS' STATEMENT**

Pursuant to FRCP 26(c), Plaintiffs move for a protective order to quash 15 subpoenas served on absent class members over Plaintiffs' objection, and to preclude Facebook from conducting additional discovery from absent class members. The subpoenas were served on or after **December 17, 2018,** demand responsive documents by **December 28, 2018,** and target clients of Plaintiff LLE ONE, LLC that are also absent class members. (Ex. 1). The subpoenas were not provided to Plaintiffs' counsel in advance of service, are unduly broad, and overly burdensome. Worse, the subpoenas were needlessly served on short notice during the Christmas holiday to maximize the prejudice to LLE. Facebook has refused to withdraw the subpoenas, and says it may serve more.

LLE is a small marketing company with two full time employees. LLE informed Facebook early on that, aside from representing the putative class, LLE was not pursuing direct claims as agents of its third-party customers. Facebook still sought discovery encompassing LLE's entire business and all communications between LLE and its clients. LLE objected, and the parties worked to narrow the scope of discovery. Responding to concerns Facebook would use discovery to harass LLE's clients and hurt its business, Facebook agreed to "**meet and confer with Plaintiffs in good faith**" before seeking such discovery. (Ex. 2, Sun e-mail p.3). As a compromise, LLE produced its communications with 20 clients for whom LLE purchased Facebook video ads from 2014-2016.

In the context of a lager dispute regarding Plaintiffs' responses to written discovery in October 2018, Facebook suggested for the first time that it may want discovery from LLE clients, however, it had yet to identify which clients and did not discuss the form such discovery would take. At that time, the parties agreed a dispute over this discovery was premature because LLE had agreed to supplement its responses. LLE served its supplement on November 20, 2018. The parties thereafter spent weeks discussing outstanding discovery issues and a FRCP 30(b)(6) deposition set for December 13, 2018. During that time, Facebook never claimed LLE's supplemental responses were deficient, or requested any discovery of any kind from LLE's clients.

On the afternoon of December 13th defense counsel sent an e-mail informing Plaintiffs that they intended to immediately serve document *and* deposition subpoenas on 15 LLE clients. (Ex. 3, pp. 5-6). The e-mail did not explain why Facebook was entitled to such discovery, and did not attach

1

copies. Plaintiffs' counsel objected, and requested to meet and confer in person because LLE intended to move this Court for relief. (Id at p. 5). Plaintiffs also requested Facebook not serve the subpoenas prior to the in person meet and confer. (Id. at p. 3). On December 17, 2018, the parties agreed to meet on December 20, 2018. *The next day*, however, before any copies were provided to Plaintiffs, LLE learned that Facebook had gone forward with service.  Among other defects, the subpoenas required a response by **December 28, 2018** – three days after Christmas and less than the 14 days required under Rule 45. (Ex. 1). Facebook has since indicated it will give extensions to any party that asks, however, the subpoenas remain in effect, the information requested is improper, and Facebook has caused the very prejudice to LLE the parties agreed in good faith to avoid.

   The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including by "forbidding the disclosure or discovery." *See* FRCP 26(c). Although a party seeking a protective order generally bears the burden of showing prejudice or resulting harm if no protective order is granted, that burden shifts to the party seeking discovery of absent class members which is ordinarily not permitted. *In re Worlds of Wonder Sec. Litig.*, 1992 U.S. Dist. LEXIS 10503, at *4 (N.D. Cal. July 9, 1992). In *Worlds of Wonder*, the Court granted a similar motion to quash multiple subpoenas of absent class members and noted such discovery would lead to large numbers of motions for protective orders, hearings, great delay, and expense. *Id.*  Facebook must show that discovery is both necessary and for a purpose other than taking undue advantage of class members. *Baldwin & Flynn v. Nat'l Safety Assocs.*, 149 F.R.D. 598, 600 (N.D. Cal. 1993). "The burden is heavy to justify asking questions by interrogatories, even heavier to justify depositions." *Id.*

   Facebook's discovery takes undue advantage of absent class members because the requests seek multiple categories of documents including internal and external communications about the class members use of Facebook's metrics and the manner in which they value video ads generally. (Ex. 1, attach. A). The requests are not limited in time or scope, are not limited to the clients' dealings with LLE, and demand: "All DOCUMENTS INCLUDING COMMUNICATIONS RELATING TO the RETURN ON INVESTMENT of VIDEO ADVERTISEMENTS." (Id. p. 6, ¶5). Key definitions are confusing and refer to the complaints which third parties do not have. (Id., p. 1, ¶4). The requests are

particularly burdensome because nonparties do not know their context and will likely need an attorney to advise them on how to respond. Also, Facebook knew Plaintiffs objected to these subpoenas, but served them anyway during a time when businesses are short staffed or focused on year-end matters. This needlessly aggressive tactic has itself created undue prejudice.

