Eric H. Gibbs (SBN 178658)
David Stein (SBN 257465)
Aaron Blumenthal (SBN 310605)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ehg@classlawgroup.com
ds@classlawgroup.com
ab@classlawgroup.com

Robert T. Eglet (*pro hac vice*)
Robert M. Adams (*pro hac vice*)
Erica D. Entsminger (*pro hac vice*)
Artemus W. Ham (*pro hac vice*)
**EGLET ADAMS**
400 South Seventh Street, Suite 400
Las Vegas, NV 89101
Telephone: (702) 450-5400
Facsimile: (702) 450-5451
eservice@egletlaw.com

Andrew N. Friedman (*pro hac vice*)
Geoffrey Graber (SBN 211547)
Eric Kafka (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
afriedman@cohenmilstein.com
ggraber@cohenmilstein.com
ekafka@cohenmilstein.com

[Additional counsel on signature page]

*Counsel for Plaintiffs and Proposed Class*

# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| LLE ONE, LLC, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>　　　　　　　Defendant. | Case No.: 4:16-cv-06232-JSW<br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL AND TO DIRECT NOTICE OF SETTLEMENT**<br><br>Date:　　November 8, 2019<br>Time:　　9:00 am<br>Dept:　　Courtroom 5, 2nd Floor<br>Judge:　Jeffrey S. White |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on November 8, 2019, at 9:00 a.m., or as soon thereafter as this matter may be heard, Plaintiffs will and hereby do respectfully move the Court, in the courtroom of the Honorable Jeffrey S. White, Courtroom 5, 2nd Floor of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, for an order preliminarily approving the proposed class action settlement and approving the manner and form of class notice.

This motion is based on the notice of motion and motion for preliminary approval, the following memorandum of points and authorities, the attached declarations and exhibits, the arguments of counsel, and any other matters in the record or that properly come before the Court.

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ................................................................................................................. 1

HISTORY OF THE LITIGATION ...................................................................................... 2

I.    Factual Background ................................................................................... 2

II.   History of the Litigation ........................................................................... 3

OVERVIEW OF THE SETTLEMENT ............................................................................... 5

I.    The proposed settlement class ................................................................. 5

II.   Settlement fund ......................................................................................... 6

III.  The scope of class members' release of claims ........................................ 7

IV.  The provision for attorneys' fees, cost reimbursements, and service awards ................... 7

THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT  AND DIRECT NOTICE
TO THE SETTLEMENT CLASS ......................................................................................... 9

I.    THE PROPOSED SETTLEMENT MERITS APPROVAL. ........................................... 9

    A.    Plaintiffs and their counsel have adequately represented the class. ..................... 10

    B.    The parties negotiated the proposed settlement at arm's length. ........................ 11

    C.    The quality of relief to the class weighs in favor of approval. ........................... 12

        1.    The settlement provides strong relief for the class. .................................. 13

        2.    Continued litigation would entail substantial cost, risk, and delay. ......... 14

        3.    The settlement agreement provides for an effective distribution of
             proceeds to the class. ............................................................................ 16

        4.    The terms of the proposed award of attorneys' fees, including timing
             of payment, also support settlement approval. ........................................ 17

        5.    The parties have no other agreements pertaining to the settlement. ......... 18

    D.    The settlement treats all settlement class members equitably. ........................... 18

II.   CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS WILL BE APPROPRIATE. ............. 19

A.   The settlement class satisfies the requirements of Rule 23(a). ........................... 20

1.   The class members are too numerous to be joined in one action. ........... 20

2.   The action involves common questions of law or fact. ........................... 20

3.   Plaintiffs' claims are typical of the class. ............................................... 21

4.   Plaintiffs and their counsel have, and will continue to, fairly and adequately protect the interests of the class. ........................................... 21

B.   The settlement class meets the requirements of Rule 23(b)(3). ........................ 22

C.   The settlement provides the best method of notice practicable. ........................ 23

THE COURT SHOULD SET A SCHEDULE FOR FINAL APPROVAL. ................................................ 24

CONCLUSION ....................................................................................................................... 25

MOTION FOR PRELIMINARY APPROVAL AND NOTICE OF SETTLEMENT
Case No. 4:16-cv-06232-JSW

1

# TABLE OF AUTHORITIES

2

3

**Page(s)**

4

**Cases**

5

*Altamirano v. Shaw Indus., Inc.,*

6

2015 WL 4512372 (N.D. Cal. July 24, 2015) ..................................................... 18

7

*Amchem Prod. v. Windsor,*

8

521 U.S. 591 (1997) ....................................................................................... 21, 22

9

*Arroyo v. Int'l Paper Co.,*

10

2019 WL 1508457 (N.D. Cal. Apr. 4, 2019) ..................................................... 19

11

*Beaver v. Tarsadia Hotels,*

12

2017 WL 4310707 (S.D. Cal. Sept. 28, 2017) ................................................. 7, 8

13

*Boyd v. Bank of Am. Corp.,*

14

2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ................................................... 18

15

*Evon v. Law Offices of Sidney Mickell,*

16

688 F.3d 1015 (9th Cir. 2012) ........................................................................... 20

17

*Feller v. Transamerica Life Ins. Co.,*

18

2017 WL 6496803 (C.D. Cal. Dec. 11, 2017) ................................................... 22

19

*Fox Test Prep v. Facebook, Inc.,*

20

588 F. App'x 733 (9th Cir. 2014) ................................................................. 13, 16

21

*Hanlon v. Chrysler Corp.,*

22

150 F.3d 1011, 1022 (9th Cir. 1998) .............................................................. 21, 22

23

*Haralson v. U.S. Aviation Servs. Corp.,*

24

383 F. Supp. 3d 959 (N.D. Cal. 2019) ............................................................... 11

25

*Harris v. Vector Mktg. Corp.,*

26

2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ....................................................... 18

27

*Hayes v. MagnaChip Semiconductor Corp.,*

28

2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ................................................... 14

MOTION FOR PRELIMINARY APPROVAL AND NOTICE OF SETTLEMENT
Case No. 4:16-cv-06232-JSW

*Hesse v. Sprint Corp.*,

   598 F.3d 581 (9th Cir. 2010) ........................................................................... 7

*In re Anthem, Inc. Data Breach Litig.*,

   327 F.R.D. 299 (N.D. Cal. 2018) ................................................................... 15

*In re Bluetooth Headsets Litig.*,

   654 F.3d 935 (9th Cir. 2011) ......................................................................... 11

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg. Litig.*,

   2019 WL 536661 (N.D. Cal. Feb. 11, 2019) ............................................. 5, 6, 14

*In re Hyundai & Kia Fuel Econ. Litig.*,

   926 F.3d 539 (9th Cir. 2019) .......................................................19, 21, 22, 23

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,

   895 F.3d 597 (9th Cir. 2018) ...................................................................10, 12

*In Re: MagSafe Apple Power Adapter Litig.*,

   No. 5:09-CV-01911, 2015 WL 428105 (N.D. Cal. May 29, 2012) ...................... 24

