Eric H. Gibbs (SBN 178658)
David Stein (SBN 257465)
Aaron Blumenthal (SBN 310605)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ehg@classlawgroup.com
ds@classlawgroup.com
ab@classlawgroup.com

Robert T. Eglet (*pro hac vice*)
Robert M. Adams (*pro hac vice*)
Erica D. Entsminger (*pro hac vice*)
Artemus W. Ham (*pro hac vice*)
**EGLET ADAMS**
400 South Seventh Street, Suite 400
Las Vegas, NV 89101
Telephone: (702) 450-5400
Facsimile: (702) 450-5451
eservice@egletlaw.com

Andrew N. Friedman (*pro hac vice*)
Geoffrey Graber (SBN 211547)
Eric Kafka (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
afriedman@cohenmilstein.com
ggraber@cohenmilstein.com
ekafka@cohenmilstein.com

*Counsel for Plaintiffs and Proposed Class*

# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| LLE ONE, LLC, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>FACEBOOK, INC.,<br><br>　　　　　Defendant. | Case No.: 4:16-cv-06232-JSW<br><br>**DECLARATION OF ERIC H. GIBBS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL**<br><br>Date:　November 8, 2019<br>Time:　9:00 am<br>Dept:　Courtroom 5, 2nd Floor<br>Judge:　Jeffrey S. White |

I, Eric H. Gibbs, declare as follows:

1. I am the founding and managing partner at the law firm of Gibbs Law Group LLP, one of the law firms that has represented the Plaintiffs in this action over the past three years. I make this declaration based on my personal knowledge and review of my firm's case file, and if called upon to do so, could and would testify competently thereto.

2. Gibbs Law Group is a national litigation firm dedicated to representing plaintiffs in class and collective actions in state and federal courts. The firm serves clients in consumer protection, securities, antitrust, whistleblower, personal injury, and employment cases. Our attorneys regularly prosecute multi-state consumer class actions and have some of the best track records in the country when it comes to successfully certifying consumer classes, developing practical damages methodologies, obtaining prompt relief for consumers victimized by unfair or deceptive practices, and working cooperatively with other firms, including in dozens of class and coordinated proceedings in which our attorneys have served as lead counsel, class counsel, or liaison counsel and achieved numerous record-breaking settlements. A true and correct copy of the Gibbs Law Group firm resume is attached as **Exhibit B**. The firm's lawyers have extensive experience in handling class actions involving claims brought under California consumer protection statutes and for common law fraud and breach of contract, and we have brought that experience to bear over the course of this litigation and in the context of negotiating and finalizing the pending settlement.

3. This proposed class action began in October 2016. The month prior, the *Wall Street Journal* reported that Facebook "vastly overestimated average viewing time for video ads on its platform for two years, according to people familiar with the situation." In response, Facebook publicly acknowledged the error and announced it had fixed it, but Facebook did not offer compensation to advertisers who paid for video ads when the error persisted.

4. Since inception of the litigation, Plaintiffs' counsel have vigorously prosecuted this case, with Facebook consistently denying the core allegations of the suit and

contesting our legal theories. Plaintiffs' counsel opposed 4 motions to dismiss, deposed 11 Facebook employees, engaged in document discovery that included nearly 500,000 pages of documents, and engaged in mediation efforts with the Defendant. Plaintiffs also obtained documents from 4 third parties through subpoenas, conducted 3 inspections of Facebook source code, and served 5 sets of interrogatories (to which Facebook responded and later supplemented on several occasions). The named plaintiffs responded to extensive, aggressive discovery efforts by Facebook, including 21 interrogatories and 47 document requests, and 15 subpoenas that Facebook served on Plaintiff LLE One, LLC's customers. The parties also engaged in dozens of meet-and-confer discussions—many in-person, as required by Magistrate Judge Spero's standing order (and many by phone and through correspondence). Through those efforts the parties minimized their disputes, but still presented 8 discovery disputes to Judge Spero for resolution.

5.   Plaintiffs also drafted a class certification brief, left unfiled only because the parties reached a settlement just days before the deadline for its filing. In the course of litigating the case and preparing our certification motion, we retained and disclosed eight consultants and experts under the terms of the parties' protective order, and actively worked with several to prepare reports in support of class certification. The experts worked on a range of subjects—from analyzing Facebook source code to helping to develop classwide damages models. In conjunction with that work, Plaintiffs estimated that were they to prevail on liability, they would be entitled to between $100 million and $200 million in damages and restitution on behalf of the class (not including any possible punitive damages).

