Eric H. Gibbs (SBN 178658)
David Stein (SBN 257465)
Kyla J. Gibboney (SBN 301441)
Aaron Blumenthal (SBN 310605)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ehg@classlawgroup.com
ds@classlawgroup.com
kjg@classlawgroup.com
ab@classlawgroup.com

Robert T. Eglet (*pro hac vice*)
Robert M. Adams (*pro hac vice*)
Erica D. Entsminger (*pro hac vice*)
Artemus W. Ham (*pro hac vice*)
**EGLET ADAMS**
400 South Seventh Street, Suite 400
Las Vegas, NV 89101
Telephone: (702) 450-5400
Facsimile: (702) 450-5451
eservice@egletlaw.com

Andrew N. Friedman (*pro hac vice*)
Geoffrey Graber (SBN 211547)
Eric Kafka (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
afriedman@cohenmilstein.com
ggraber@cohenmilstein.com
ekafka@cohenmilstein.com

[Additional counsel on signature page]

*Counsel for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| LLE ONE, LLC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> FACEBOOK, INC., <br><br> Defendant. | Case No.: 4:16-cv-06232-JSW <br><br> **PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FOR AWARD OF ATTORNEYS' FEES, LITIGATION COSTS, AND SERVICE AWARDS** <br><br> Date:  March 20, 2020 <br> Time:  9:00 a.m. <br> Dept:  Courtroom 5, 2nd Floor <br> Judge:  Jeffrey S. White |

MEMORANDUM IN SUPPORT OF FINAL APPROVAL,
ATTORNEYS' FEES, COSTS, & SERVICE AWARDS
Case No. 4:16-cv-06232-JSW

1

## NOTICE OF MOTION AND MOTION

2    PLEASE TAKE NOTICE THAT on March 20, 2020, at 9:00 a.m., or as soon thereafter

3 as this matter may be heard, Plaintiffs will appear through counsel before the Honorable Jeffrey

4 S. White, Courtroom 5, 2nd Floor of the United States District Court for the Northern District

5 of California, located at 1301 Clay Street, Oakland, California 94612.

6    At that time, Plaintiffs will move the Court for an order certifying the settlement class,

7 granting final approval of the proposed class action settlement, and awarding attorneys' fees in

8 the amount of $12 million, reimbursement of $737,909.61 in litigation costs, and service awards

9 totaling $25,000 to the two named Plaintiffs.

10    This motion is based on the notice of motion and motion for final approval of class

11 settlement and for award of attorneys' fees, costs, and service awards, the following

12 memorandum of points and authorities, the attached declarations and exhibits, the arguments

13 of counsel, and any other matters in the record or that properly come before the Court.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ............................................................. i

INTRODUCTION ........................................................................................ 1

HISTORY OF THE LITIGATION ................................................................. 2

OVERVIEW OF THE SETTLEMENT .......................................................... 4

    I.      The proposed settlement class ........................................................ 4

    II.     Benefits to the settlement class ...................................................... 5

    III.    The scope of class members' release of claims ................................ 5

    IV.    The provision for attorneys' fees, cost reimbursements, and service awards ........ 5

THE COURT SHOULD GRANT FINAL SETTLEMENT APPROVAL ............................ 6

    I.      The proposed settlement merits approval. ........................................ 6

         A.    The class representatives and Class Counsel have adequately represented the class. .................................. 6

         B.    The parties negotiated the proposed settlement at arm's length. ............... 7

         C.    The quality of relief to the class weighs in favor of approval. ................ 9

             1.    The settlement provides substantial relief to class members. ............ 9

             2.    Continued litigation would entail substantial cost, risk, and delay. .......... 11

             3.    The settlement agreement provides for an effective distribution of proceeds to the class. ............... 13

             4.    The terms of the proposed award of attorneys' fees also support settlement approval. ................. 13

             5.    The parties have no other agreements pertaining to the settlement. .......... 14

         D.    The settlement treats all settlement class members equitably. ................ 14

    II.     Certification of the settlement class is appropriate. ............................. 15

         A.    The settlement class satisfies the requirements of Rule 23(a). ................ 15

              1.    The class members are too numerous to be joined in one action. ........ 15

ii

2. The action involves common questions of law or fact. .................. 16

3. Plaintiffs' claims are typical of the class. ........................................ 16

4. Plaintiffs and their counsel have, and will continue to, fairly and adequately protect the interests of the class. .......................... 17

B. The settlement class meets the requirements of Rule 23(b)(3). .................. 17

C. The settlement provided the best method of notice practicable. ................ 18

CLASS COUNSEL SEEK REASONABLE ATTORNEYS' FEES AND COSTS ................. 20

I. California law governs Counsel's fee application in this diversity action. ........... 20

II. California law authorizes Class Counsel's requested percentage-of-the-fund attorneys' fee. .......................................................................................................... 20

A. Class Counsel delivered a strong result for the class. ............................... 22

B. Class Counsel overcame significant risk to deliver a strong result for the class. ......................................................................................................... 23

C. Class Counsel undertook the litigation on a purely contingent basis. ........ 25

D. Class Counsel's skill litigating and settling the class's novel and difficult claims further supports the requested fee award. ......................... 26

III. Ninth Circuit fee jurisprudence also supports requested fee. .............................. 27

IV. A lodestar cross-check confirms the reasonableness of Counsel's requested fee. ............................................................................................................................ 28

A. Class Counsel reasonably devoted over eleven thousand hours to prosecuting this litigation over the past three years. ................................ 28

B. Class Counsel's rates fall within the range prevailing in the community and have been approved by courts across the country .......... 30

C. The 1.68 multiplier is comparable to or below multipliers typically approved by California courts. ............................................................. 31

V. Class Counsel's request for reimbursement of costs is reasonable. ..................... 32

CLASS REPRESENTATIVES SERVICE AWARDS ARE APPROPRIATE ...................... 33

CONCLUSION ................................................................................................................ 35

iii

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Acosta v. Trans Union, LLC,*
    243 F.R.D. 377 (C.D. Cal. 2007) ................................................................................ 24

*Altamirano v. Shaw Indus., Inc.,*
    No. 13-cv-00939, 2015 WL 4512372 (N.D. Cal. July 24, 2015) ............................ 14

*Amchem Prod., Inc. v. Windsor,*
    521 U.S. 591 (1997) ................................................................................................ 18

*Arroyo v. Int'l Paper Co.,*
    No. 17-cv-06211, 2019 WL 1508457 (N.D. Cal. Apr. 4, 2019) ............................ 15

*Beaver v. Tarsadia Hotels,*
    No. 11-cv-01842, 2017 WL 4310707 (S.D. Cal. Sept. 28, 2017) ................ 21, 27, 34

*Bickley v. Schneider Nat'l Carriers, Inc.,*
    No. 08-cv-05806, 2016 WL 6910261 (N.D. Cal. Oct. 13, 2016) ........................... 33

*Camacho v. Bridgeport Fin., Inc.,*
    523 F.3d 973 (9th Cir. 2008) ................................................................................. 30

*Campbell v. Facebook, Inc.,*
    315 F.R.D. 250 (N.D. Cal. 2016) ........................................................................... 24

*Cellphone Fee Termination Cases,*
    186 Cal. App. 4th 1380 (2010) .............................................................................. 33

*Chavez v. Netflix, Inc.,*
    162 Cal. App. 4th 43 (2008) .............................................................................. 21, 31

*City of Oakland v. Oakland Raiders,*
    203 Cal. App. 3d 78, (1988) ................................................................................. 31

*Destefano v. Zynga, Inc.,*
    No. 12-cv-04007, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............................ 32

*Dilts v. Penske Logistics, LLC,*
    No. 08-cv-0318, 2017 WL 2620664 (S.D. Cal. June 16, 2017) ............................ 21

*Evon v. Law Offices of Sidney Mickell,*
    688 F.3d 1015 (9th Cir. 2012) ............................................................................... 16

MEMORANDUM IN SUPPORT OF FINAL APPROVAL,
ATTORNEYS' FEES, COSTS, & SERVICE AWARDS
Case No. 4:16-cv-06232-JSW

*Feller v. Transamerica Life Ins. Co.*,
  No. 16-cv-1378, 2017 WL 6496803 (C.D. Cal. Dec. 11, 2017) ............................................ 18

*Fernandez v. Victoria Secret Stores, LLC*,
  No. 06-cv-4149, 2008 WL 8150856, *16 n.59 (C.D. Cal. July 21, 2008)............................... 21

*Fox Test Prep v. Facebook, Inc.*,
  588 F. App'x 733 (9th Cir. 2014) ..................................................................................9, 24

*Graham v. DaimlerChrysler Corp.*,
  34 Cal. 4th 553 (2004) ........................................................................................................ 25

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)........................................................................................17, 18

*Harris v. Vector Mktg. Corp.*,
  No. 08-cv-5198, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ............................................... 14

*Hesse v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010) ................................................................................................. 5

*Hopkins v. Stryker Sales Corp.*,
  No. 11-cv-02786, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) .........................................23, 26

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018) .................................................................................8, 12, 22

*In re Anthem, Inc. Data Breach Litig.*,
  No. 15-md-02617, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ...........................25, 30, 31

*In re Bluetooth Headsets Litig.*,
  654 F.3d 935 (9th Cir. 2011) ................................................................................................. 8

*In re Capacitors Antitrust Litig.*,
  No. 14-cv-03264, 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018)........................................ 32

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*,
  No. 17-md-02777, 2019 WL 536661 (N.D. Cal. Feb. 11, 2019) ........................................... 10

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*,
  No. 17-md-02777, 2019 WL 2554232 (N.D. Cal. May 3, 2019).......................................... 10

*In re Heritage Bond Litig.*,
  No. 02-ml-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ......................................22, 26

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ..........................................................................12, 15, 17, 18

MEMORANDUM IN SUPPORT OF FINAL APPROVAL,
ATTORNEYS' FEES, COSTS, & SERVICE AWARDS
Case No. 4:16-cv-06232-JSW

*In re Lenovo Adware Litig.*,
    No. 15-md-02624, 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) ................................... 27, 33

*In re Nexus 6P Prod. Liab. Litig.*,
    No. 17-cv-02185, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ........................................ 27

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008)................................................................. 22, 26, 27

*In re Online DVD-Rental*,
    779 F.3d 934 (9th Cir. 2015) .................................................................................... 25

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
    895 F.3d 597 (9th Cir. 2018) ..................................................................................7, 8

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
    15-md-02672, 2017 WL 1047834, n.5 (N.D. Cal. Mar. 17, 2017) ....................................... 28

*Just Film v. Buono*,
    847 F.3d 1108 (9th Cir. 2017)................................................................................. 16

*Ketchum v. Moses*,
    24 Cal. 4th 1122 (2001) .................................................................................... 25, 31

*Knight v. Red Door Salons, Inc.*,
    No. 08-cv-01520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ............................................ 27

*La Fleur v. Med. Mgmt. Int'l, Inc.*,
    Nos. 13-cv-00398, 13-cv-01960, 2014 WL 2967475 (C.D. Cal. June 25, 2014) .................... 33

*Laffitte v. Robert Half Internat. Inc.*,
    1 Cal. 5th 480 (2016) ...............................................................................passim