Facebook also cannot demonstrate this discovery is necessary. Facebook has its own universe of data about ad purchases, its own advertising clients, and it has itself produced numerous documents discussing the way advertisers use the subject metrics. Facebook also does not need evidence from absent class members to rebut class reliance. *See McPhail v. First Command Financial Planning*, 251 F.R.D. 514 (S.D. Cal. 2008). Facebook now claims it needs this discovery to test the veracity of Plaintiffs' discovery responses, however, the subpoenas are clearly not so limited. Even if they were, Facebook already has LLE's extensive communications with these clients, and LLE's verified responses describing how *LLE* used the subject metrics. Finally, even if somehow relevant, Facebook cannot demonstrate that this extensive discovery is proportionate to its needs in this case, or that its needs outweigh the undue burden to the absent class members.

**FACEBOOK'S STATEMENT**

Plaintiff LLE One's central allegation in this case is that video advertisers relied on two Facebook duration metrics—amidst many other metrics and data—to decide how much to spend on their ads. Not a single LLE One document supports this claim. No email, report, marketing plan, or other LLE One document so much as mentions these two metrics (although they mention many others). In its interrogatory answers, however, LLE One asserts that it *orally discussed* these two metrics with eight customers for whom it placed ads, thus proving reliance. *See* Ex. 4 at 7-9. It now takes the extraordinary position that Facebook must blindly accept its word on this issue and cannot test its claim through discovery. Fundamental fairness and controlling law dictate that Facebook must be allowed to mount a defense. *See Tyson Foods v. Bouaphakeo*, 136 S.Ct. 1036, 1048 (2016) (observing that it would violate the Rules Enabling Act to give "defendants different rights in a class proceeding than they could have asserted in an individual action.")

Likewise, Plaintiffs' interrogatory answers identify eleven advertisers who, "given the specific purposes/objectives of the subject ad(s) purchased," did not rely on the metrics at issue. Ex. 4 at 9-10.

1  These advertisers and all similarly situated ones should therefore be excluded from any class—making their "purposes/objectives" and related conduct highly significant. These advertisers, too, are necessary subjects of targeted discovery.

Even though no rule requires it, Facebook provided notice and then met-and-conferred with Plaintiffs extensively over a period of many months before serving these subpoenas. Most recently, at Plaintiffs' request, it agreed to forbear serving them until it received Plaintiffs' supplemental interrogatory answers (the date of which was extended), and then—after those responses demonstrated a clear need for the discovery—agreed to suspend service when Plaintiffs said they wanted to meet-and-confer again (although Plaintiffs then decided not meet on the day they had proposed). Like in any case, Facebook is entitled to take discovery to refute Plaintiffs' claims. Plaintiffs' motion should be denied.

### *Facebook is entitled to seek discovery from Plaintiff's video advertising clients*

"[A]s a general rule, discovery from absent class members may be permitted when reasonably necessary, not conducted for an improper purpose, and not unduly burdensome in the context of the case and its issues." *Aredondo v Delano Farms Co., Inc.*, Case No. 1:09-cv-1247 at 7:20-22 (E.D. Cal., Dkt. 342, 10/10/14) (denying motion to quash and permitting depositions of absent class members; attached as Exhibit 5). All of these circumstances are present here.

First, Facebook seeks information that is necessary to litigate class certification, as well as liability and damages should a class be certified. Reliance—or lack thereof—on the two accused metrics will be a central issue at class certification, and after if the case survives. Given the absence of any documentary evidence of Plaintiffs' reliance, they seek to prove it through alleged oral discussions. *See* Ex. 4 at 7-9. It is vitally important that Facebook be allowed to test those claims through discovery from the alleged participants in the discussions, as it would be entitled to do in any other case. Facebook cannot obtain this discovery anywhere else. Nor can it discover elsewhere the "purposes/objectives" of the advertisers who Plaintiffs agree did not rely on the metrics, or whether the advertisers that Plaintiffs identified believe they received full value for their purchase, which will both be highly relevant to class certification, liability, and any purported damages model.