*Just Film v. Buono*,

   847 F.3d 1108 (9th Cir. 2017) ....................................................................... 20

*Linney v. Cellular Alaska P'ship*,

   151 F.3d 1234 (9th Cir. 1998) ..................................................................13, 14

*Mangold v. Cal. Pub. Utilities Comm'n*,

   67 F.3d 1470 (9th Cir. 1995) ........................................................................... 7

*Messineo v. Ocwen Loan Servicing, LLC*,

   2017 WL 733219 (N.D. Cal. Feb. 24, 2017) ................................................... 13

*Mohanty v. BigBand Networks, Inc.*,

   2008 WL 426250 (N.D. Cal. Feb. 14, 2008) ..................................................... 5

*Pederson v. Airport Terminal Servs.*,

   2018 WL 2138457 (C.D. Cal. April 5, 2018) ................................................... 11

*Rodriguez v. Hayes*,

   591 F.3d 1105 (9th Cir. 2010) ....................................................................... 20

MOTION FOR PRELIMINARY APPROVAL AND NOTICE OF SETTLEMENT
Case No. 4:16-cv-06232-JSW

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................ 14

*Sadowska v. Volkswagen Grp. of Am.*,
   2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) ............................................ 17

*Sali v. Corona Reg'l Med. Ctr.*,
   909 F.3d 996 (9th Cir. 2018) ........................................................................ 21

*Smith v. Levine Leichtman Capital Partners, Inc.*,
   2012 WL 12920189 (N.D. Cal. Nov. 15, 2012) ....................................... 16, 17

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ........................................................................ 18

*Steiner v. Am. Broad. Co.*,
   248 F. App'x 780 (9th Cir. 2007) ................................................................. 17

*Wal-Mart Stores v. Dukes*,
   564 U.S. 338 (2011) ..................................................................................... 20

*Wannemacher v. Carrington Mortg.*,
   2014 WL 12586117 (C.D. Cal. Dec. 22, 2014) ........................................... 11

*Wolin v. Jaguar Land Rover N. Am.*,
   617 F.3d 1168 (9th Cir. 2010) ...................................................................... 20

*Zaklit v. Nationstar Mortg. LLC*,
   2017 WL 3174901 (C.D. Cal. July 24, 2017) ............................................... 5

**Statutes**

28 U.S.C. § 1715 ..................................................................................................... 24

**Rules**

Fed. R. Civ. P. 23.............................................................................................passim

**Other Authorities**

Newberg on Class Actions § 13:10 (5th ed.) .......................................................... 9

*Transnational Class Actions in the Shadow of Preclusion*,
   90 Ind. L.J. 1387 (2015) ................................................................................. 5

MOTION FOR PRELIMINARY APPROVAL AND NOTICE OF SETTLEMENT
Case No. 4:16-cv-06232-JSW

1

### INTRODUCTION

Plaintiffs are pleased to report that after three years of litigation, the parties have finalized a proposed class settlement that is ready to undergo the court-approval process. As the Court may recall from earlier proceedings, this suit alleged an error in two "metrics" that Facebook provided to its advertisers. Metrics provide information to help advertisers evaluate how their ads are faring on Facebook's platform. The metrics at issue were for video advertisements; they showed how long, on average, advertisers' video ads were being watched. Because of the error, the average watch times of video ads were exaggerated for about 18 months. Plaintiffs alleged that the error led them and other advertisers to spend more money advertising on Facebook than they otherwise would have. Plaintiffs also alleged that Facebook knew or should have known of the error long before it ultimately fixed it.

Facebook acknowledges there was an error. But Facebook has argued strenuously that the error was an innocent mistake that Facebook corrected shortly after discovering it. Facebook has also pointed out that some advertisers likely never viewed the erroneous metrics and that because Facebook does not set prices based on the impacted metrics, the error did not lead to overcharges, price inflation, or any damages.

While Plaintiffs believe both the facts and the law ultimately favored their position, the proposed settlement is poised to deliver meaningful relief without requiring further delay and expense. The settlement provides a $40 million cash fund from Facebook, which constitutes as much as 40% of what Plaintiffs estimate they may realistically have been able to recover had the case made it to trial and had Plaintiffs prevailed. Facebook's $40 million payment will be disseminated directly to class members, without the need for claim forms, and will also cover the costs of settlement administration, class notice, service awards, and Plaintiffs' litigation costs and attorneys' fees. From the Plaintiffs' perspective, this settlement provides strong value to the class in exchange for its release of claims and is thus worthy of the Court's approval.

In support of this motion, Plaintiffs attach a copy of the parties' settlement agreement, including exhibits. *See* Declaration of Eric H. Gibbs, Exhibit A. For the reasons discussed in this motion, Plaintiffs respectfully request that the Court preliminarily approve the settlement, direct

notice to the class, appoint Class Counsel under Rule 23(g), and set a schedule for final approval.

**HISTORY OF THE LITIGATION**

## I.   Factual Background

This proposed class action began in October 2016. (ECF No. 1.) Initially, two overlapping lawsuits were filed, (*see id.*; ECF No. 25), which the Court consolidated. (ECF No. 32.) Plaintiffs then filed a consolidated amended complaint in March 2017 (ECF No. 34.), followed by a second amended complaint in August 2017 (ECF No. 70), a third in January 2018 (ECF No. 97), and a fourth in August 2018 (ECF Nos. 145, 165.)

The operative complaint focuses on metrics that Facebook provided to its video advertisers to show them how long, on average, users were watching their video ads. One metric—"Average Duration of Video Viewed"—depicted the average number of seconds users watched the video; another——"Average Percentage of Video Viewed"—depicted the average percentage of the video ad that users watched. (*Id.*, ¶¶ 21, 25-27.) Plaintiffs allege that advertisers used these average watch time metrics to evaluate their video ads and to compare how their ads fared on Facebook compared to other platforms, such as YouTube.  (*Id.*, ¶¶ 18-21, 36.)

Starting in February 2015, Facebook incorrectly calculated Average Duration of Video Viewed by taking the total number of seconds watched and dividing by those views that were 3 seconds or more:

$$Average\ View\ Duration = \frac{[total\ video\ play\ time]}{[total\ 3\ sec\ views]}$$

(*Id.*, ¶¶ 26-27.) The Average View Duration error, in turn, led to the Average Percentage Viewed metric also being inflated. (*Id.*, ¶ 29.)

Plaintiffs contend these errors inflated the average-watch-times shown to advertisers by several orders of magnitude. (*Id.*, ¶¶ 4, 35, 66.) As a result, Plaintiffs allege the metrics indirectly impacted billing, since (all else being equal) advertisers are likely to pay more for video ads that are being watched longer. (*Id.*, ¶ 40.) Accordingly, Plaintiffs sought to reimburse the class of

2

advertisers who allegedly spent more on Facebook video ads than they otherwise would have. Plaintiffs asserted claims for violation of California's Unfair Competition Law, breach of contract, and common law fraud, seeking to recover any overcharge arising from the metrics error.  (*Id.*, ¶¶ 95-102, 103-112, 113-118.)

Although Facebook ultimately acknowledged the error had occurred, Facebook said it promptly fixed it, and that since it hadn't impacted billing, Facebook was not offering compensation to video advertisers.

## II.   History of the Litigation

Since the case began, it has been fiercely contested. Facebook has strenuously denied many of the core allegations—in particular Plaintiffs' allegation that the metrics error had impacted the amounts spent on Facebook advertisements–and challenged each of Plaintiffs' legal theories.

Facebook filed four motions to dismiss. (ECF Nos. 46, 79, 110, 160.) After the first, Judge Henderson (who presided over the case until he retired) sustained Plaintiffs' breach of contract claim, dismissed the unjust enrichment claim, and dismissed the UCL claim with leave to replead it. (ECF No. 65.) After Plaintiffs repleaded the UCL claim, Facebook moved to dismiss the claim twice more; the Court granted Facebook's first motion with leave to amend and then denied Facebook's second motion. (ECF Nos. 94, 134.) Facebook also moved to dismiss Plaintiffs' later-added fraud claim, and the Court denied that motion as well. (ECF No. 181.) So, in the end, three of the four claims Plaintiffs brought survived Facebook's motions to dismiss.