6.   Toward the beginning of 2019, the parties mediated with the help of retired United States District Court Judge Vaughn R. Walker. Although the parties were not able to come to an agreement at the first all-day mediation (on April 10, 2019), we continued to engage in settlement discussions under Judge Walker's supervision over the course of the following months, and were ultimately able to agree to a settlement on all of the material terms of the relief to be provided to the class. The parties have since prepared the formal

settlement agreement (a true and correct copy of which is attached as **Exhibit A**) now before the Court, which is the only extant agreement between the parties. Finalizing the agreement required cooperative efforts over the course of the past several months to finalize its terms, develop a notice and funds-distribution plan, and prepare and finalize the agreement's exhibits and this motion. Per Facebook's records, the settlement class consists of approximately 1.35 million advertisers. Under the settlement agreement, Facebook has the right to withdraw from the settlement if the total video advertising revenue attributable to those who exclude themselves from the settlement equals or exceeds the percentage, set forth in the a confidential side letter between the parties, of total video advertising revenue spent during the Class Period.

7. The class period in the settlement agreement was shortened compared to the class period in the operative complaint, based on information received during discovery about the time period during which the metrics error at issue in this case persisted. The parties also limited the settlement class to U.S. advertisers only, eliminating any questions about how other countries' laws may or may not have honored a final judgment issued in this case. Tellingly, had this case not settled, Plaintiffs intended to propose a litigation class identical in scope to the settlement class now proposed.

8. To assist in transmitting settlement notice and payment to the class (and in administering the settlement generally), Plaintiffs retained the services of A.B. Data Group. Before entering into contract with A.B. Data, Plaintiffs first received bids from six experienced and qualified settlement administrators, each of which Plaintiffs' counsel has worked with successfully in other cases, and ultimately selected A.B. Data because in Plaintiffs' counsel's judgment, A.B. Data was offering the best practicable notice and distribution options tailored to the specific needs of this class at one of the lowest price points. Through the competitive bidding process, Plaintiffs' counsel were able to negotiate a plan with A.B. Data that distributes money directly to class members digitally without requiring a claims process, and were able to limit the cost of administering the settlement (including providing notice to the class) to approximately $350,000. As part of the

distribution plan developed by the parties and AB Data, some class members will be sent a digital MasterCard, which can be deposited into Google Wallet or Apple Pay, and can be used like credit cards at any physical or online retailer that accepts MasterCard. The only other instance in which my law firm has worked with A.B. Data during the past two years is in *In re: Vizio Inc. Consumer Privacy Litigation*, No. 8:16-ml-02693-JLS (C.D. Cal.), where the quality of its work further supported its selection here.

9. To date, my firm has not been compensated for its efforts in this litigation, though it has devoted approximately 3,416.6 hours to prosecute the case, entailing a lodestar of approximately $2,167,111.50 based on my firm's typical hourly rates, which have been repeatedly approved by courts across the country, including in this district. My firm has also advanced approximately $169,499.73 in litigation expenses (including expert costs) on behalf of the class. Based on my experience with similar settlements in past cases, I anticipate that that my firm will continue to incur expenses and that its lodestar will continue to increase through and following final approval of the settlement.

10. Based on my experience litigating class actions and complex cases, and based on my familiarity with the strengths and weaknesses of Plaintiffs' case, I believe the settlement to be fair, reasonable, adequate, and worthy of approval. Among other things, the settlement is on par with, if not superior to, settlements in the comparable digital advertising class action settlements that I am aware of.

11. Had the parties been unable to resolve this case through settlement, litigation would have likely been protracted and costly. Our firm has litigated other class action cases involving similar price inflation theories under California's Unfair Competition Law, and the cases are often very expensive and lengthy. In one example, brought against Intel, the case involved nearly a decade of hard-fought litigation and $2 million in litigation expenses.

12. Attached hereto as **Exhibit C is** a true and correct copy of Facebook's Terms, produced in this litigation at Bates number FBVM000007107.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED on October 4, 2019, in Oakland, California.

/s/ Eric Gibbs