*Lealao v. Beneficial California, Inc.*,
    82 Cal. App. 4th 19 (2000) .................................................................... 21, 25, 32

*Letizia v. Facebook Inc.*,
    267 F. Supp. 3d 1235 (N.D. Cal. 2017).................................................................. 24

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ............................................................................... 11

*Mangold v. Cal. Pub. Util. Comm'n*,
    67 F.3d 1470 (9th Cir. 1995) ................................................................................ 20

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ............................................................................... 12

vi

*Messineo v. Ocwen Loan Servicing, LLC*,
  No. 15-cv-02076, 2017 WL 733219 (N.D. Cal. Feb. 24, 2017)..............................................10

*Mira v. Heartland Employment Serv., LLC*,
  No. 12-cv-04092, 2014 WL 1026282 (N.D. Cal. Mar. 13, 2014) ..........................................23

*Nitsch v. DreamWorks Animation SKG, Inc.*,
  No. 14-cv-04062, 2017 WL 2423161 (N.D. Cal. June 5, 2017) ............................................31

*PLCM Grp. v. Drexler*,
  22 Cal. 4th 1084 (2000).........................................................................................................30

*Rider v. Cnty. of San Diego*,
  11 Cal. App. 4th 1410 (1992) ...............................................................................................32

*Ridgeway v. Wal-Mart Stores Inc.*,
  269 F. Supp. 3d 975 (N.D. Cal. 2017) ..................................................................................20

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010)...............................................................................................16

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ..........................................................................................10, 33

*Salamanca v. Sprint / United Mgmt. Co.*,
  No. 15-cv-05084, 2018 WL 1989568 (N.D. Cal. Mar. 9, 2018)......................................20, 27

*Sali v. Corona Reg'l Med. Ctr.*,
  909 F.3d 996 (9th Cir. 2018) ................................................................................................17

*Serrano v. Priest*,
  20 Cal. 3d 25 (1977)..............................................................................................................32

*Singh v. Roadrunner Intermodal Servs., LLC*,
  No. 15-cv-01497, 2019 WL 316814 (E.D. Cal. Jan. 24, 2019).............................................20

*Spann v. J.C. Penney Corp.*,
  211 F. Supp. 3d 1244 (C.D. Cal. 2016) .................................................................................31

*Spears v. First Am. Eappraiseit*,
  No. 08-cv-00868, 2015 WL 1906126 (N.D. Cal. Apr. 27, 2015)..........................................25

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ................................................................................................33

*Taylor v. Shippers Transp. Express, Inc.*,
  No. 13-cv-02092, 2015 WL 12658458 (C.D. Cal. May 14, 2015) ........................................33

MEMORANDUM IN SUPPORT OF FINAL APPROVAL,
ATTORNEYS' FEES, COSTS, & SERVICE AWARDS
Case No. 4:16-cv-06232-JSW

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002)............................................................20, 22, 25, 27

*Wal-Mart Stores v. Dukes*,
    564 U.S. 338 (2011) ............................................................................... 16

*Walsh v. Kindred Healthcare*,
    No. 11-cv-00050, 2013 WL 6623224 (N.D. Cal. Dec. 16, 2013) ....................................20, 28

*Wannemacher v. Carrington Mortg.*,
    No. 12-cv-2016, 2014 WL 12586117 (C.D. Cal. Dec. 22, 2014)............................................ 8

*Wershba v. Apple Computer, Inc.*,
    91 Cal. App. 4th 224 (2001) ........................................................................ 31

*Willner v. Manpower Inc.*,
    No. 11-cv-02846, 2015 WL 3863625 (N.D. Cal. June 22, 2015) ........................................ 22

*Wolin v. Jaguar Land Rover N. Am.*,
    617 F.3d 1168 (9th Cir. 2010)........................................................................ 16

**Statutes**

28 U.S.C. § 1715 ................................................................................... 19

**Rules**

Fed. R. Civ. P. 23.................................................................................passim

MEMORANDUM IN SUPPORT OF FINAL APPROVAL,
ATTORNEYS' FEES, COSTS, & SERVICE AWARDS
Case No. 4:16-cv-06232-JSW

**INTRODUCTION**

The parties first presented this proposed settlement to the Court in October of last year. At that time, they asked the Court to grant preliminary settlement approval by finding that it would likely be able to (i) approve the settlement, and (ii) certify a settlement class. The Court made those findings and directed notice to the nationwide settlement class. With that notice having been delivered, the parties now formally request that the Court grant final approval of their settlement and Class Counsel request reimbursement of their litigation expenses, attorneys' fees, and service awards to the two class representatives.

The settlement will fully resolve litigation that stems from an error affecting two "metrics" that Facebook provided to its advertisers. The metrics helped advertisers evaluate how well their ads were faring on Facebook's platform. Because of the error, the metrics exaggerated the average-watch-times of video ads on Facebook during an 18-month period. Plaintiffs alleged that Facebook knew or should have known of the error long before it ultimately fixed it. And Plaintiffs alleged that because of the error, they and other advertisers spent more money advertising on Facebook than they otherwise would have. To address these concerns and end the litigation, Facebook will pay $40 million to create a cash fund for the benefit of the class. The payment constitutes as much as 40% of what Plaintiffs estimate they may have recovered had they prevailed at trial. The proceeds will be disseminated to class members automatically, without the need for a claims process, and will also cover the costs of settlement administration, class notice, service awards, and Plaintiffs' litigation costs and attorneys' fees. The parties believe the settlement provides significant value given the strength of the class's legal claims, and thus request that the Court approve the settlement.[1]

With the litigation coming to an end, Class Counsel also request to be compensated for their effort in achieving this result for the class. This case featured years of hard-fought litigation, including 4 rounds of motion-to-dismiss briefing, 8 discovery motions, 11 depositions, 24 third-

---

[1] Facebook acknowledges there was an error, but throughout the litigation has argued strenuously that the error was an innocent mistake that Facebook corrected shortly after discovering it. Facebook has also pointed out that some advertisers likely never viewed the erroneous metrics and that because Facebook does not set prices based on the impacted metrics, the error did not lead to overcharges, price inflation, or any damages.

MEMORANDUM IN SUPPORT OF FINAL APPROVAL,
ATTORNEYS' FEES, COSTS, & SERVICE AWARDS
Case No. 4:16-cv-06232-JSW

party subpoenas, and the review of over 500,000 pages of documents. As a result, Class Counsel have devoted over 11,700 hours to prosecuting the case, while advancing approximately $750,000 in out-of-pocket litigation costs. Class Counsel have undertaken these efforts and incurred these costs on a purely contingent basis. Consistent with California law (which governs Plaintiffs' claims and thus governs the fee and costs awards too), Class Counsel request reimbursement of their out-of-pocket expenses as well as an award of attorneys' fees in the amount of $12 million. The requested fee is consistent with California fee jurisprudence in that it would provide a lodestar multiplier of just 1.68 and constitutes less than the one-third-of-the-fund most commonly awarded under California law. Given the protracted, risky, and hotly contested nature of the litigation, and the strong result delivered to the class, Class Counsel believe the requested fee fairly compensates them for their efforts and should therefore be approved. In support of their application, Class Counsel provide a joint declaration detailing the work Class Counsel performed over the course of the litigation, supplemental declarations from the individual firms supporting their rates and cost reimbursement requests, and a declaration from Richard Pearl, an expert in California attorneys' fee jurisprudence.[2]

## HISTORY OF THE LITIGATION

Plaintiffs allege that from February 2015 to September 2016, Facebook provided inflated metrics to its video advertisers exaggerating how long users were watching ads. (ECF No. 165, ¶¶ 23, 27-29.) Plaintiffs contend that the error inflated the average-watch-times by several orders of magnitude. (*Id.*, ¶¶ 4, 35, 66.)

Plaintiffs allege that advertisers used these average-watch-time metrics to evaluate how their ads fared on Facebook—including in comparison with video ads on other platforms, such as YouTube. (*Id.*, ¶¶ 18-21, 36.) Plaintiffs accordingly believed the metrics impacted billing, since (all else being equal) advertisers pay more for video ads that are being watched longer. (*Id.*, ¶ 40.) Given these facts, Plaintiffs asserted that Facebook violated California's Unfair Competition Law, breached implied contractual duties, and committed common law fraud. (*Id.*, ¶¶ 95-102, 103-12, 113-18.)

---

[2] The Court allotted a maximum of 50 total pages for this brief. (*See* ECF No. 200 at 6.)

Since inception, this case has been fiercely contested. Facebook consistently denied most of Plaintiffs' allegations and challenged each of Plaintiffs' legal theories. Facebook also emphasized that because the metrics error did not impact its billing algorithm, it did not affect how much advertisers spent on ads, and so Plaintiffs were entitled to no damages.

During the course of the litigation, Facebook filed four motions to dismiss. (ECF Nos. 46, 79, 110, 160.) After the first, the Court sustained Plaintiffs' contract claim, dismissed the unjust enrichment claim, and dismissed the UCL claim in part with leave to replead it. (ECF No. 65.) After Plaintiffs repleaded the UCL claim, Facebook moved to dismiss the claim twice more; the Court granted Facebook's first motion with leave to amend and then denied Facebook's second motion. (ECF Nos. 94, 134.) Facebook also moved to dismiss Plaintiffs' later-added fraud claim, and the Court denied that motion as well. (ECF No. 181.) So, in the end, three of the four claims Plaintiffs brought survived Facebook's motions to dismiss.

To prepare class members' claims for certification and trial, Plaintiffs' counsel reviewed over 500,000 pages of Facebook documents; deposed 11 Facebook employees; and hired a team of consultants and experts. (ECF No. 198-1, ¶¶ 4-5.) Plaintiffs also subpoenaed documents from nine third parties, inspected Facebook's source code on three occasions, and served five sets of interrogatories. (*Id.*, ¶ 4.) Facebook, for its part, served four sets of interrogatories and three sets of requests for production of documents, obtained and reviewed Plaintiffs' documents, and issued subpoenas to 15 of Plaintiff LLE One, LLC's customers, which Plaintiffs moved to quash. (ECF No. 176.) Throughout the discovery process, the parties exchanged dozens of meet-and-confer letters and negotiated discovery disputes both by telephone and in person; while they were able to resolve many of their disputes, the parties still briefed eight discovery motions. (ECF Nos. 96, 105, 117, 126, 127, 128, 176, 180.)

As the case progressed, Class Counsel prepared a motion for class certification, which Plaintiffs were on the verge of filing when the case resolved. Class Counsel had also worked with Plaintiffs' experts to prepare reports in support of class certification. While preparing for class certification, however, the parties agreed to mediate with the help of retired United States District Court Judge Vaughn R. Walker. (ECF No. 198-1, ¶ 6.) After a full-day mediation, they

continued to negotiate under Judge Walker's supervision for two months, and ultimately reached agreement two days before Plaintiffs' class certification motion was to be filed. (*Id.*, ¶ 6.)

The parties then prepared a formal settlement agreement, which involved negotiations over the course of several months.  (*Id.*, ¶ 6.) The parties retained the services of an experienced settlement administrator, A.B. Data Group, after soliciting competing bids from six potential administrators. (*Id.*, ¶ 8.) With the help of A.B. Data Group, the parties developed and implemented a notice and funds-distribution plan. (*Id.*, ¶ 8.)