Second, Facebook seeks this discovery for a proper purpose—to obtain the information

discussed above. Facebook has no interest in disturbing these parties, who are all Facebook customers, and has repeatedly made clear that it will work with them to obtain targeted information on a reasonable schedule. Plaintiffs should not be heard to say otherwise, since they have insisted on far more onerous discovery from at least ten of Facebook's customers (which Plaintiffs subpoenaed without any meet and confer with Facebook). *See, e.g.,* Ex. 6 (Plaintiffs' Subpoena to Group M).

Third, the subpoenas are narrowly tailored and not unduly burdensome. They contain only seven requests for production, six of which are specifically directed to documents about the two accused metrics (of which the recipients likely have a handful at most, and probably none at all). The seventh request is likewise limited as it seeks only documents that discuss the return on investment for Facebook video ads, which are also likely to be scant given the size of the subpoena recipients. The requests are inherently time-limited because the putative class period extends only from 2014-2016. And as noted, Facebook has informed subpoena recipients that it will work with them to alleviate any burden.

The *Worlds of Wonder*, *McPhail*, and *Baldwin* cases on which Plaintiffs rely are distinguishable. The first two involved securities class actions where reliance was judged by an objective standard and presumed based on the representations at issue. *Worlds of Wonder,* 1992 U.S. Dist. LEXIS 10503 at *13; *McPhail*, 251 F.R.D. at 516-17. Here, in contrast, Plaintiffs assert, among other things, class claims for breach-of-contract and common-law fraud, where individualized proof is necessary. *See, e.g.*, *Hudson v. Capital Mgmt. Int'l, Inc.*, 565 F. Supp. 615, 630 (N.D. Cal. 1983) (individualized proof of reliance needed for fraud claim); Dkt. 165 (Fourth Amended Complaint) (contract formed through course of dealing). *Baldwin*, too, involved predominantly securities claims with presumed reliance, 149 F.R.D. at 600-601, and was also decided under a superseded Rule 23 standard in which courts were required to "accept the allegations of the complaint as true" when deciding class certification—virtually eliminating the need for discovery. *Id.* at 600.

Plaintiffs cannot build their case around allegations that Facebook is barred from testing through discovery. "[A] class cannot be certified on the premise that [the defendant] will not be entitled to litigate its statutory defenses to individual claims." *Wal-Mart v. Dukes*, 564 U.S. 338, 367 (2011). Plaintiffs' motion should be denied.

Respectfully submitted,

Date:  January 2, 2019          By: /s/ Robert T. Eglet

**EGLET PRINCE**
Robert T. Eglet (*pro hac vice*)
Robert M. Adams (*pro hac vice*)
Erica D. Entsminger (*pro hac vice*)
Artemus W. Ham (*pro hac vice*)

**COHEN MILSTEIN SELLERS & TOLL PLLC**
ANDREW N. FRIEDMAN (*pro hac vice*)
GEOFFREY GRABER (SBN 211547)
ERIC KAFKA (*pro hac vice*)

**GIBBS LAW GROUP LLP**
ERIC H. GIBBS (SBN 178658)
DYLAN HUGHES (SBN 209113)
DAVID STEIN (SBN 257465)
AARON BLUMENTHAL (SBN 310605)

*Counsel for Plaintiffs and Proposed Class*

Dated:  January 2, 2019          By: /s/ David Silbert

DAVID SILBERT
PAVEN MALHOTRA
MICHELLE YBARRA
ELIZABETH K. MCCLOSKEY
IAN KANIG

*Counsel for Facebook, Inc.*

6
JOINT LETTER BRIEF RE: PLAINTIFFS' MOTION FOR PROTECTIVE ORDER
Case No. 4:16-cv-02632-JSW

1315557.v1

**ECF CERTIFICATION**

Pursuant to Local Rule 5-1(i)(3), the filing attorney attests that she has obtained concurrence regarding the filing of this document from the signatories to the document.

Dated: January 2, 2019

*/s/ Erica D. Entsminger, Esq.*
Erica D. Entsminger, Esq.