During and after that motion practice, the parties engaged in protracted discovery. To prepare class members' claims for certification and trial, Plaintiffs' counsel reviewed tens of thousands of Facebook documents; deposed 11 Facebook employees; and hired a team of consultants and experts to assist with establishing liability and damages. (Gibbs Decl., ¶¶ 4-5.) Plaintiffs also obtained documents from four third parties through subpoenas, conducted three inspections of Facebook source code, and served five sets of interrogatories (to which Facebook responded and later supplemented on several occasions). (*Id.*, ¶ 4.) Facebook, for its part, served

MOTION FOR PRELIMINARY APPROVAL AND NOTICE OF SETTLEMENT
Case No. 4:16-cv-06232-JSW

four sets of interrogatories and three sets of requests for production of documents on the named Plaintiffs, obtained and reviewed their documents, and issued subpoenas to 15 of Plaintiff LLE One's customers, which Plaintiffs moved to quash. (ECF No. 176.) During discovery, the parties engaged in dozens of meet-and-confer discussions (in-person, by phone, and through correspondence). (*Id.*, ¶ 4.) Through those efforts, they were able to resolve a great number of issues, but ultimately briefed eight discovery disputes before Magistrate Judge Spero. (ECF Nos. 96, 105, 117, 126, 127, 128, 176, 180.)

More recently, during much of 2019, Plaintiffs worked to prepare their motion for class certification. In the course of doing so, Plaintiffs retained and disclosed eight consultants and experts under the terms of the parties' protective order and were working actively with several of them to prepare reports in support of class certification. The experts worked on a range of subjects—from analyzing Facebook source code to helping to develop classwide damages models.

As they were preparing for class certification, the parties mediated with the help of retired United States District Court Judge Vaughn R. Walker. (Gibbs Decl., ¶ 6.) Although the parties were not able to come to an agreement at the first all-day mediation (on April 10, 2019), they continued to engage in settlement discussions under Judge Walker's supervision over the course of the three months that followed, and ultimately agreed to terms two days before Plaintiffs' class certification motion was to be filed. (*Id.*, ¶ 6.)

The parties have since prepared the formal settlement agreement now before the Court, which involved cooperative efforts over the course of the past several months to finalize the terms of the agreement, develop a distribution plan, and prepare and finalize the agreement's exhibits and this motion. (Gibbs Decl., ¶ 6.) The parties also recently retained the services of an experienced settlement administrator, A.B. Data Group, after soliciting competing bids from six potential administrators. (*Id.*, ¶ 8.) With the help of A.B. Data Group, the parties developed a notice and funds-distribution plan, which is incorporated into the settlement agreement and detailed below. (*Id.*, ¶ 8.)

**OVERVIEW OF THE SETTLEMENT**

**I.    The proposed settlement class**

The settlement contemplates certification of the following settlement class:

*All U.S. persons or entities who, from February 12, 2015 to September 23, 2016, had an account with Facebook, Inc., and who paid for placement of video advertisements on a Facebook-owned platform.*[1]

(Gibbs Decl., Ex. A (the "Settlement"), Sec. II.24.)

The Northern District's preliminary approval guidelines direct settling parties to explain whether there are differences between the settlement class and the class proposed in the operative complaint.[2] Here, there are two changes to the class definition both of which *narrow* the scope of the class. *See generally Zaklit v. Nationstar Mortg. LLC*, 2017 WL 3174901, at *8 (C.D. Cal. July 24, 2017) ("courts routinely permit plaintiffs to narrow the scope of their class at the certification stage"). First, the class period has been shortened to correspond with the period during which the metrics error actually persisted, as reflected by the parties' discovery efforts. (Gibbs Decl., ¶ 7.) Second, the parties also limited the settlement class to U.S. advertisers only, eliminating any questions about how other countries' laws may or may not have honored a final judgment issued in this case. *See, e.g., Mohanty v. BigBand Networks*, Inc., 07-cv-5101-SBA, 2008 WL 426250, at *8 (N.D. Cal. Feb. 14, 2008) ("a strong possibility or near certainty that a foreign court will not recognize a judgment in favor of the defendant as a bar to the action of its own citizens may be the basis for eliminating foreign purchasers from the class"); *see also* Zachary D. Clopton, *Transnational Class Actions in the Shadow of Preclusion*, 90 Ind. L.J. 1387, 1396-98 (2015) (collecting cases) (saying that many courts have questioned whether a class action can be a "superior" mechanism to adjudicate the dispute if the class has a substantial number of foreign members, whose countries would not give preclusive effect to a U.S. judgment).

---

[1] Excluded from the Class are Facebook; any entity in which Facebook has a controlling interest; Facebook's officers, directors, legal representatives, successors, subsidiaries, and assigns; and any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons.

[2] *See* N.D. Cal., *Proc. Guidance for Class Action Sett.* § 1.a.

MOTION FOR PRELIMINARY APPROVAL AND NOTICE OF SETTLEMENT
Case No. 4:16-cv-06232-JSW

1       The fact that the parties narrowed the class definition in the settlement context

2   eliminates any concern that the definition change was designed to achieve a broader release for

3   Facebook than would have been achieved through litigation. *See In re Chrysler-Dodge-Jeep*

4   *Ecodiesel Mktg. Litig.*, 2019 WL 536661, at *4 (N.D. Cal. Feb. 11, 2019) (preliminarily approving

5   a narrower class definition and recognizing that "[t]hose excluded from the class do not, of

6   course, release any claims"). And, tellingly, had this case not settled, Plaintiffs intended to

7   propose a litigation class identical in scope to the settlement class now proposed. (Gibbs Decl.,

8   ¶ 7.)

9   **II.   Settlement fund**

10      The parties' proposed settlement will deliver a settlement fund in the amount of

11  $40,000,000. (Gibbs Decl., Ex A., Sec. II.23.) To distribute that fund among the members of the

12  class, the parties have devised a plan of allocation that will pay class members on a pro rata

13  basis, directly proportional to the amount they spent on video advertising during the class

14  period. (*Id.*, Sec. V.3(a).) Class members will receive payments automatically—there will be no

15  need to submit claim forms. (*Id.*, Sec. V.3(b).) The settlement fund will also cover all costs

16  associated with the settlement administration and class notice, attorneys' fees and litigation-cost

17  reimbursements, and plaintiff service awards. (*Id.*, Sec. V.6.) The settlement fund is non-

18  reversionary, meaning Facebook will not be entitled to retain any part of the settlement fund for

19  any reason. (*Id.*, Sec. V.5.)

20      To assist in transmitting payment to the class (and in administering the settlement

21  generally), the parties retained the services of A.B. Data Group. Before entering into a contract

22  with A.B. Data, the parties first received bids from six experienced and qualified settlement

23  administrators, each of which Plaintiffs' counsel have worked with successfully in other cases,

24  and ultimately selected A.B. Data because in Plaintiffs' counsel's judgment, A.B. Data was

25  offering the best practicable notice and distribution options tailored to the specific needs of this

26  class at one of the lowest price points. (Gibbs Decl., ¶ 8.) Through the competitive bidding

27  process, Plaintiffs' counsel were able to negotiate a plan with A.B. Data that distributes money

28  directly to class members digitally without requiring a claims process, and were able to limit the

MOTION FOR PRELIMINARY APPROVAL AND NOTICE OF SETTLEMENT
Case No. 4:16-cv-06232-JSW

1  cost of administering the settlement (including providing notice to the class) to approximately

2  $350,000. (*Id.*) Proposed class counsel have also worked with A.B. Data recently in *In re: Vizio*

3  *Inc. Consumer Privacy Litigation*, No. 8:16-ml-02693-JLS (C.D. Cal.), where the quality of its

4  work further supported its selection here. (Gibbs Decl., ¶ 8.)