In October 2019, Plaintiffs filed a motion requesting that the Court preliminarily approve the settlement and direct notice of the settlement to the class. (ECF No. 198.) The Court granted the motion, concluding that notice was warranted because the Court would likely be able to grant final approval and certify a settlement class once the notice period had ended. (ECF No. 200.) Notice to the class has since been disseminated.[3]

## OVERVIEW OF THE SETTLEMENT

### I.    The proposed settlement class

The settlement contemplates certification of the following settlement class:

> *All U.S. persons or entities who, from February 12, 2015, to September 23, 2016, had an account with Facebook, Inc., and who paid for placement of video advertisements on a Facebook-owned platform.*[4]

(ECF No. 198-2, Ex. A, Sec. II.)

---

[3] Consistent with the settlement agreement, no later than 14 days before the final approval hearing, A.B. Data will file an affidavit attesting that notice was disseminated in accordance with the settlement. (ECF No. 198-2, Sec. VI.11.)

[4] As detailed in the settlement agreement the following persons and entities are excluded from the Class: Facebook; any entity in which Facebook has a controlling interest; Facebook's officers, directors, legal representatives, successors, subsidiaries, and assigns; and any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons.

## II.     Benefits to the settlement class

As noted, the proposed settlement delivers a fund of $40,000,000. (*Id.*, Sec. II.23.) To distribute that fund to the class, the parties have devised a plan of allocation that will pay class members on a pro rata basis, directly proportional to the amount they spent on video advertising during the class period. (*Id.*, Sec. V.3(a).) Class members will receive payments automatically—there will be no need to submit claim forms. (*Id.*, Sec. V.3(b).) The fund will also cover all settlement-administration and class-notice costs, attorneys' fees and litigation-cost reimbursements, and Plaintiffs' service awards. (*Id.*, Sec. V.6.) The settlement fund is non-reversionary, meaning Facebook will not be entitled to retain any part of the settlement fund for any reason. (*Id.*, Sec. V.5.)

Since preliminary approval, the settlement administrator and parties established the settlement website and disseminated class notice. (ECF Nos. 200 & 202.) The deadline for class members to opt out or object to the settlement is February 12, 2020. (ECF No. 202.) As a result, Plaintiffs will wait for their reply brief (due on March 6, 2020), to address the class's reaction to the settlement.

## III.     The scope of class members' release of claims

Plaintiffs and the settlement class will release claims against Facebook and its officers, directors, legal representatives, successors, subsidiaries, and assigns. (ECF No. 198-2, Sec. XIII.1.) The release in the settlement agreement covers only those claims "that were alleged or could have been alleged based on the facts alleged in the Action or that arise out of or relate to facts alleged in the Action." *See generally Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (release is appropriate if its scope is no broader than what could have been pled based on the facts alleged during the litigation). Facebook will likewise release Plaintiffs and their attorneys from any claims related to this litigation or settlement. (ECF No. 198-2, Sec. XIII.3.)

## IV.     The provision for attorneys' fees, cost reimbursements, and service awards

Class Counsel have litigated the case for over three years and have advanced hundreds of thousands of dollars in litigation expenses, but have yet to be compensated for their efforts. As detailed below, Class Counsel request reimbursement of their $737,909.61 in litigation

5

expenses, an award of $12 million to pay their attorneys' fees, and service awards totaling $25,000 to the two class representatives. These amounts were included in the notice disseminated to the class. (ECF 198-2, Sec. IX.1 & Exs. A-1 & A-2.)

## THE COURT SHOULD GRANT FINAL SETTLEMENT APPROVAL

In December 2018, Rule 23(e) was updated to formalize the standard for approving class action settlements. At the initial or "preliminary" stage, courts are asked to decide whether they "will likely be able" to approve the settlement and certify the settlement class. Fed. R. Civ. P. 23(e)(1)(B). If so, the settlement notice is provided to the class and the final approval stage follows several months later.

Here, the Court granted Plaintiffs' October 2019 motion to disseminate settlement notice to the class, concluding that the Court would likely be able to grant final approval and certify the settlement class. (ECF No. 200.) With the notice now disseminated, the parties request that the Court certify the proposed settlement class and grant final approval of their settlement.

### I.      The proposed settlement merits approval.

In moving for preliminary approval, Plaintiffs analyzed each factor under the recently amended Rule 23(e)(2) to show the settlement merits approval. The Court agreed, concluding that "the Court will likely be able to approve the proposed settlement as fair, reasonable, and adequate under Rule 23(e)(2)." (ECF No. 200.) The applicable factors continue to weigh in favor of final approval, as addressed below.

### A.      The class representatives and Class Counsel have adequately represented the class.

Under Rule 23(e)(2)(A), the first factor to be considered is the adequacy of representation. This analysis includes "the nature and amount of discovery" undertaken in the litigation. Fed. R. Civ. P. 23(e)(2)(A), advisory committee's notes.

To begin with, both class representatives diligently represented the class. They actively participated in the litigation over a period of years, produced documents, responded to 68 written discovery requests, and conducted multiple rounds of ESI searches. (Eglet Decl., ¶ 37; Friedman Decl., ¶¶ 17-18.) Throughout, they remained in contact with Plaintiffs' counsel,

stayed apprised of the litigation, and have acted with the interests of the class in mind. (Eglet Decl., ¶ 37; Friedman Decl., ¶ 19.)

Class Counsel also adequately represented the class. They vigorously prosecuted this case, briefing four motions to dismiss, eight discovery motions, and preparing a motion to certify a litigation class. (ECF No. 198-1, ¶¶ 4-5.) They engaged in protracted discovery, conducting 11 depositions, and reviewing over 500,000 pages of documents. (*Id.*, ¶ 4.) They also engaged the services of eight experts and consultants who assisted in everything from source code inspections to developing damages methodologies. (*Id.*, ¶ 5.) These efforts have led counsel to advance nearly $750,000 in litigation expenses on behalf of the class, with no assurance that those expenses would be reimbursed. (Gibbs Decl., ¶ 10; Eglet Decl., ¶ 22; Friedman Decl., ¶ 13.) Finally, Class Counsel's adequacy stems from their experience successfully litigating many prior class actions involving California consumer protection, fraud, and contract claims, successfully resolving many of those in this district. (Gibbs Decl., ¶ 9 & Ex. A; Eglet Decl., ¶¶ 3-12; Friedman Decl., ¶ 12 & Ex. 1.) The class received the benefit of adequate representation.

### B.    The parties negotiated the proposed settlement at arm's length.

The second Rule 23(e)(2) factor asks the Court to confirm the settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). As with the preceding factor, this can be "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) and (B), advisory committee's notes. Where, like here, the settlement was negotiated before certification of a litigation class, the district court should "undertake an additional search for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 610-11 (9th Cir. 2018) (quoting *In re Bluetooth Headsets Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011)).

There are multiple indicia here of the arm's length nature of the negotiations. First, the parties did not begin negotiations until after the case had already been pending for well over

7

MEMORANDUM IN SUPPORT OF FINAL APPROVAL,
ATTORNEYS' FEES, COSTS, & SERVICE AWARDS
Case No. 4:16-cv-06232-JSW

two years. (ECF No. 198-1, ¶¶ 3, 6.) By the time they reached a class settlement agreement, the parties had engaged in significant pretrial motion practice, conducted extensive discovery, worked with consultants and experts, and Plaintiffs had prepared their motion to certify a litigation class. (*Id.*); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 320 (N.D. Cal. 2018) (finding no signs of collusion where "factual investigation and legal analysis" over "three years of this litigation were substantial"; "Plaintiffs filed four complaints" and the parties litigated multiple discovery motions); *see also Wannemacher v. Carrington Mortg.*, No. 12-cv-2016, 2014 WL 12586117, at *8 (C.D. Cal. Dec. 22, 2014) (finding no signs of collusion where "significant … discovery [was] conducted"; "plaintiffs had already drafted a class certification brief"; and before "exploring settlement, the parties litigated the case for a year"). In other words, when the parties entered into settlement discussions, they well understood the strengths and weaknesses of their respective positions.

Second, the parties resolved the litigation with the assistance of retired U.S. District Court Judge, Vaughn R. Walker. (ECF No. 198-1, ¶ 6.) "[T]he involvement of a neutral or court-affiliated mediator or facilitator in [the parties'] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e)(2)(B) advisory committee's notes; *accord In re Bluetooth*, 654 F.3d at 948 (participation of mediator, while not dispositive, "weigh[s] in favor of a finding of non-collusiveness"). The parties conducted a full day of mediation under Judge Walker's supervision in April 2019; even then, they were not able to reach agreement on the material terms of the settlement until months later, with the continued assistance of Judge Walker. (ECF No. 198-1, ¶ 6.)

Third and finally, the requested attorney's fees are proportional to class member compensation, there is no "clear sailing" arrangement whereby Facebook has agreed not to contest the fee motion, and no unawarded money will revert to Facebook. *See In re Volkswagen*, 895 F.3d at 611 n.19. In sum, to the extent heightened scrutiny is applied to this settlement, the Court can be confident of the arm's length nature of the process.

1

**C.      The quality of relief to the class weighs in favor of approval.**

2      The third factor to be considered is whether "the relief provided for the class is

3 adequate, taking in to account: (i) the costs, risks, and delay of trial and appeal; (ii) the

4 effectiveness of any proposed method of distributing relief to the class, including the method of

5 processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

6 including timing of payment; and (iv) any agreement required to be identified under Rule

7 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central

8 concern." Fed. R. Civ. P. 23(e)(2)(C), advisory committee's notes.

9

**1.      The settlement provides substantial relief to class members.**

10      The $40 million settlement fund, which will be distributed automatically to class

11 members, compares favorably to recoveries in other recent class actions concerning online

12 advertising. *See, e.g.*, *In re Google Adwords Litig.*, No. 5:08-cv-03369, ECF No. 384 (N.D. Cal.

13 Aug. 7, 2017) (granting final approval of a $22.5 million claims-made settlement in suit alleging

14 fraud relating to Google advertising); *In re Yahoo! Litig.*, No. 2:06-cv-02737, ECF No. 226 (C.D.

15 Cal. Jan. 15, 2010) (in class action alleging online click fraud, court approved settlement

16 providing injunctive relief, which also allowed advertisers who went out of business to claim

17 $20); *see also Fox Test Prep v. Facebook, Inc.*, 588 F. App'x 733, 734 (9th Cir. 2014) (affirming

18 order denying certification of a litigation class in suit involving alleged fraud related to

19 advertising on Facebook).

20      The fund also represents a sizable percentage of what Plaintiffs estimate they may have

21 recovered had they prevailed at trial. During the same period that the parties were working with

22 Judge Walker to settle this case, Plaintiffs were also working with their experts to devise a

23 methodology for calculating classwide damages. (*See* ECF No. 198-1, ¶ 5.) Because the case

24 settled when it did, Plaintiffs did not ultimately ask their experts to complete the time-

25 consuming and costly process of calculating classwide damages. But working with their experts

26 Plaintiffs did devise a reasonable prediction of what they might be able to recover at trial (taking

27 into account a range of information obtained in discovery, including the ratio of video to non-

28 video advertising on Facebook, Facebook's video and non-video advertising revenues, and a

pricing study conducted by Facebook toward the beginning of the class period). In doing so, Plaintiffs estimated that—were they to prevail at trial and on any subsequent appeal—their recovery would likely be between $100-200 million. (*See id.*) Of course, that estimate is subject to substantial downward pressure due to the continued litigation risks remaining: Facebook could prevail at class certification, summary judgment, trial, or on appeal, leaving the class with no recovery at all.