5  ### III.  The scope of class members' release of claims

6       In exchange for the benefits provided under the settlement, the Plaintiffs and settlement

7  class members will provide a release of claims against Facebook and its officers, directors, legal

8  representatives, successors, subsidiaries, and assigns. (Gibbs Decl., Ex. A, Sec. XIII.1.) The

9  release is limited to claims "that were alleged or could have been alleged based on the facts

10  alleged in the Action or that arise out of or relate to facts alleged in the Action." (*Id.*) Facebook

11  will likewise release Plaintiffs and their attorneys from any claims related to this litigation or

12  settlement. (*Id.*, Sec. XIII.3.)

13       The Northern District's guidelines ask the parties to address whether the claims to be

14  released differ from the claims in the operative complaint. *See* N.D. Cal., *Proc. Guidance for Class*

15  *Action Sett.* § 1.c. Here, the parties do not seek to release any claims other than those that were

16  (or could have been) pleaded based on the facts alleged by Plaintiffs during the litigation. Such a

17  release is appropriate, and typical. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).

18  ### IV.  The provision for attorneys' fees, cost reimbursements, and service awards

19       Class Counsel have yet to be compensated for their litigation efforts. Having litigated the

20  case for three years, while advancing hundreds of thousands of dollars in litigation expenses on

21  behalf of the class, Class Counsel will file a motion at final approval requesting that the Court

22  approve an award of 30% of the fund ($12 million) to pay their attorneys' fees. In addition,

23  Class Counsel intends to seek reimbursement of their approximately $730,000 in expenses

24  incurred to prosecute this case. (Gibbs Decl., ¶ 9 & Ex. A, Sec. IX.1; Eglet Decl., ¶ 8; Friedman

25  Decl., ¶ 9.)

26       Plaintiffs' motion for fees and costs will be made under California law since this Court is

27  sitting in diversity jurisdiction under the Class Action Fairness Act, and each of Plaintiffs'

28  claims in this case was governed by California law. *See, e.g.*, *Mangold v. Cal. Pub. Utilities*

*Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995); *Beaver v. Tarsadia Hotels*, 2017 WL 4310707, at *9 (S.D. Cal. Sept. 28, 2017) ("California law governs" fee applications "where state law claims predominate," and "state law applies to determine the right to fees and the method of calculating them"); *see also* Gibbs Decl., Ex. C, Facebook Terms, FBVM00007107, Sec. 16.1 (Facebook's choice-of-law provision: "The laws of the State of California will govern … any claim that might arise between you and us"). Under California law, when a plaintiff recovers a common fund for a class, "courts routinely award attorneys' fees of one-third of the common fund." *Beaver v. Tarsadia Hotels*, 2017 WL 4310707, at *9 (collecting cases).

Plaintiffs will provide additional detail, consistent with Rule 23(h), when they file their formal fee motion. In that motion, Plaintiffs' counsel will provide a more thorough description of their efforts during the litigation, a more detailed accounting of their litigation costs, and cite authority for the reasonableness of the requested payment. While Plaintiffs will provide more detail with their formal fee motion, per the Northern District's guidelines Plaintiffs also provide the following lodestar information now: Over the past three years, Plaintiffs' counsel have devoted about 11,690 hours to this case; they have not been compensated for any of that time or effort to date; and their lodestar using their typical hourly billing rates totals $7,083,845. Class Counsel anticipate their lodestar will increase over the coming months, as they prepare a final approval motion, a formal application for their fees and costs, and as they work with the settlement administrator, Facebook, and class members to implement the settlement.

Plaintiffs also intend to ask the Court to award the class representatives service awards to recognize the time, effort, and expense they incurred pursuing claims against Facebook, which benefitted the entire class. In addition to the substantial time and effort required to respond to discovery, there were unique financial and business risks associated with prosecuting this case. In particular, Facebook issued subpoenas to many of Plaintiff LLE One LLC's customers, which not only required effort and expenditure of resources to respond to, but also exposed Plaintiff to the risk of lost clients and financial harm due to its prosecution of this case for the benefit of the class. These unusual risks merit, in Plaintiffs' view, service awards higher than typically awarded to class representatives who do not bear such risks in prosecuting class

MOTION FOR PRELIMINARY APPROVAL AND NOTICE OF SETTLEMENT
Case No. 4:16-cv-06232-JSW

litigation. Given the superlative participation of LLE One, and its two principals, Todd and Laurelie Levy, Plaintiffs will request a service award of up to $15,000 for Plaintiff LLE One, LLC, from the settlement fund as well as a service award of up to $10,000 for Plaintiff Jonathan Murdough (who also devoted time and resources to prosecuting the case for the class's benefit). The settlement agreement preserves the Court's supervisory authority to determine the appropriateness of any service awards, just as it does for the motion for attorneys' fees and costs. (Gibbs Decl., Ex. A, Sec. IX.2, 5.)

**THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT**

**AND DIRECT NOTICE TO THE SETTLEMENT CLASS**

In years past, district courts have commonly undertaken a "preliminary approval" process when first evaluating a proposed class action settlement. In December 2018, this process was formalized. *See* Fed. R. Civ. P. 23(e)(1). Under the new rule: "The court must direct notice [of the proposed settlement] in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

Below, Plaintiffs detail why this motion should be granted and notice should be sent to the settlement class. In short, the settlement is poised to provide a strong monetary recovery to the class, making the settlement fair, reasonable, and adequate, and thus worthy of the Court's approval. And certification of the class for settlement purposes is appropriate under both Rule 23(a) and Rule 23(b)(3).

**I.    The proposed settlement merits approval.**

"The decision to give notice of a proposed settlement to the class is an important event. It should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object." Fed. R. Civ. P. 23(e)(1) advisory committee's note (2018). A careful review at this stage of the proceedings is important, as the next step will be the costly and time-consuming process of disseminating class notice. *See* Newberg on Class Actions § 13:10 (5th ed.).

9

The revised Rule 23 now provides a checklist of factors to consider when assessing whether a proposed settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). (Previously, the Ninth Circuit and other courts had developed their own lists of factors to be considered; the revised Rule 23 "directs the parties to present [their] settlement … in terms of [this new] shorter list of core concerns." Fed. R. Civ. P. 23(e)(2) advisory committee's note.

Below, Plaintiffs analyze each of the Rule 23(e)(2) factors in turn, and do so bearing in mind the Ninth Circuit's recent admonition that the key "underlying question remains this: Is the settlement fair?" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018); *accord* Fed. R. Civ. P. 23(e)(2) advisory committee's note (2018) ("The central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate."). As will be discussed, the settlement is fair, and the Rule 23(e)(2) factors weigh in favor of approving it.

## A.    Plaintiffs and their counsel have adequately represented the class.

Under Rule 23(e)(2)(A), the first factor to be considered is the adequacy of representation by the class representatives and attorneys. This analysis includes "the nature and amount of discovery" undertaken in the litigation. Fed. R. Civ. P. 23(e)(2)(A) advisory committee's note.