Having recovered as much as 40% through settlement as they may have recovered after a trial, Plaintiffs have no reservation in recommending that the Court approve this settlement on behalf of the class. In other class cases, courts have recognized that a recovery of 20-40% of what could be potentially recovered at trial easily justifies compromising the class's claims through settlement rather than bearing additional risk and delay through continued litigation. *See, e.g.*, *Messineo v. Ocwen Loan Servicing, LLC*, No. 15-cv-02076, 2017 WL 733219, at *5 (N.D. Cal. Feb. 24, 2017) ("it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial," and noting that courts in this district have approved settlements valued at 14% and 13.6% of the maximum recovery (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (upholding class settlement valued at 10%-30% of total damages); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 17-md-02777, 2019 WL 536661, at *9 (N.D. Cal. Feb. 11, 2019) (granting preliminary approval of settlement that, with 100% claims rate, would deliver 33% of primary damages estimate); *see also In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 17-md-02777, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finally approving same settlement).

In other words, the negotiated relief readily satisfies the Rule 23 standard of fair, reasonable, and adequate. While there can always be room for improvement, this settlement returns tens of millions of dollars to the class in a case that was fiercely contested, where Plaintiffs' novel and largely untested theories presented substantial litigation risk, and where even upon a showing of liability there would have been questions about Plaintiffs' ability to

demonstrate damages. Under these circumstances, Plaintiffs and Class Counsel wholeheartedly endorse the negotiated resolution of this action.

### 2. Continued litigation would entail substantial cost, risk, and delay.

Almost all class actions involve high levels of cost, risk, and lengthy duration, which supports the Ninth Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). Here, had the parties not settled, the litigation would have remained risky, protracted, and costly.

With respect to the remaining cost and time needed to prosecute the case, though the parties had already completed much discovery, a number of additional depositions would have been forthcoming (including percipient witness depositions, depositions of the named Plaintiffs, and depositions of both parties' experts). The parties would also have briefed class certification, related *Daubert* issues, and a likely Rule 23(f) appeal after the Court's certification ruling, followed by summary judgment, a second round of *Daubert* motions, motions in limine, a possible decertification motion, and then trial. Each stage would have added risk and necessarily imposed delay before relief could be provided to the class.

As to the merits of the case, Plaintiffs believe they had a strong case on liability. They believe they could have demonstrated that Facebook's metrics error exaggerated video advertisement performance and that Facebook violated its legal obligations by publishing the overstated metrics and then failing to promptly remove them after discovering the error. But Plaintiffs' counsel also recognize, based on their experience in similar class actions and based on their familiarity with the record, that the case faced real challenges at class certification, summary judgment, and trial, where the case could either fail on liability, or at least be whittled down. Facebook was certain to argue that while there had been a metrics error, the affected metrics were just two of many metrics that Facebook provided, and were arguably less important than others that Facebook provided. Facebook would also likely point to data that it believes shows many advertisers never viewed the erroneous metrics and so could not have

MEMORANDUM IN SUPPORT OF FINAL APPROVAL,
ATTORNEYS' FEES, COSTS, & SERVICE AWARDS
Case No. 4:16-cv-06232-JSW

relied on them to their detriment. If the Court agreed, it could have denied class certification on that basis. *See, e.g.*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) ("[C]ommon questions of fact do not predominate where an individualized case must be made for each member showing reliance"); *but see In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 560 (9th Cir. 2019) (en banc) (individualized issues regarding reliance not relevant when certifying a settlement class (citing *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

In addition, Facebook would likely also point to the fact that while the Court sustained several of Plaintiffs' claims on the pleadings, it did so while leaving open the possibility of reevaluating them later in the case. There was no guarantee Plaintiffs would survive summary judgment, let alone trial. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 319, 321-22 (granting final approval of settlement fund representing 14.5%- 36% of damages and overruling objections because "none … adequately take[s] into account the risks and delays involved in proceeding to summary judgment or trial").

Plaintiffs believe they had reasonably strong prospects of overcoming Facebook's defenses, but there can be little doubt those defenses presented the risk that the class would recover nothing if the case persisted, or at least far less than Plaintiffs were seeking. In addition, even had Plaintiffs ultimately prevailed on liability, Facebook would likely argue that the erroneous metrics were not part of Facebook's billing mechanism and so even if Facebook acted unlawfully, the actions did not affect advertising prices. While Plaintiffs had and were continuing to develop evidence to combat this argument, calculating damages in this type of case is very complicated and expensive, and even once calculated the measure can be subject to attack.

Finally, even if Plaintiffs had prevailed on each of these issues through trial, an appeal would likely follow, taking another two-plus years to resolve. At best, a class recovery would come by perhaps 2022. So, while there were reasonable prospects for a greater recovery following a trial and appeals, that victory would have entailed substantial risk, cost, and delay. These considerations all favor settlement.

---

12

1

2

### 3.   The settlement agreement provides for an effective distribution of proceeds to the class.

The settlement contains an effective distribution process. Class members will receive payments automatically, without the need to gather information or documents or file claims. In other words, no affirmative steps on their part are required to receive their payments. Each class member will automatically receive a payment equal to the portion of the settlement fund that is proportional to the amount the class member spent on Facebook video advertising during the class period. (ECF No. 198-2, Sec. V.3.)

The three modes of payment are similarly designed to ease the transfer of funds from Facebook to the class, and in ways that promote the class's use of those funds. First, class members who spent over $500,000 during the class period, and who will thus be owed thousands of dollars, will receive checks by mail. (*Id.*, Sec. V.3.b.iii.) Second, class members who spent at an intermediate level (less than $500,000 but at least $15) will be emailed digital MasterCards. (*Id.*, Sec. V.3.b.ii.) These MasterCards can be deposited or used like credit cards at any retailer that accepts MasterCard. (ECF No. 198-1, ¶ 8.) They impose no fees on the user and will not expire for at least five years. (*Id.*) Third, class members entitled to relatively small recoveries—because they spent very small amounts on Facebook during the class period (under $15 in total)—will receive credits to their Facebook accounts (if their accounts are active) and otherwise will receive digital MasterCards. (*Id.*, Ex. A, Sec. V.3.b.i.) Finally, each payment method constitutes merely a default; class members can opt for a different payment method through a simple online process on the settlement website. (*Id.*, Sec. V.3.b.)

### 4.   The terms of the proposed award of attorneys' fees also support settlement approval.

As detailed below, Plaintiffs are seeking compensation for their counsel from the settlement fund, proportional to the class's recovery. Plaintiffs' motion for preliminary approval and the class notice gave notice of the requested fee, (*see id.*, Exs. A-1 & A-2), and Plaintiffs will make this motion and its supporting materials available to class members on the settlement

13

website once they are filed. Nothing about the proposed award of attorney's fees should detract from the fairness of the settlement.

### 5.   The parties have no other agreements pertaining to the settlement.

The Court also must evaluate any agreement made in connection with the proposed settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). Here, the settlement agreement before the Court is the only extant agreement. (ECF No. 198-1, ¶ 6.)

### D.   The settlement treats all settlement class members equitably.

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), advisory committee's notes.

Here, the settlement treats all class members the same, paying class members directly proportional to the amount they spent during the class period—and thus directly proportional to any damages they might have been able to recover at trial. *See, e.g., Altamirano v. Shaw Indus., Inc.*, No. 13-cv-00939, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) (finding no preferential treatment because the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct").

Though counsel is requesting additional payment for the class representatives in the form of service awards, those extra payments are to recognize the work they performed and the risks they incurred on behalf of the class. "It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable service payments, also known as incentive awards. In fact, the Ninth Circuit recently noted that service payments to named plaintiffs have become 'fairly typical' in class actions." *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2012 WL 381202, at *6 (N.D. Cal. Feb. 6, 2012). As is detailed below, the awards are commensurate with the Plaintiffs' service in this case. (*See also* Eglet Decl., ¶¶ 32-41; Friedman Decl., ¶¶ 14-22.)

1                               *        *        *

2          For all these reasons, the proposed settlement merits approval.

3     **II.    Certification of the settlement class is appropriate.**

4          In its order preliminarily approving the settlement class, the Court concluded that the

5     proposed class met the requirements of Rule 23(a) and (b)(3), and that the proposed forms of

6     notice to the class were the "best notice that is practicable under the circumstances." (ECF No.

7     200 at 2.) This remains true. Fed. R. Civ. P. 23(c)(2)(B).

8          The criteria for class certification are applied differently in litigation classes and

9     settlement classes. *In re Hyundai & Kia*, 926 F.3d at 556. For example, when deciding to certify a

10    settlement class, "manageability is not a concern" since the settlement will eliminate the need

11    for a trial. *Id.* at 557. Other aspects of certification, such as those "aspects of Rule 23(a) and (b)

12    that are important to certifying a settlement class are those designed to protect absent [class

13    members] by blocking unwarranted or overbroad class definitions" require "heightened

14    attention by the district court." *Id.* at 558 (quotation omitted). The focus is "whether a proposed

15    class has sufficient unity so that absent members can fairly be bound by decisions of class

16    representatives." *Id.*

17         Here, the settlement class is composed only of those who bought video advertising on a

18    Facebook platform during a specified period of time, namely, while certain video advertising

19    metrics were inflated. The settlement class definition is also narrower than the class definition

20    alleged in the operative complaint. There is thus no risk that this settlement expands the scope

21    of the class in an unwarranted, overbroad fashion. *See Hyundai & Kia*, 926 F.3d at 558. And as

22    explained below, the settlement class also satisfies the requirements of Rule 23(a) and (b)(3).

23         **A.    The settlement class satisfies the requirements of Rule 23(a).**

24              **1.    The class members are too numerous to be joined in one action.**

25         The first Rule 23(a) requirement is that the proposed class be so numerous that joinder of

26    all members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). Classes of more than 40 members are

27    presumed to meet this requirement. *Arroyo v. Int'l Paper Co.*, No. 17-cv-06211, 2019 WL

28    1508457, at *2 (N.D. Cal. Apr. 4, 2019). Per Facebook's records, the settlement class consists of

1  approximately 1.354 million advertisers—far more than 40. (ECF No. 198-1, ¶ 6.) Joinder

2  would be impracticable, and the numerosity requirement has thus been met.

### 2.   The action involves common questions of law or fact.

4  Under Rule 23(a)(2), there must be "questions of law or fact common to the class,"

5  meaning the class's claims "must depend upon a common contention" such that

6  "determination of [their] truth or falsity will resolve an issue that is central to the validity of

7  each one of the claims in one stroke." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 350 (2011). This

8  case poses several overarching questions common to all class members, including (i) whether

9  Facebook was obligated to provide reasonably accurate metrics; (ii) whether Facebook's

10  average watch time metrics were erroneous; (iii) whether that error had the effect of inflating

11  the metrics; and (iv) whether Facebook resolved the error promptly after discovering it. *See*

12  *Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1172 (9th Cir. 2010). For settlement

13  purposes, the commonality requirement is thus satisfied; the "circumstances of each particular

14  class member … retain a common core of factual or legal issues with the rest of the class." *Evon*

15  *v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012).