Here, the class representatives diligently represented the class. They actively participated in the litigation and discovery over the past several years, including by responding to 68 written discovery requests, conducting ESI searches, and producing documents. (Gibbs Decl., ¶ 4.) Throughout, they have remained in contact with Plaintiffs' counsel, stayed apprised of the litigation, and have acted with the interests of the class in mind. (*Id.*)

Plaintiffs' counsel have also adequately represented the class. They vigorously prosecuted this case, briefing four motions to dismiss, eight discovery motions, and preparing a motion to certify a litigation class. (Gibbs Decl., ¶¶ 4-5.) They engaged in protracted discovery, conducting 11 depositions, and reviewing tens of thousands of pages of documents. (*Id.*, ¶ 4.) They also engaged the services of eight experts and consultants who assisted in everything from source code inspections to developing damages methodologies. (*Id.*, ¶ 5.) As part of these

1    efforts, Class Counsel have advanced approximately $730,000 in litigation expenses on behalf

2    of the class, with no assurance that those expenses would be reimbursed. (*Id.*, ¶ 9; Eglet Decl.,

3    ¶ 8; Friedman Decl., ¶ 9.)

4          Finally, Class Counsel have successfully litigated many prior class actions involving

5    California consumer protection, fraud, and contract claims, successfully resolving many of

6    those in this district, and have brought that experience and knowledge to bear on behalf of the

7    class. (Gibbs Decl., ¶¶ 2, 11 & Ex. B; Eglet Decl., ¶¶ 4, 9; Friedman Decl., ¶ 2 & Ex. A.)

8        **B.**    **The parties negotiated the proposed settlement at arm's length.**

9          The second Rule 23(e)(2) factor asks the Court to confirm that the proposed settlement

10   was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). As with the preceding factor, this

11   can be "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of

12   the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) and (B)

13   advisory committee's note (2009). Where, like here, the settlement was negotiated before

14   certification of a litigation class, the district court should scrutinize the negotiated settlement

15   "not only for explicit collusion, but also for more subtle signs that class counsel have allowed

16   pursuit of their own self-interests and that of certain class members to infect the negotiations."

17   *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 966 (N.D. Cal. 2019) (Tigar, J.)

18   (citing *In re Bluetooth Headsets Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).

19         There are multiple indicia here of the arm's length nature of the negotiations. First, the

20   parties did not begin negotiations until earlier this year, after the case had already been pending

21   for well over two years. (Gibbs Decl., ¶¶ 3,6.) By the time they reached agreement, the parties

22   had engaged in significant pretrial motion practice, conducted extensive discovery, worked with

23   consultants and experts, and Plaintiffs had prepared their motion to certify a litigation class.

24   (*Id.*); *Wannemacher v. Carrington Mortg.*, No. 12-cv-2016, 2014 WL 12586117, at *8 (C.D. Cal.

25   Dec. 22, 2014) (finding no signs of collusion where "significant … discovery [was] conducted";

26   "plaintiffs had already drafted a class certification brief"; and before "exploring settlement, the

27   parties litigated the case for a year"). In other words, when the parties entered into settlement

28   discussions, they well understood the strengths and weaknesses of their respective positions.

Second, the parties resolved the litigation with the assistance of retired U.S. District Court Judge, Vaughn R. Walker. (Gibbs Decl., ¶ 6.) "[T]he involvement of a neutral or court-affiliated mediator or facilitator in [the parties'] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Rule 23(e)(2)(B) advisory committee's note; *accord Pederson v. Airport Terminal Servs.*, No. 15-cv-02400, 2018 WL 2138457, at *7 (C.D. Cal. April 5, 2018) (the oversight "of an experienced mediator" reflected noncollusive negotiations). The parties conducted a full day of mediation under Judge Walker's supervision in April 2019; even then, they were not able to reach agreement on the material terms of the settlement until months later, through further conversations with (and under the supervision of) Judge Walker. (Gibbs Decl., ¶ 6.)

Third and finally, several potential warning signs for collusion are absent here: the requested attorneys' fees are proportional to class member compensation, there is no "clear sailing" arrangement whereby Facebook has agreed not to contest the fee motion, and no unawarded money will revert to Facebook. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 611 n.19 (9th Cir. 2018). In sum, to the extent heightened scrutiny is applied to this settlement, the Court can be confident of the arm's length nature of the process.

### C.    The quality of relief to the class weighs in favor of approval.

The third factor to be considered is whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C) advisory committee's note; *In re Volkswagen*, 895 F.3d at 611 (the "factors and warning signs" identified in *Bluetooth* "are just guideposts"; the focus is fairness).

1

**1.    The settlement provides strong relief for the class.**

The relief to be provided to the settlement class is strong. First, speaking in general terms, the $40 million settlement fund, which will be distributed automatically to class members, compares favorably to recoveries in other recent class actions concerning online advertising. *See, e.g.*, *In re Google Adwords Litig.*, No. 5:08-cv-03369, ECF No. 384 (Aug. 7, 2017 N.D. Cal.) (granting final approval of a $22.5 million claims-made settlement in suit alleging fraud relating to Google advertising); *In re Yahoo! Litig.*, No. 2:06-cv-02737, ECF No. 226 (Jan. 15, 2010 C.D. Cal.) (in class action alleging online click fraud, court approved settlement which provided injunctive relief, and also allowed advertisers who went out-of-business to claim $20); *see also Fox Test Prep v. Facebook, Inc.*, 588 F. App'x 733, 734 (9th Cir. 2014) (affirming order denying certification of a litigation class in suit involving alleged fraud related to advertising on Facebook).

The $40 million settlement fund also represents a sizable percentage of what Plaintiffs estimate they may have recovered had they prevailed at trial. During the same period that the parties were working with Judge Walker to settle this case, Plaintiffs were also working with their experts to devise a methodology for calculating classwide damages. (*See* Gibbs Decl. ¶ 5.) Because the case settled when it did, Plaintiffs did not ultimately ask their experts to complete the time-consuming and costly process of calculating classwide damages. But working with their experts, Plaintiffs devised a reasonable prediction of what they might be able to recover at trial (taking into account a range of information obtained in discovery, including the ratio of video to non-video advertising on Facebook, Facebook's video and non-video advertising revenues, and a pricing study conducted by Facebook toward the beginning of the class period). (*See id.*) In doing so, Plaintiffs estimated that—were they to prevail at trial and on any subsequent appeal—their recovery would likely be between $100-200 million. (*Id.*)[3] Of course, that estimate is subject to substantial downward pressure due to the continued litigation risks remaining: Facebook could prevail at class certification, summary judgment, trial, or on appeal, leaving the class with no recovery at all.

---

[3] *See also* N.D. Cal., *Proc. Guidance for Class Action Sett.* § 1.e (requiring the parties state "the potential class recovery if plaintiffs had fully prevailed on each of their claims").

Having recovered as much as 40% through settlement as they may have recovered after a trial, Plaintiffs have no reservation in recommending that the Court approve this settlement on behalf of the class. In other class cases, courts have recognized that a recovery of 20-40% of what could be potentially recovered at trial easily justifies compromising the class's claims through settlement rather than bearing additional risk and delay through continued litigation. *See, e.g.*, *Messineo v. Ocwen Loan Servicing, LLC*, No. 15-CV-02076-BLF, 2017 WL 733219, at *5 (N.D. Cal. Feb. 24, 2017) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)) ("it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial," and noting that this District has approved settlements valued at 14% and 13.6% of the maximum recovery); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (upholding class settlement valued at 10 to 30% of total damages); *In re Chrysler-Dodge-Jeep*, 2019 WL 536661, at *9 (N.D. Cal. Feb. 11, 2019) (granting preliminary approval of settlement that, with 100% claims rate, would deliver 33% of primary damages estimate); *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *2 (N.D. Cal. Nov. 21, 2016) (granting final approval of "Settlement Amount [that] represents 15 percent of Plaintiffs' likely recovery at trial if they were to prevail").