### 3.   Plaintiffs' claims are typical of the class.

17  Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be]

18  typical of the claims or defenses of the class." "[T]he typicality requirement is permissive and

19  requires only that the representative's claims are reasonably co-extensive with those of absent

20  class members; they need not be substantially identical." *Rodriguez v. Hayes*, 591 F.3d 1105,

21  1124 (9th Cir. 2010). Plaintiffs have alleged the same claims that would be pursued by anyone

22  else who bought video advertising from Facebook during the period at issue: that Facebook

23  published metrics that were erroneous and inflated, and that Facebook failed to correct the error

24  promptly after discovering it. This common course of conduct gives rise to the same reasonably

25  co-extensive claims for all class members. *See Just Film v. Buono*, 847 F.3d 1108, 1117 (9th Cir.

26  2017).

27

28

MEMORANDUM IN SUPPORT OF FINAL APPROVAL,
ATTORNEYS' FEES, COSTS, & SERVICE AWARDS
Case No. 4:16-cv-06232-JSW

1

2

### 4.   Plaintiffs and their counsel have, and will continue to, fairly and adequately protect the interests of the class.

3      The final Rule 23(a) requirement demands that "the representative parties will fairly and

4 adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This adequacy

5 requirement involves two questions: (i) do the named plaintiffs and their counsel have any

6 conflicts of interest with other class members, and (ii) will the named plaintiffs and their

7 counsel prosecute the action vigorously on behalf of the class? *Sali v. Corona Reg'l Med. Ctr.*, 909

8 F.3d 996, 1007 (9th Cir. 2018). Here, neither Plaintiffs nor their counsel have any conflicts of

9 interest with absent class members. To the contrary, their interests are aligned. Plaintiffs bought

10 video advertising from Facebook just like every class member and share those class members'

11 interest in recouping some of the allegedly inflated price paid. And, as discussed above,

12 Plaintiffs and their counsel have demonstrated a commitment to the class over the span of

13 several years. Class Counsel spent over 11,700 hours prosecuting the case and incurred nearly

14 $750,000 in litigation expenses. (*See* Gibbs Decl., ¶ 10; Eglet Decl., ¶ 22; Friedman Decl., ¶ 13.)

15 And Class Counsel are well-versed in complex class litigation; they brought their experience to

16 bear here for the benefit of the class. (Gibbs Decl., ¶ 9 & Ex. A; Eglet Decl., ¶¶ 3-12; Friedman

17 Decl., ¶ 12 & Ex. 1.)

18      **B.   The settlement class meets the requirements of Rule 23(b)(3).**

19      "In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class

20 certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2)

21 or (3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Here, the settlement class

22 is maintainable under Rule 23(b)(3), as common questions predominate over any questions

23 affecting only individual members and class resolution is superior to other available methods of

24 adjudication. *Id.*

25      Whether "a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by

26 whether certification is for litigation or settlement." *In re Hyundai & Kia*, 926 F.3d at 558.

27 Particularly in the settlement context, "predominance is 'readily met' in cases alleging

28 consumer fraud." *Id.* at 559 (quoting *Amchem Prod. v. Windsor*, 521 U.S. 591, 625 (1997)). This is

---

17

especially true where, as here, California law could be applied uniformly to all class members because the contract at issue contains a choice-of-law provision designating California law. (ECF No. 198-1, Ex. C, Facebook Terms, FBVM00007107, Sec. 16.1).

As alleged, class members' claims would depend on issues including whether Facebook published inaccurate metrics and whether Facebook knew of the inaccuracy. These types of allegations—turning as they do on whether a company provided accurate information—apply to the class as a whole, satisfying the predominance requirement. *In re Hyundai & Kia*, 926 F.3d at 559 (affirming finding of common questions that included whether certain "statements were in fact inaccurate" and "whether the [defendants] knew that their . . . statements were false and misleading"). The same is true for Plaintiffs' contract-based claim. *See Feller v. Transamerica Life Ins. Co.*, No. 16-cv-1378, 2017 WL 6496803, at *11 (C.D. Cal. Dec. 11, 2017) ("courts have long found that 'claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action" (collecting cases)).

Similarly, it is superior to resolve all settlement class members' claims through a single class action as opposed to individual lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. Finally, in the settlement context, class proceedings would not present the sort of intractable management problems that sometimes override the collective benefits of class actions, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *accord In re Hyundai & Kia*, 926 F.3d at 556-57 ("manageability is not a concern in certifying a settlement class").

### C.   The settlement provided the best method of notice practicable.

Where the settlement class is certified under Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23 was recently amended "to recognize contemporary methods of giving notice to class members," doing away with the interpretation that the Rule required notice "by first class mail." Fed. R.

Civ. P. 23(c)(2), 2018 advisory committee's notes. The rule recognizes that "electronic methods of notice, for example email, [will sometimes be] the most promising" method for delivery of notice—depending on the makeup of the class. *Id.*

Here, based in part on the recommendation of the settlement administrator, the parties agreed to provide individual notice to class members directly by email, to the email addresses on file with Facebook. (*See* ECF No. 198-2, Sec. VI.5); *see also* Fed. R. Civ. P. 23(c)(2), 2018 advisory committee's notes (recommending that the Court and counsel "consider the use of class notice experts or professional claims administrators" in devising a notice plan). Email was an ideal method of notice since Facebook maintains email addresses for more than 1.3 million class members, and uses email to communicate with its advertisers in the ordinary course of its business. To supplement that form of notice, the settlement administrator mailed postcards to approximately 33,000 class members for whom Facebook has a mailing address, and conducted an electronic media notice campaign. The parties and settlement administrator are confident that the notice plan ensures the vast majority of class members have the opportunity to learn of the settlement.[5]

In addition, the notices comply with Rule 23(c)(2)(B) in that they "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members. (*See* ECF No. 198-2, Exs. A-1 & A-2.) To that end, the notices are consistent with the samples provided by the Federal Judiciary Center.[6]

Finally, notice was also provided to the U.S. Attorney General and appropriate regulatory officials, as required by the Class Action Fairness Act, 28 U.S.C. § 1715. (ECF No.

---

[5] As noted above, A.B. Data will file an affidavit attesting to the notice provided no later than 14 days before the final approval hearing. (*See* ECF No. 198-2, Sec. VI.11.)

[6] See https://www.fjc.gov/sites/default/files/2016/ClaAct04.pdf.

MEMORANDUM IN SUPPORT OF FINAL APPROVAL,
ATTORNEYS' FEES, COSTS, & SERVICE AWARDS
Case No. 4:16-cv-06232-JSW

198-2, Sec. VI.13.) Facebook, through the settlement administrator, has provided these
government officials with copies of all required materials.

*      *      *

For these reasons, the settlement class should be certified under Rule 23(a) and (b)(3).

## CLASS COUNSEL SEEK REASONABLE ATTORNEYS' FEES AND COSTS

### I.      California law governs Counsel's fee application in this diversity action.

As compensation for prosecuting a class action, plaintiffs' counsel may apply to the
Court for an award of "reasonable attorney's fees and nontaxable costs that are authorized by
law." Fed. R. Civ. P. 23(h). To determine what fees are authorized by law, courts sitting in
diversity look to the underlying state law—not only to confirm counsel's entitlement to fees, but
also for how to calculate them. *Salamanca v. Sprint/United Mgmt. Co.*, No. 15-cv-05084, 2018
WL 1989568, at *1 (N.D. Cal. Mar. 9, 2018) (citing *Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d
1470, 1478 (9th Cir. 1995)).

Here, all of the class's claims arose under California law. (*See* ECF Nos. 94 & 134.) As a
result, and because no conflicting federal statute exists, California law governs Class Counsel's
entitlement to fees and the method for calculating them. *Walsh v. Kindred Healthcare*, No. 11-cv-
00050, 2013 WL 6623224, at *1 (N.D. Cal. Dec. 16, 2013) (citing *Vizcaino v. Microsoft Corp.*, 290
F.3d 1043, 1047 (9th Cir. 2002)).

### II.     California law authorizes Class Counsel's requested percentage-of-the-fund attorneys' fee.

Under California law counsel is entitled to a reasonable attorneys' fee if they recover a
settlement fund. *Laffitte v. Robert Half Internat. Inc.*, 1 Cal. 5th 480, 488-89 (2016) (affirming "the
propriety of awarding an attorney fee to a party who has recovered … a monetary fund for the
benefit of himself or herself and others"). Here, the multiyear litigation delivered a $40 million
fund for the class, which entitles Class Counsel to payment of a reasonable attorneys' fee. *Id.*

As for calculating that fee, in *Laffitte*, the California Supreme held that in a common-
fund case such as this one, courts may calculate the fee "by choosing an appropriate percentage
of the fund created." *Id.* at 503. While *Laffitte* surveyed various methods used to calculate

20

percentage-based fees—including the Ninth Circuit's benchmark—the Court chose not to endorse using a benchmark. *Id.* at 495, 503-06; *see also Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 1000 (N.D. Cal. 2017) ("the California courts have not adopted 25 percent as a 'benchmark' figure, as the Ninth Circuit has"); *accord Singh v. Roadrunner Intermodal Servs., LLC*, No. 15-cv-01497, 2019 WL 316814, at *8 (E.D. Cal. Jan. 24, 2019) ("Notably, while the California Supreme Court recognized the Ninth Circuit's 25 percent benchmark for percentage awards in common fund cases, it did not adopt such a benchmark for California cases"); *Dilts v. Penske Logistics, LLC*, No. 08-cv-0318, 2017 WL 2620664, at *4 (S.D. Cal. June 16, 2017) ("Although recognizing the Ninth Circuit's 25 percent benchmark in common fund cases, [the *Laffitte* Court] did not adopt this touchstone.").

Although California courts have not adopted a benchmark per se, percentage-based fee awards under California law are typically around 30%-33%. *See e.g., Beaver v. Tarsadia Hotels*, No. 11-cv-01842, 2017 WL 4310707, at *9 (S.D. Cal. Sept. 28, 2017) ("California courts routinely award attorneys' fees of one-third of the common fund."); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (2008) ("fee awards in class actions average around one-third of the recovery"); (Pearl Decl., ¶ 27). That common range stems in part from the fact that similar percentages are frequently negotiated in private contingency-fee contracts. *See Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 49-50 (2000) (holding that trial court has discretion to apply multiplier "where necessary to ensure that the fee awarded is within the range of fees freely negotiated in the legal marketplace in comparable litigation"); *Fernandez v. Victoria Secret Stores, LLC*, No. 06-cv-4149, 2008 WL 8150856, *16 n.59 (C.D. Cal. July 21, 2008) ("typical contingency fee agreements provide that class counsel will recover 33% if the case is resolved before trial and 40% if the case is tried"); (Pearl Decl., ¶¶ 47-50). Consistent with California courts' longstanding approach, the *Laffitte* Court likewise affirmed a fee constituting one-third of the gross settlement amount. *Laffitte*, 1 Cal. 5th at 506. Accordingly, Class Counsel's requested fee of 30% of the fund falls squarely in line with the norm under California law. (Pearl Decl., ¶¶ 43-46.)