In other words, the negotiated relief, from Plaintiffs' perspective, readily satisfies the Rule 23 standard of fair, reasonable, and adequate. While there can always be room for improvement, this settlement returns tens of millions of dollars to the class. And it does so in a case that was fiercely contested, where there was substantial litigation risk, and where even upon a showing of liability, there would have been questions about Plaintiffs' ability to demonstrate the existence and quantum of damages. Under these circumstances, Plaintiffs and their counsel wholeheartedly endorse the negotiated resolution of this action. (Gibbs Decl., ¶¶ 10-11; Eglet Decl., ¶ 9; Friedman Decl., ¶¶ 10-11.)

### 2. Continued litigation would entail substantial cost, risk, and delay.

Almost all class actions involve high levels of cost, risk, and lengthy duration, which supports the Ninth Circuit's "strong judicial policy that favors settlements, particularly where

1  complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234,

2  1238 (9th Cir. 1998). Here, had the parties not settled, the litigation would have been risky,

3  protracted, and costly.

4      With respect to the remaining cost and time needed to prosecute the case, though the

5  parties had already completed much discovery, a number of additional depositions would have

6  been forthcoming (including percipient witness depositions, depositions of the named Plaintiffs,

7  and depositions of both parties' experts). The parties would also have briefed class certification,

8  related *Daubert* issues, and a likely Rule 23(f) appeal after the Court's certification ruling,

9  followed by summary judgment, a second round of *Daubert* motions, motions in limine, a

10  possible decertification motion, and then trial. Each stage would have added risk and

11  necessarily imposed delay before relief could be provided to the class.

12      As to the merits of the case, Plaintiffs believe they had a strong case on liability. They

13  believe they could have demonstrated that Facebook's metrics error exaggerated video

14  advertisement performance and that Facebook violated its legal obligations by publishing the

15  overstated metrics and then failing to promptly remove them after discovering the error. But

16  Plaintiffs' counsel also recognize, based on their experience in similar class actions and based

17  on their familiarity with the record, that the case faced real challenges at class certification,

18  summary judgment, and trial, where the case could either fail on liability, or at least be whittled

19  down. Facebook was certain to argue that while there had been a metrics error, the affected

20  metrics were just two of many metrics that Facebook provided, and were arguably less

21  important than others that Facebook provided. Facebook would also likely point to data that it

22  believes shows many advertisers never viewed the erroneous metrics and so could not have

23  relied on them to their detriment.

24      In addition, Facebook would likely also point to the fact that while the Court sustained

25  several of Plaintiffs' claims on the pleadings, it did so while leaving open the possibility of

26  reevaluating them later in the case. There was no guarantee Plaintiffs would survive summary

27  judgment, let alone trial. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 319, 321-22

28  (N.D. Cal. 2018) (granting final approval of settlement fund representing 14.5% of Plaintiffs'

damages estimate and 36% of Defendants' damages estimate, while overruling objections to the amount of the settlement because "none of these [objectors] adequately take into account the risks and delays involved in proceeding to summary judgment or trial"); *Singer v. Facebook, Inc.*, 3:18-cv-04978-JD, at *1 (N.D. Cal. May 16, 2019) (dismissing contract claim similar to the one asserted in this litigation).

Plaintiffs believe they had reasonably strong prospects of overcoming Facebook's arguments and defenses, but there can be little doubt that those defenses presented the possibility that the class would recover nothing if the case persisted, or at least far less than Plaintiffs were seeking. In addition, even had Plaintiffs ultimately prevailed on liability, Facebook would likely argue that the erroneous metrics were not part of Facebook's billing mechanism and so even if Facebook acted unlawfully, the actions did not affect advertising prices. The result of this latter argument is the class recovers nothing. While Plaintiffs were developing evidence to combat this argument, calculating damages in this type of case is very complicated and expensive, and even once calculated, the measure can be subject to attack.

Of course, even if Plaintiffs prevailed on each of these issues through trial, an appeal would likely follow, taking another two-plus years to resolve. At best, a class recovery would come by perhaps 2022 or 2023. So, while there were reasonable prospects for a greater recovery following a trial and appeals, that victory would have entailed substantial risk, cost, and delay. All of these considerations favor settlement; the class will receive meaningful relief now—not years down the road, assuming they prevail at all.

### 3. The settlement agreement provides for an effective distribution of proceeds to the class.

The settlement contemplates an efficient and effective distribution process. Most notably, there is no claims process. Class members will receive their settlement payments automatically, without the need to gather information and documents; no affirmative steps on their part are required to receive their payments. *See, e.g., Smith v. Levine Leichtman Capital Partners, Inc.*, No. 10-cv-00010-JSW, 2012 WL 12920189, at *2 (N.D. Cal. Nov. 15, 2012). Each class member will thus automatically receive a payment equal to the portion of the settlement

MOTION FOR PRELIMINARY APPROVAL AND NOTICE OF SETTLEMENT
Case No. 4:16-cv-06232-JSW

1   fund that is proportional to the amount that class member spent on Facebook video advertising

2   during the class period. (Gibbs Decl., Ex. A, Sec. V.3.)

3         The modes of payment are also designed to ease the transfer of funds from Facebook to

4   class members, in ways that promote the class's use of those funds. Class members who spent

5   over $500,000 on video advertising during the class period, and who will thus be owed

6   thousands of dollars under the settlement, will automatically receive checks mailed to their

7   addresses on file with Facebook. (*Id.*, Sec. V.3.b.iii.) Class members who spent at an

8   intermediate level (less than $500,000 but at least $15) will receive digital MasterCards at the

9   email address on file with Facebook. (*Id.*, Sec. V.3.b.ii.) The digital MasterCards can be

10   deposited into Google Wallet or Apple Pay, and can be used like credit cards at any physical or

11   online retailer that accepts Mastercard.  (Gibbs Decl., ¶ 8.) Further, the digital MasterCards do

12   not impose any fees on the user, will have an expiration date of at least five years, and any

13   unclaimed funds will escheat to the state. Finally, class members who spent very small amounts

14   on Facebook during the class period (under $15 in total) will have their relatively small

15   recoveries automatically credited to their Facebook accounts (if their accounts are active,

16   indicating they are likely to be able to use the credit in the near term), and otherwise will receive

17   digital MasterCards. (*Id.*, Ex. A, Sec. V.3.b.i.) Each of these payment methods is simply the

18   default method; class members can opt for a different payment method through a simple online

19   process through the settlement website. (*Id.*, Sec. V.3.b.)

20       **4.**    **The terms of the proposed award of attorneys' fees, including timing**

21           **of payment, also support settlement approval.**

22         Nothing about the proposed award of attorneys' fees should detract from the fairness of

23   the settlement. As noted above, Plaintiffs are seeking compensation for their counsel from the

24   settlement fund, which necessarily entails a fee award that is proportional to the class's

25   recovery, and the fee is poised to compensate counsel at a multiplier of about 1.7, which courts

26   have recognized is reasonable in cases like this—where protracted litigation led to a strong

27   recovery for the class. *Sadowska v. Volkswagen Grp. of Am.*, 2013 WL 9600948, at *9 (C.D. Cal.

28   Sept. 25, 2013) ("Multipliers can range from 2 to 4 or even higher."); *Steiner v. Am. Broad. Co.*,

248 F. App'x 780, 783 (9th Cir. 2007) (approving 6.85 multiplier and stating that "still falls well within the range of multipliers that courts have allowed"). The proposed award is thus appropriate, which Plaintiffs will detail further when they file their Rule 23(h) motion for attorneys' fees.

### 5.   The parties have no other agreements pertaining to the settlement.

Court also must evaluate any agreement made in connection with the proposed settlement. See Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). Here, the settlement agreement before the Court is the only extant agreement. (Gibbs Decl., ¶ 6.)