1       The propriety of the requested fee can also be gleaned by considering several factors

2   considered under California law, including (1) the potential value of the litigation and the

3   results obtained on behalf of the class; (2) the litigation risks involved; (3) the contingent nature

4   of the representation; and (4) the novelty and difficulty of the issues presented together with the

5   skill shown by counsel. *Laffitte*, 1 Cal. 5th at 488; *Lealao*, 82 Cal. App. 4th at 42-43 (citing Pearl,

6   California Attorney Fee Awards (2d ed. 1998) §§ 13.1-13.7). These factors are similar to those

7   applied by courts applying federal attorneys'-fee jurisprudence in common-fund cases. *See, e.g.*,

8   *Vizcaino*, 290 F.3d at 1047-48 (recognizing relevant factors can include the results achieved, the

9   risk undertaken by class counsel in pursuing the case, and the market rate for similar service).

10  Thus, even though "the Ninth Circuit's 25% benchmark for calculating fees using the

11  percentage-of-recovery method does not apply here, the factors courts in this circuit evaluate in

12  considering whether to adjust the presumptive award are also relevant evaluating the

13  reasonableness of a requested attorneys' fee award." *Willner v. Manpower Inc.*, No. 11-cv-02846,

14  2015 WL 3863625, at *5 (N.D. Cal. June 22, 2015). As will be discussed below, each of the

15  factors considered under California law and federal fee jurisprudence supports Class Counsel's

16  requested fee. In his declaration, California attorneys' fee expert Richard Pearl applies these

17  factors and opines that the requested fee is reasonable. (Pearl Decl., ¶¶ 27-42.)

18      **A.**    **Class Counsel delivered a strong result for the class.**

19      The first factor that courts often consider under California law is the quality of the

20  "results obtained" for the class. *See Laffitte*, 1 Cal. 5th at 489; *see also In re Omnivision Techs., Inc.*,

21  559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (calling the overall result and benefit to the class

22  "the most critical factor in granting a fee award" under federal law).

23      As discussed above in the context of approving the settlement, the $40 million non-

24  reversionary fund that Class Counsel obtained for the class constitutes a successful resolution to

25  this litigation. The fund recovers as much as 40% of possible damages. That level of recovery is

26  strong, generally speaking, for complex class actions like this one. *See, e.g.*, *In re Anthem, Inc.*

27  *Data Breach Litig.*, 327 F.R.D. at 319 (settlement representing between 14.5%-36% of classwide

28  damages constituted an "substantial" result); *In re Heritage Bond Litig.*, No. 02-ml-1475, 2005

WL 1594403, at *19 (C.D. Cal. June 10, 2005) (settlement representing 36-38% of the class's total net loss "an exceptional result"). It also compares favorably to other recent class actions concerning online advertising. *E.g.*, *In re Google Adwords Litig.*, No. 08-cv-03369, ECF No. 384 (N.D. Cal. Aug. 7, 2017) (the class recovered $22.5 million in a claims-made settlement); *In re Yahoo! Litig.*, No. 2:06-cv-02737, ECF No. 226 (C.D. Cal. Jan. 15, 2010) (settlement provided only injunctive relief, with advertisers who went out of business to claim $20). And the fund will provide meaningful relief for the class now—avoiding still more risk and delay—and will be distributed without the need for claim forms and with no possibility of any reversion of funds to Facebook. *See Hopkins v. Stryker Sales Corp.*, No. 11-cv-02786, 2013 WL 496358, at *2 (N.D. Cal. Feb. 6, 2013) (highlighting that class members will not have to submit claim forms in order to recover their share of the settlement). The settlement relief, in short, provides a "win" for the class and supports the requested fee.

### B.   Class Counsel overcame significant risk to deliver a strong result for the class.

The favorable result achieved should be considered alongside the risk Class Counsel overcame to deliver it. *See Laffitte*, 1 Cal. 5th at 488. Here, there were a variety of serious risks that jeopardized a class recovery. Plaintiffs discussed some of those risks above and will expand on that discussion now.

First, it's worth reiterating that Facebook retained excellent trial counsel who mounted a strenuous defense at every stage of this litigation. Facebook filed four motions to dismiss and a discovery motion. (ECF Nos. 46, 79, 110, 127, 160.) It also contested Plaintiffs' discovery efforts, requiring substantial negotiation and motion practice, with Plaintiffs filing seven discovery motions of their own. (ECF Nos. 96, 105, 117, 126, 128, 176, 180.) In short, the resources that Facebook devoted to the litigation, and the quality of the defense mounted, warrant consideration as part of the overall risk analysis. *See de Mira v. Heartland Employment Serv., LLC*, No. 12-cv-04092, 2014 WL 1026282, at *2 (N.D. Cal. Mar. 13, 2014) (quality of opposition important in evaluating the quality of the work done by plaintiffs' counsel).

There were also risks inherent in Plaintiffs' legal claims. For example, Plaintiffs alleged that Facebook owed a contractual duty to provide accurate average-watch-time metrics. But as Facebook argued at the pleadings stage, there is no express contractual language to that effect. (*See* ECF No. 65 at 21-22.) Accordingly, Plaintiffs' contract-based claim was predicated on an implied duty of care that in turn attached to an implied contractual term. (*Id.*) Although Plaintiffs believe the Court was correct to sustain the claim at the pleading stage, there is no denying that a claim alleging an implied duty on top of an implied term is novel, or that it would have been subject to further attacks by Facebook at summary judgment, trial, and on appeal. In fact, much the same claim was dismissed in another case against Facebook in this district. *See e.g.*, *Singer v. Facebook, Inc.*, No. 18-cv-04978, at *1 (N.D. Cal. May 16, 2019). Plaintiffs' other claims also entailed future risk. The Court noted, for example, in sustaining Plaintiffs' UCL claim on the pleadings, that it was doing so subject to later review once discovery was complete. *See Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1247 (N.D. Cal. 2017) (Facebook's disclaimer did not bar Plaintiffs' claim "at this stage of the litigation").

Additional risks would arise at class certification. For example, Facebook was sure to contest certification by pointing to data that it believes shows many class-member advertisers never saw the inflated metrics, suggesting the metrics could not have misled the advertisers to their detriment. *See, e.g.*, *Fox Test Prep v. Facebook, Inc.*, 588 F. App'x at 734 (affirming order denying certification of a litigation class in suit involving alleged fraud related to advertising on Facebook); *see also Campbell v. Facebook, Inc.*, 315 F.R.D. 250, 269 (N.D. Cal. 2016) (denying certification because "individual issues regarding damages would predominate over common ones"). Had the Court denied certification, Plaintiffs and proposed class members likely would have recovered little or nothing, and as a result, Class Counsel would not have been compensated for their years of litigation effort. *See Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 392 (C.D. Cal. 2007) ("The value of a class action 'depends largely on the certification of the class,' and … class certification undeniably represents a serious risk for plaintiffs in any class action lawsuit.").

MEMORANDUM IN SUPPORT OF FINAL APPROVAL,
ATTORNEYS' FEES, COSTS, & SERVICE AWARDS
Case No. 4:16-cv-06232-JSW

1    Even had Plaintiffs prevailed in certifying a litigation class, questions would remain
2    about Plaintiffs' ability to demonstrate damages. Facebook would argue that the erroneous
3    metrics were not part of Facebook's billing and so even if Facebook acted unlawfully, the
4    actions did not affect prices that advertisers paid. Had the Court agreed, class members would
5    have recovered nothing and Class Counsel would not have been compensated. Plaintiffs believe
6    they had reasonably strong prospects for overcoming these arguments, but the risk of
7    nonrecovery was real.

8    Consideration of these risks favors Class Counsel's fee request. *See, e.g.*, *In re Anthem, Inc.*
9    *Data Breach Litig.*, No. 15-md-02617, 2018 WL 3960068, at *13 (N.D. Cal. Aug. 17, 2018)
10   (noting that "Plaintiffs have identified uniquely potent risks in this case that Plaintiffs would
11   have to overcome to reach a favorable result this lawsuit," and finding "the risks attendant to
12   maintaining this litigation weigh in favor of granting Class Counsel's [fee] request.").

13           **C.      Class Counsel undertook the litigation on a purely contingent basis.**

14   California law also recommends that courts consider the contingent nature of counsel's
15   representation: "The contingent fee compensates the lawyer not only for the legal services he
16   renders but for the loan of those services." *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 580
17   (2004); *see also Laffitte*, 1 Cal. 5th at 504; *Vizcaino*, 290 F.3d at 1051.

18   Class Counsel took this case on a contingent basis with no guarantee of compensation
19   for their 11,774.95 hours of work and hundreds of thousands of dollars in out-of-pocket costs.
20   The representation also lasted for over three years, requiring Class Counsel to forego work on
21   other matters. (Joint Class Counsel Decl., ¶ 6). This factor thus weighs in favor of the requested
22   fee. *See Laffitte*, 1 Cal. 5th at 448; *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001); *see also In re*
23   *Online DVD-Rental*, 779 F.3d 934, 955 (9th Cir. 2015) (noting that this factor considers "the
24   burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other
25   work)"); *Vizcaino*, 290 F.3d 1043, 1047-48 (according weight to the fact that the class counsel
26   had to forgo "significant other work").

27
28

1

2

### D.   Class Counsel's skill litigating and settling the class's novel and difficult claims further supports the requested fee award.

3      California courts recognize that litigating complicated matters favors awarding a larger

4  fee. *See, e.g.*, *Laffitte*, 1 Cal. 5th 480, 504 (citing the "skill shown by counsel" as a factor when

5  calculating an appropriate fee); *Lealao*, 82 Cal. App. 4th at 42 (noting that California courts can

6  consider "the special skill and experience of counsel" when determining a fee award); *Spears v.*

7  *First Am. Eappraiseit*, No. 08-cv-00868, 2015 WL 1906126, at *2 (N.D. Cal. Apr. 27, 2015)

8  (awarding 35% where class counsel "faced at least three significant novel issues of law").

9      The result achieved here stems in part from the experience and capabilities of Class

10  Counsel. The "prosecution and management of a complex . . . class action requires unique legal

11  skills and abilities." *In re Omnivision*, 559 F. Supp. 2d at 1047 (citation omitted). Here, the class

12  was represented by three firms who have all been recognized as highly skilled in complex

13  litigation. (*See* Gibbs Decl., ¶ 9 & Ex. A; Eglet Decl., ¶¶ 3-12; Friedman Decl., ¶ 12 & Ex. 1.)