### D.   The settlement treats all settlement class members equitably.

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D) advisory committee's note.

Here, the settlement treats all class members the same, paying all class members an amount directly proportional to the amount they spent on Facebook video advertising during the class period—and thus directly proportional to any damages they might have been able to recover at trial. *See, e.g.*, *Altamirano v. Shaw Indus., Inc.*, No. 13-cv-00939, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) (finding no preferential treatment because the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct").

Finally, though the class representatives will receive additional money in the form of service awards, the extra payments are in recognition for the service they performed on behalf of the class, and the Ninth Circuit has approved such awards. *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198 EMC, 2012 WL 381202, at *6 (N.D. Cal. Feb. 6, 2012) ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards. In fact, the Ninth Circuit recently noted that incentive payments

to named plaintiffs have become 'fairly typical' in class actions."); *see also Boyd v. Bank of Am. Corp.*, No. 13-cv-0561-DOC, 2014 WL 6473804, at *7 (C.D. Cal. Nov. 18, 2014) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 976-77 (9th Cir. 2003)). The proposed awards here are commensurate with the fact that the named Plaintiffs in this case were subject to an unusual amount of discovery, including third party discovery directed at Plaintiff LLE One, LLC's customers. (Eglet Decl., ¶¶ 10-16.)

* * *

For all these reasons, the proposed settlement merits approval.

## II.  Certification of the proposed settlement class will be appropriate.

The second prerequisite for directing notice of the settlement to the class is a determination that the class is likely to meet the requirements for certification for settlement purposes. Fed. R. Civ. P. 23(e)(1)(B)(ii). Certification requires that all four elements of Rule 23(a) and at least one prong under Rule 23(b) be satisfied. In addition, the Court must assure itself that the proposed forms of notice to the class are the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

The criteria for class certification are applied differently in litigation classes and settlement classes. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc). For example, when deciding to certify a settlement class, "manageability is not a concern" since the settlement will eliminate the need for a trial. *Id.* at 557. On the other hand, other aspects of certification require "heightened attention by the district court." *Id.* at 558 (quotation omitted). "[T]he aspects of Rule 23(a) and (b) that are important to certifying a settlement class are those designed to protect absent [class members] by blocking unwarranted or overbroad class definitions." *Id.* (quotation omitted). The focus is "on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Id.* (same).

Here, the settlement class is composed of just those advertisers who bought video advertising on a Facebook-owned platform during the period in which Plaintiffs allege certain Facebook video advertising metrics were inflated. And, as was discussed above, the settlement

19

1  class definition here is even narrower than the class definition that had been proposed in

2  Plaintiffs' complaint: both the time period (February 12, 2015 to September 23, 2016) and the

3  geographic constraint (U.S. advertisers only) have further limited the scope of the class. (Gibbs

4  Decl., ¶ 7.) There is thus no risk that this settlement expands the scope of the class in an

5  unwarranted, overbroad fashion. *See Hyundai & Kia*, 926 F.3d at 558. And for the reasons that

6  follow, the proposed settlement class satisfies the requirements of Rule 23(a) and (b)(3).

7         **A.**    **The settlement class satisfies the requirements of Rule 23(a).**

8            **1.**    **The class members are too numerous to be joined in one action.**

9        The first Rule 23(a) requirement is that the proposed class be so numerous that joinder of

10  all members is impracticable. See Fed. R. Civ. P. 23(a)(1). Classes of more than 40 members are

11  presumed to meet this requirement. *Arroyo v. Int'l Paper Co.*, No. 17-CV-06211-BLF, 2019 WL

12  1508457, at *2 (N.D. Cal. Apr. 4, 2019). Here, the settlement class consist of far more than 40

13  members; per Facebook's records, the class consists of approximately 1.35 million advertisers.

14  (Gibbs Decl., ¶ 6.) The numerosity requirement is therefore satisfied.

15            **2.**    **The action involves common questions of law or fact.**

16        Under Rule 23(a)(2), there must be "questions of law or fact common to the class,"

17  meaning the class's claims "must depend upon a common contention" such that

18  "determination of [their] truth or falsity will resolve an issue that is central to the validity of

19  each one of the claims in one stroke." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 350 (2011). This

20  case poses several overarching questions common to all class members, including (i) whether

21  Facebook was obligated to provide reasonably accurate metrics; (ii) whether Facebook's

22  average watch time metrics were erroneous; (iii) whether that error had the effect of inflating

23  the metrics; and (iv) whether Facebook resolved the error promptly after discovering it. *Wolin v.*

24  *Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1172 (9th Cir. 2010). For settlement purposes, the

25  commonality requirement is thus satisfied; the "circumstances of each particular class member

26  … retain a common core of factual or legal issues with the rest of the class." *Evon v. Law Offices*

27  *of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012).

28

### 3.    Plaintiffs' claims are typical of the class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." "[T]he typicality requirement is permissive and requires only that the representative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). Plaintiffs have alleged the same claims that would be pursued by anyone else who bought video advertising from Facebook during the period at issue: that Facebook published metrics that were erroneous and inflated, and that Facebook failed to correct the error promptly after discovering it. This common course of conduct gives rise to the same reasonably co-extensive claims for all class members for purposes of settlement. *See Just Film v. Buono*, 847 F.3d 1108, 1117 (9th Cir. 2017).

### 4.    Plaintiffs and their counsel have, and will continue to, fairly and adequately protect the interests of the class.

The final Rule 23(a) requirement demands that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This adequacy requirement involves two questions: (i) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (ii) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018). Here, neither Plaintiffs nor their counsel have any conflicts of interest with absent class members. To the contrary, their interests are aligned. Plaintiffs bought video advertising from Facebook just like every class member and share those class members' interest in recouping some of the allegedly inflated price paid.

Plaintiffs and their counsel have also demonstrated their commitment to the class over the last three years. Since filing suit in late 2016, counsel have spent over ten thousand hours prosecuting the case and have incurred approximately $730,000 in litigation expenses. (*See* Gibbs Decl., ¶ 9; Eglet Decl., ¶ 8; Friedman Decl., ¶ 9.) The case was hard fought, with Facebook filing four motions to dismiss and subjecting the named plaintiffs to extensive discovery. To prepare class members' claims for certification, Plaintiffs' counsel reviewed tens

1 of thousands of Facebook documents; deposed 11 Facebook employees; and hired experts to

2 assess class members' damages. (Gibbs Decl., ¶ 4.) Plaintiffs' counsel are well-versed in

3 complex class litigation and devoted substantial time and expertise for the benefit of the class.

4 (*Id.*, ¶¶ 2, 4, 9-10 & Ex. B (firm resume); Eglet Decl., ¶¶ 4-6, 8; Friedman Decl., ¶¶ 2-4 & Ex. A

5 (firm resume).) There is no reason to doubt the adequacy of this representation.

6 **B.     The settlement class meets the requirements of Rule 23(b)(3).**

7         "In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class

8 certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2)

9 or (3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Here, the settlement class

10 is maintainable under Rule 23(b)(3), as common questions predominate over any questions

11 affecting only individual members and class resolution is superior to other available methods of

12 adjudication. *Id.*

13        Whether "a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by

14 whether certification is for litigation or settlement." *In re Hyundai & Kia*, 926 F.3d at 558.

15 Particularly in the settlement context, "predominance is 'readily met' in cases alleging

16 consumer fraud." *Id.* at 559 (quoting *Amchem Prod. v. Windsor*, 521 U.S. 591, 625 (1997)). This is

17 especially true where, as here, California law could be applied uniformly to all class members

18 because the contract at issue contains a choice-of-law provision designating California law.