14  Counsel's skill, experience, and knowledge of procedural and substantive law helped here. As

15  noted, the case presents a novel contractual claim; it also featured a claim under the UCL's

16  "unfairness" prong, which is governed by relatively little case law since the statute's "unlawful"

17  and "fraudulent" prongs are invoked far more frequently. The case also involved highly

18  technical factual issues, which gave rise to complex ESI issues in discovery, including three

19  inspections of Facebook source code. (ECF No. 198-1, ¶ 4.) And, as noted, the case involved

20  challenging damages-related issues—a subject to which Class Counsel devoted many hours of

21  research and development with the help of a team of experts (in fields including economics,

22  conjoint analysis, and auction theory). *See Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *2

23  (counsel's use of experts to help evaluate case was part of "skillful preparation" that

24  demonstrated skill and quality of work).

25      All of this led to demonstrable success during the litigation. In the face of Facebook's

26  four motions to dismiss, three of Plaintiffs' four claims were sustained in full, including

27  Plaintiffs' novel contract claim, with only an unjust enrichment claim (deemed to be

28  duplicative) ultimately dismissed. (*See* ECF No. 65 at 9-10; ECF No. 97 at 18-19.) Class

1  Counsel continued to deal with a high level of complexity even after negotiating this settlement.

2  Working with Facebook and the settlement administrator, Class Counsel helped craft a

3  settlement plan that delivers funds economically and automatically to class members using

4  several different payment methods designed to ensure class members receive and spend their

5  recoveries.

6      In sum, Class Counsel's experience and skill further supports the requested fee. *See, e.g.,*

7  *In re Heritage Bond Litig.*, 2005 WL 1594403, at *20-21 (a one-third fee award was appropriate

8  given counsel's skill and experience).

9      **III.    Ninth Circuit fee jurisprudence also supports requested fee.**

10      Even if Class Counsel's entitlement to fees arose under federal common law, rather than

11  California law, the requested fee is not far from the 25% benchmark that applies in such cases.

12  Instead, the fee falls squarely within the 20% to 33% range typically awarded in common fund

13  cases in general, and consumer fraud cases in particular. *See Salamanca v. Sprint/United Mgmt.*

14  *Co.*, 2018 WL 1989568, at *1; *In re Omnivision*, 559 F. Supp. 2d at 1047 ("[I]n most common

15  fund cases, the award exceeds [the 25%] benchmark."); *In re Nexus 6P Prod. Liab. Litig.*, No. 17-

16  cv-02185, 2019 WL 6622842, at *13 (N.D. Cal. Nov. 12, 2019) (awarding 30% fee in consumer

17  fraud case, and collecting cases); *In re Lenovo Adware Litig.*, No. 15-md-02624, 2019 WL

18  1791420, at *8 (N.D. Cal. Apr. 24, 2019) (same). In other words, while the Ninth Circuit has

19  adopted a benchmark of 25%, that amount may be adjusted upward and "in most common

20  fund cases, the award exceeds that benchmark" percentage. *Knight v. Red Door Salons, Inc.*, No.

21  08-cv-01520, 2009 WL 248367, at *3 (N.D. Cal. Feb. 2, 2009).

22      To confirm the propriety of such a fee, courts look to the factors addressed above,

23  including: the results achieved, the risk undertaken by class counsel in pursuing the case, the

24  market rate for similar service, and fees awarded in comparable cases. *See Vizcaino*, 290 F.3d at

25  1048-50. Because those factors support the requested fee, the Court would be well within its

26  discretion to award the requested fee under federal law too. *See, e.g., Beaver v. Tarsadia Hotels*,

27  2017 WL 4310707, at *10 (awarding one-third of common fund after applying both California

28  and Ninth Circuit law, and noting that "[d]istrict courts in this circuit have routinely awarded

MEMORANDUM IN SUPPORT OF FINAL APPROVAL,
ATTORNEYS' FEES, COSTS, & SERVICE AWARDS
Case No. 4:16-cv-06232-JSW

fees of one-third of the common fund or higher after considering the particular facts and circumstances of each case").

### IV. A lodestar cross-check confirms the reasonableness of Counsel's requested fee.

Under California law, after selecting an appropriate percentage of the fund, the Court may "double check" the reasonableness of the fee through a lodestar cross-check. *Laffitte*, 1 Cal. 5th at 504-06. The lodestar cross-check "provides a mechanism for bringing an objective measure of the work performed into the calculation of a reasonable attorney fee." *Id.* at 504.

To calculate the lodestar, courts multiply the number of hours reasonably expended litigating the case times a reasonable hourly rate, and then may adjust the lodestar up or down by a multiplier to reflect the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment. *Walsh v. Kindred Healthcare*, 2013 WL 6623224, at *2 (citing *Lealao*, 82 Cal. App. 4th at 26). Particularly when using the lodestar merely as a cross-check, courts need not exhaustively catalogue and review counsel's hours, but can instead focus on the general question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys. *Laffitte*, 1 Cal.5th at 505; *accord In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 15-md-02672, 2017 WL 1047834, *5, n.5 (N.D. Cal. Mar. 17, 2017).

Below, Plaintiffs discuss the 11,774.95 hours devoted to the litigation, and counsel's typical hourly rates, which give rise to a base lodestar of $7,154,997. (*See* Joint Class Counsel Decl., ¶¶ 5-25; Gibbs Decl., ¶¶ 3-5; Eglet Decl., ¶ 13-20; Friedman Decl., ¶¶ 4-8.)

### A. Class Counsel reasonably devoted over eleven thousand hours to prosecuting this litigation over the past three years.

To assist the Court in evaluating its lodestar, Class Counsel reviewed their daily time records and prepared declarations with detailed summaries of the time spent on various litigation tasks. (*See* Joint Class Counsel Decl., ¶¶ 7-25; Gibbs Decl., ¶¶ 3-5; Eglet Decl., ¶¶ 13-20; Friedman Decl., ¶¶ 4-8.) As detailed in those declarations, Class Counsel and their professional staff have spent 11,774.95 hours litigating this case for the benefit of the class. (This

28

reflects less than the total number of hours billed during the litigation, as each firm exercised billing discretion and voluntarily reduced their time before filing this motion.) (Gibbs Decl., ¶ 6; Friedman Decl., ¶ 9; Eglet Decl., ¶ 28.)

By way of high-level overview only, Class Counsel's time in this case included:

- A rigorous pre-filing investigation followed by preparation of detailed initial pleadings;
- Efforts to coordinate proceedings, including moving for appointment as lead counsel under Rule 23(g), and drafting amended consolidated complaints;
- Four rounds of 12(b)(6) briefing;
- Working with eight experts and consultants in support of Plaintiffs' case, who assisted with liability issues, source code inspections, and classwide damages methodologies;
- Preparation of written discovery requests (including multiple sets of document requests, interrogatories, requests for admission, and Rule 30(b)(6) notices), supported by numerous in-person, telephonic, and written meet-and-confer efforts;
- Preparation, service, and negotiation of nine third-party subpoenas;
- Responding to Facebook's 68 discovery requests, conducting ESI searches, and producing documents;
- Assisting absent class members in responding to Facebook's 15 subpoenas;
- Deposing 11 witnesses;
- Reviewing over 500,000 pages of documents produced by Facebook, as well as additional documents produced by third parties;
- Briefing eight discovery motions;
- Preparing a motion for class certification and 118 exhibits in support of the motion, which included expert reports and was due to be filed two days before the parties reached the settlement;
- Mediating with Judge Walker and engaging in numerous, protracted follow-up negotiations under Judge Walker's supervision;

1

2    ▪ Preparing a comprehensive settlement agreement, with exhibits including long-form and

3        short-form class notices, and developing the class notice plan as well as the plan of

        allocation; and

4    ▪ Drafting the preliminary and final approval briefs and supporting papers.

5    (Joint Class Counsel Decl., ¶¶ 7-25.)

6        The litigation, in short, required considerable effort by Class Counsel. These efforts are

7    likely to continue for at least several more months, as they continue to work through the

8    settlement approval process and as they continue to work with the settlement administrator and

9    class members on settlement-related issues that arise.

10                    **B.    Class Counsel's rates fall within the range prevailing in the
                              community and have been approved by courts across the country.**
11

12        After evaluating the number of hours devoted to the litigation, the next step is to assign a

13    reasonable hourly billing rate. In assessing the reasonableness of an attorney's hourly rate, the

14    Court should consider whether the rate is "in line with those prevailing in the community for

15    similar services by lawyers of reasonably comparable skill, experience, and reputation." *See*

16    *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008); *PLCM Grp. v. Drexler*, 22 Cal.

17    4th 1084, 1095 (2000) ("The reasonable hourly rate is that prevailing in the community for

18    similar work." (citations omitted)).

19        The hourly rates used to calculate counsel's lodestar range from $650 to $940 for

20    partners, $430 to $545 for associates, $200 to $395 for contract and staff attorneys, and $200 to

21    $490 for law clerks, paralegals, and litigation support staff. (Joint Class Counsel Decl., ¶ 5;

22    Gibbs Decl., ¶ 5; Friedman Decl., ¶¶ 6-8; Eglet Decl., ¶¶ 14-19, 28.) The hourly rates are set by

23    counsel based on their own experience, based on periodic reviews of the rates charged by other

24    attorneys involved in complex litigation, and fall within the range of rates prevailing in the

25    relevant legal community. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at

26    *17 (approving billing rates for partners from about $400.00 to $970.00; billing rates for non-

27    partner attorneys, including senior attorneys, of counsel, and associates, from about $185.00 to

28    $850.00; and billing rates for paralegals, law clerks, and litigation support staff from about

30

1   $95.00 to $440.00). In his declaration, Richard Pearl—a leading expert on attorneys' fees in

2   California—surveys prevailing market rates charged by attorneys in this district and across the

3   state for comparably complex work, and opines that Class Counsels' rates are well within the

4   norm. (Pearl Decl., ¶¶ 61-68 & Ex. K.) Class Counsel's firm resumes and declarations provide

5   additional information on these attorneys' background and experience. (*See* Gibbs Decl., ¶ 9 &

6   Ex. A; Eglet Decl., ¶¶ 3-12; Friedman Decl., ¶ 12 & Ex. 1.)

7        Class Counsel's hourly rates are also regularly evaluated by courts in California and

8   across the country and have been consistently approved as reasonable in recent years. (*See*

9   Gibbs Decl., ¶ 8; Friedman Decl., ¶ 11; Eglet Decl., ¶ 29.); *see also In re Lenovo Adware Litig.*, No.

10  15-md-02624, ECF No. 258 (N.D. Cal. Apr. 24, 2019) (approving hourly billing rates for Gibbs

11  Law Group); *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *17 (Cohen Milstein

12  and Gibbs Law Group); *Nitsch v. DreamWorks Animation SKG, Inc.*, No. 14-cv-04062, 2017 WL

13  2423161, at *9 (N.D. Cal. June 5, 2017) (Cohen Milstein); *In re Hyundai Sonata Engine Litig.*,

14  No. 15-cv-01685, ECF No. 85 (N.D. Cal. Jan 23, 2017) (Gibbs); *In re: Vizio, Inc., Consumer*

15  *Privacy Litig.*, No. 16-ml-02693, ECF No. 337 (C.D. Cal. July 31, 2019) (Gibbs); *In Re Broadcom*

16  *Corp. Stockholder Litig.*, No. 15-979, ECF No. 118-1 at 10 (C.D. Cal. Feb. 27, 2017) (Cohen