19 (Gibbs Decl., Ex. C, Facebook Terms, Sec. 16.1.)

20        As alleged, class members' claims would depend on issues including whether Facebook

21 published inaccurate metrics and whether Facebook knew of the inaccuracy. These types of

22 allegations—turning as they do on whether a company provided inaccurate information to its

23 customers—apply to the class as a whole, satisfying the predominance requirement. *Id.*

24 (affirming finding of common questions that included whether certain "statements were in fact

25 inaccurate" and "whether the [defendants] knew that their … statements were false and

26 misleading"). The same holds true for Plaintiffs' contract-based claim. *See Feller v. Transamerica

27 Life Ins. Co.,* 2017 WL 6496803, at *11 (C.D. Cal. Dec. 11, 2017) ("courts have long found that

28 'claims arising from interpretations of a form contract appear to present the classic case for

1   treatment as a class action'") (collecting cases).

2        Similarly, it is superior to resolve all settlement class members' claims through a single

3   class action as opposed to a series of individual lawsuits. "From either a judicial or litigant

4   viewpoint, there is no advantage in individual members controlling the prosecution of separate

5   actions. There would be less litigation or settlement leverage, significantly reduced resources

6   and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. Finally, in the settlement

7   context, class proceedings would not present the sort of intractable management problems that

8   sometimes override the collective benefits of class actions, "for the proposal is that there be no

9   trial." *Amchem*, 521 U.S. at 620; *accord In re Hyundai & Kia*, 926 F.3d at 556-57 ("manageability

10  is not a concern in certifying a settlement class").

11       **C.    The settlement provides the best method of notice practicable.**

12       Before approving a class settlement, "[t]he court must direct notice in a reasonable

13  manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

14  Where the settlement class is certified under Rule 23(b)(3), the notice must also be the "best

15  notice that is practicable under the circumstances, including individual notice to all members

16  who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

17       Rule 23 was recently amended "to recognize contemporary methods of giving notice to

18  class members," doing away with the interpretation that the Rule required notice "by first class

19  mail." Fed. R. Civ. P. 23(c)(2) advisory committee's note (2018). The rule recognizes that

20  "electronic methods of notice, for example email, [will sometimes be] the most promising"

21  method for delivery of notice—depending on the make up of the class and whether class

22  members are likely to have email access. *Id.*

23       Here, based in part on the recommendation of the settlement administrator, the parties

24  agreed to provide individual notice to class members directly by email, to the email addresses

25  on file with Facebook. (*See* Settlement, Sec. VI.5.); *see also* Fed. R. Civ. P. 23(c)(2) advisory

26  committee's note (2018) (recommending that the Court and counsel "consider the use of class

27  notice experts or professional claims administrators" in devising a notice plan). Email is an

28  ideal method of notice since Facebook maintains email addresses for more than 1.3 million

class members, and uses email to communicate with its advertisers in the ordinary course of its business. To supplement that form of notice, the Settlement Administrator will mail a postcard to more than 30,000 class members for whom Facebook has a mailing address. (Schachter Decl. ¶¶ 6-10.) The direct email and mail notice will be supplemented further by an electronic media notice campaign designed by the settlement administrator to deliver appropriate notice to the class. (*Id.*) The parties and settlement administrator are confident that the notice plan will ensure the vast majority of class members learn of the settlement. (*See id.*)

Plaintiffs thus request that the Court approve this notice plan as the best practicable under the circumstances. The notices comply with Rule 23(c)(2)(B) in that they "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members. (*See* Gibbs Decl., Exs. A-1 & A-2.) The notice is also consistent with the sample provided by the Federal Judicial Center.

Notice of the proposed settlement will also be provided to the U.S. Attorney General and appropriate regulatory officials in all 50 states, as required by the Class Action Fairness Act, 28 U.S.C. § 1715. (Gibbs Decl., Ex. A, Sec. VI.13.) Facebook, through the settlement administrator, will provide these government officials with copies of all required materials so that the states and federal government may make an independent evaluation of the settlement and bring any concerns to the Court's attention prior to final approval.

### THE COURT SHOULD SET A SCHEDULE FOR FINAL APPROVAL.

Once the Court directs notice of the settlement to the class, the next steps in the settlement approval process are to schedule a final approval hearing, allow time for notice to be sent to the class and an opportunity for class members to submit objections and opt-out requests, and allow the parties to conduct appropriate objector discovery if needed.[4]

---

[4] *See, e.g.,* Final Order and Judgment, *Milano v. Interstate Battery Sys. of Am., Inc.*, No. 4:10-CV-02125 (N.D. Cal. July 5, 2012) (ECF No. 106) (noting that objector repudiated his objection in deposition testimony); *In Re: MagSafe Apple Power Adapter Litig.*, No. 5:09-CV-01911, 2015 WL 428105, at *2 (N.D. Cal. May 29, 2012) (authorizing objector depositions).

MOTION FOR PRELIMINARY APPROVAL AND NOTICE OF SETTLEMENT
Case No. 4:16-cv-06232-JSW

Plaintiffs propose the following schedule:

| | |
|---|---|
| Deadline for disseminating class notice: | 21 days after entry of order |
| Plaintiffs to file a motion for final approval and award of attorneys' fees: | 50 days after entry of order |
| Deadline for class members to opt out of or object to the settlement: | 80 days after entry of order |
| Replies in support of final approval and fee application: | 110 days after entry of order |
| Deadline for filing of affidavit attesting that notice was disseminated as ordered: | 115 days after entry of order |
| Final approval hearing: | 125 days after entry of order |

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the accompanying proposed order directing notice of the proposed settlement to the class, appointing Class Counsel, and setting a hearing for the purpose of deciding whether to grant final approval of the settlement.

DATED: October 4, 2019                    Respectfully submitted,

                                          **GIBBS LAW GROUP LLP**

                                          By: */s/ Eric H. Gibbs*

                                          Eric H. Gibbs
                                          David Stein
                                          Aaron Blumenthal
                                          505 14th Street, Suite 1110
                                          Oakland, CA 94612
                                          Telephone: (510) 350-9700
                                          Facsimile: (510) 350-9701
                                          ehg@classlawgroup.com
                                          ds@classlawgroup.com
                                          ab@classlawgroup.com

                                          Andrew N. Friedman
                                          Geoffrey Graber
                                          Eric Kafka
                                          **COHEN MILSTEIN SELLERS & TOLL PLLC**

25

1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
afriedman@cohenmilstein.com
ggraber@cohenmilstein.com
ekafka@cohenmilstein.com

Michael Eisenkraft
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
meisenkraft@cohenmilstein.com

Robert T. Eglet
Robert M. Adams
Erica D. Entsminger
Artemus W. Ham
**EGLET ADAMS**
400 South Seventh Street, Suite 400
Las Vegs, NV 89101
Telephone: (702) 450-5400
Facsimile: (702) 450-5451
eservice@egletlaw.com

Aisha Christian
129 West 27th Street, 11th Floor
New York, NY 10001
Telephone: (646) 285-2029

Charles Reichmann (SBN 206699)
**LAW OFFICES OF CHARLES REICHMANN**
16 Yale Circle
Kensington, CA 94708-1015
Telephone: (415) 373-8849
charles.reichmann@gmail.com

Joseph A. Motta (SBN 133531)
**RUEB & MOTTA**
1401 Willow Pass Road, Suite 880
Concord, CA 94520
Telephone: (925) 602-3400
Facsimile: (925) 602-0622
joe@rmmprolaw.com

*Counsel for Plaintiffs and Proposed Class*