17  Milstein); *Basich, et al v. Xerox State Healthcare, LLC, et al.,* No. A698567 (Nev. 8th J. Dist. Ct.,

18  Apr. 21, 2014) (Eglet Adams); *Franco v. Pruitt*, No. A633114 (Nev. 8th J. Dist. Ct., Jan. 12,

19  2011) (Eglet Adams); and *In Re: Cast Iron Soil Pipe and Fittings Antitrust Litig.*, No. 14-md-2508,

20  ECF No. 503 at 2-3 (E.D. Tenn. May 26, 2017) (Cohen Milstein).

21   **C.   The 1.68 multiplier is comparable to or below multipliers typically**
22         **approved by California courts.**

23        The final step in a lodestar cross-check is to consider applying a multiplier to the base

24  lodestar. The purpose of a multiplier is "to compensate for the risk of loss generally in

25  contingency cases," since a "lawyer who both bears the risk of not being paid and provides legal

26  services is not receiving the fair market value of his work if he is paid only for the second of

27  these functions." *Ketchum*, 24 Cal. 4th at 1133 (citations omitted). Under California law,

28  multipliers of 2 to 4 or even higher are typical. *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th

1   224, 255 (2001); *Chavez*, 162 Cal. App. 4th at 66 (affirming 2.5 multiplier); *City of Oakland v.*

2   *Oakland Raiders*, 203 Cal. App. 3d 78, (1988) (affirming 2.34 multiplier); *Spann v. J.C. Penney*

3   *Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) (applying California law and finding

4   multiplier of 3.07 "well within the range of reasonable multipliers"); (Pearl Decl., ¶¶ 51-52, 55-

5   56). Indeed, the one-third award affirmed in *Laffitte* represented a 2.03 to 2.13 multiplier on

6   class counsel's lodestar. *Laffitte*, 1 Cal. 5th at 487.

7       Here, taking into account the base lodestar of $7,154,997, the requested attorneys' fee

8   reflects a multiplier of 1.68, well within the range for reasonable multipliers. The multiplier is

9   also likely to decrease as Class Counsel continues to devote additional time toward final

10   settlement approval and settlement administration, any appeals, and class member contacts in

11   the coming months. As a result, the lodestar cross-check confirms the reasonableness of the

12   requested fee. *See Laffitte*, 1 Cal.5th at 496 ("If the implied multiplier is reasonable, then the

13   cross-check confirms the reasonableness of the percentage-based fee").

14                          *      *      *

15       In sum, Class Counsel's fee request is supported by the circumstances and history of this

16   litigation and the settlement achieved: a strong recovery for the class, in a hard-fought case

17   against an aggressive and well-funded Defendant, and in the face of the risk that the case would

18   fail at class certification or on the merits, as similar actions have.

19   **V.   Class Counsel's request for reimbursement of costs is reasonable.**

20       In addition to the requested attorneys' fee, Class Counsel seek reimbursement for their

21   $737,909.61 in out-of-pocket costs incurred during the litigation. "[A] party preserving or

22   recovering a fund for the benefit of others in addition to himself, [may] recover his costs,

23   including his attorneys' fees, from the fund of property itself." *Lealao*, 82 Cal. App. 4th at 27

24   (citing *Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977)); *see also Rider v. Cnty. of San Diego*, 11 Cal. App.

25   4th 1410, 1423 n.6 (1992) ("[T]he recovered 'common fund' shall also serve as the source from

26   which the [plaintiffs] recover their trial costs."); Fed. R. Civ. P. 23(h) (permitting the court to

27   award nontaxable costs that are authorized by law). "To that end, courts throughout the Ninth

28   Circuit regularly award litigation costs and expenses—including photocopying, printing,

1   postage, court costs, research on online databases, experts and consultants, and reasonable

2   travel expenses." *Destefano v. Zynga, Inc.*, No. 12-cv-04007, 2016 WL 537946, at *22 (N.D. Cal.

3   Feb. 11, 2016).

4       The attached declarations detail Class Counsel's costs, broken down by category. (*See*

5   Gibbs Decl., ¶ 10; Eglet Decl., ¶¶ 22-26; Friedman Decl., ¶ 13.) These expenditures were

6   necessary to Class Counsel's prosecution of the action and are particularly reasonable given the

7   highly technical subject matter involved, necessitating a team of experts and consultants. Such

8   costs are regularly billed to clients in hourly fee cases, and routinely awarded in contingency fee

9   cases. *See, e.g.*, *In re Capacitors Antitrust Litig.*, No. 14-cv-03264, 2018 WL 4790575, at *6 (N.D.

10  Cal. Sept. 21, 2018) ("Reasonable reimbursable litigation expenses include: those for document

11  production, experts and consultants, depositions, translation services, travel, mail and postage

12  costs." (citation omitted)); *In re Lenovo Adware Litig.*, 2019 WL 1791420, at *9 (reimbursing

13  counsel's "professional service fees (experts, investigators, accountants), travel fees, and

14  discovery-related fees"). The notice informed class members that Class Counsel would seek up

15  to $800,000 in litigation expenses. Class Counsel thus requests full reimbursement of their out-

16  of-pocket costs. (ECF No. 198-2, Exs. A-1 & A-2.)

17       **CLASS REPRESENTATIVE SERVICE AWARDS ARE APPROPRIATE**

18       Finally, Plaintiffs request that the Court authorize service awards for the two class

19  representatives to recognize the time, effort, risk, and expense they incurred pursuing claims

20  against Facebook, which benefitted the entire class. Service awards are common in class actions

21  and "compensate class representatives for work done on behalf of the class, to make up for

22  financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize

23  their willingness to act as a private attorney general." *In re Cellphone Fee Termination Cases*, 186

24  Cal. App. 4th 1380, 1394 (2010) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d at 958-59).

25  When awarding service awards, district courts consider factors including the actions the

26  plaintiff has taken to protect the interests of the class, the degree to which the class benefitted,

27  the amount of time and effort the plaintiff expended, and any reasonable fears of retaliation.

28

---

33

1  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (alterations omitted) (quoting *Cook v.*
2  *Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

3        Here, as was conveyed to the class in the notice of settlement, Plaintiffs seek service
4  awards of $15,000 for Plaintiff LLE One, LLC, and $10,000 for Plaintiff Jonathan Murdough.
5  The requested awards accord with payments deemed reasonable and approved by district courts
6  in this circuit. *See Bickley v. Schneider Nat'l Carriers, Inc.*, No. 08-cv-05806, 2016 WL 6910261, at
7  *3 (N.D. Cal. Oct. 13, 2016) (approving $15,000 service awards to five named plaintiffs); *Taylor*
8  *v. Shippers Transp. Express, Inc.*, No. 13-cv-02092, 2015 WL 12658458, at *18 (C.D. Cal. May 14,
9  2015) (awarding $15,000 service award to two named plaintiffs, and $10,000 and $7,500 to two
10 "active class members"); *La Fleur v. Med. Mgmt. Int'l, Inc.*, Nos. 13-cv-00398, 13-cv-01960, 2014
11 WL 2967475, at *7-8 (C.D. Cal. June 25, 2014) (awarding a $15,000 service awards to two
12 named plaintiffs).

13       The attached declarations from Robert Eglet and Andrew Friedman set forth the actions
14 taken, and the hours expended, by the named Plaintiffs for the benefit of the class. (Eglet Decl.,
15 ¶¶ 32-39; Friedman Decl., ¶¶ 14-21.) These actions include: reviewing the pleadings; responding
16 to discovery requests, including ESI searches and producing documents; assisting Class
17 Counsel regarding the technical aspects of Facebook's business advertising platform;
18 corresponding with Class Counsel to stay apprised of the litigation; and reviewing the
19 settlement documents. (Eglet Decl., ¶¶ 33-35, 37; Friedman Decl., ¶¶ 14-21.) Over the course of
20 the three-plus years this case has been pending, Plaintiff LLE One, LLC's principals, Todd and
21 Laurelie Levy, spent over 300 hours, and Jonathan Murdough spent over 100 hours, pursuing
22 the class's claims. (Eglet Decl., ¶ 39; Friedman Decl., ¶ 14.)

23       In addition to the substantial time and effort required to respond to discovery, there were
24 unique financial and business risks associated with prosecuting this case. Facebook issued
25 subpoenas to many of Plaintiff LLE One, LLC's customers, which exposed LLE One, LLC to
26 the risk of lost clients and financial harm due to its service as a class representative. (Eglet
27 Decl., ¶¶ 35-36, 38-40.) Because Mr. Murdough is a social media advertising professional, his
28 participation in this case also risked negative professional ramifications. (*See* Friedman Decl., ¶

22.) These unusual risks merit, in Plaintiffs' view, compensation higher than is often awarded to class representatives who do not bear such risks in prosecuting class litigation. *See, e.g.*, *Beaver v. Tarsadia Hotels*, 2017 WL 4310707, at *8 (finding $50,000 awards to four class representatives fair and reasonable "in light of the extraordinary risks they accepted and the time and effort they expended for the benefit of the Class").

Given the level of participation by the Plaintiffs, and the risk incurred, the requested awards are reasonable and warranted.

## CONCLUSION

For the foregoing reasons, Plaintiffs ask that the Court grant final approval of the proposed settlement, certify the settlement class, and award the requested fees, costs, and service awards.


DATED: January 15, 2020          Respectfully submitted,

                                 By: */s/ Eric H. Gibbs*

                                 Eric Gibbs
                                 David Stein
                                 Kyla J. Gibboney
                                 Aaron Blumenthal
                                 **GIBBS LAW GROUP LLP**
                                 505 14th Street, Suite 1110
                                 Oakland, CA 94612
                                 Telephone: (510) 350-9700
                                 Facsimile: (510) 350-9701
                                 ehg@classlawgroup.com
                                 ds@classlawgroup.com
                                 kjg@classlawgroup.com
                                 ab@classlawgroup.com

                                 Andrew N. Friedman
                                 Geoffrey Graber
                                 Eric Kafka
                                 **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                 1100 New York Ave. NW, Fifth Floor
                                 Washington, DC 20005
                                 Telephone: (202) 408-4600
                                 Facsimile: (202) 408-4699

afriedman@cohenmilstein.com
ggraber@cohenmilstein.com
ekafka@cohenmilstein.com

Michael Eisenkraft
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
meisenkraft@cohenmilstein.com

Robert T. Eglet
Robert M. Adams
Erica D. Entsminger
Artemus W. Ham
**EGLET ADAMS**
400 South Seventh Street, Suite 400
Las Vegs, NV 89101
Telephone: (702) 450-5400
Facsimile: (702) 450-5451
eservice@egletlaw.com

Aisha Christian
129 West 27th Street, 11th Floor
New York, NY 10001
Telephone: (646) 285-2029

Charles Reichmann (SBN 206699)
**LAW OFFICES OF CHARLES REICHMANN**
16 Yale Circle
Kensington, CA 94708-1015
Telephone: (415) 373-8849
charles.reichmann@gmail.com

Joseph A. Motta (SBN 133531)
**RUEB & MOTTA**
1401 Willow Pass Road, Suite 880
Concord, CA 94520
Telephone: (925) 602-3400
Facsimile: (925) 602-0622
joe@rmmprolaw.com

*Counsel for Plaintiffs and Proposed Class*

---

36